# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| GEORGIA MUSLIM VOTER PROJECT, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> BRIAN KEMP, *et al.*, <br><br> Defendants. | Civil Action No.: 1:18-cv-04789-LMM |
| RHONDA J. MARTIN, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> BRIAN KEMP, *et al*. <br><br> Defendants. | Civil Action No.: 1:18-cv-04776-LMM |

**SUPPLEMENTAL DECLARATION OF LYNN LEDFORD**

Pursuant to 28 U.S.C. § 1746, I, Lynn Ledford, make the following declaration:

1.

My name is Lynn Ledford. I am the Director of Registration and Elections/Directora de Elecciones for Gwinnett County, Georgia. I have previously filed a declaration on October 22, 2018 in *Ga. Muslim Voter Project v. Kemp*, case

1

number 1:18-cv-04789-LMM. This supplemental declaration discusses the issues raised in the Court's proposed injunction [Doc. 28].

2.

I have reviewed the Court's proposed injunction and have identified several areas where additional clarity about the procedures the Court outlines would greatly assist local election officials.

3.

Local election officials will need clarification about how to provide the pre-rejection notice to voters rejected because of a signature mismatch and what information it will need to convey to the voter.

4.

Local officials also need clarification about how voters can resolve the signature mismatch. For a provisional ballot, the voter is able to show he or she has a valid photo identification or was otherwise properly registered to vote by the deadline. For registration or precinct issues, the voter does not need to take any action.

5.

If the same procedure is to be utilized for provisional absentee ballots and the Court intends for more opportunities to review a signature mismatch than a

voter presenting a photo identification, local officials will need direction about what types of other valid identifying information can be presented, in part so we can notify voters in the pre-rejection notice of the methods to cure the mismatch. I do not believe a phone call with the voter will be sufficient to verify the identity of the voter, in part because we do not have phone numbers for every voter and because many forms of verifying voter identity

6.

Local officials will need to know how to reconcile the ten-day period to file an appeal in superior court found in O.C.G.A. § 21-2-229(e) with the deadlines for certification. Final certification must take place no later than 5:00pm on the Monday following the election. Election officials will need direction about how to handle certification of vote totals if there are ballots with rejected signature mismatches but which have not yet been appealed or which are being appealed.

7.

If the process under 229(e) remains in effect for signature mismatches and a superior court rules that an absentee ballot rejection was improper, election officials will need to know how to handle the vote totals. Are officials supposed to withhold certification if the decisions being appealed under 229(e) could change the result of the election? If the superior court reverses a decision of the election

superintendent, is a recertification of vote totals required as when an election contest is decided or is that only necessary when the outcome would have changed?

8.

The Court's proposed process for dealing with signature mismatches on absentee ballot applications needs further clarification about how election superintendents should handle a situation when the applicant returns a provisional ballot and the ballot oath signature still does not match other records. For example, how should officials handle a situation where a signature on a provisional absentee ballot matches the voter registration record, but not the application? Is that ballot to be accepted or rejected? Current law requires a match to the registration record, the application, and the ballot. If that is the Court's intention, the Court should add additional language clarifying that the signatures must still match across all three records or that other provisions remain valid.

9.

My staff is currently at their maximum capacity, preparing for the election. The effort of reviewing past applications will take time with only nine days left for absentee ballots to go out. Any limitation in the amount of time that elections

officials have to devote to digging through past applications would greatly assist the work of election officials.

10.

After Election Day, my staff must process all cast provisional ballots and work quickly toward final certification. While we can attempt other methods to reach a voter, it will be burdensome to provide anything more than a mailed notification to voters about the status of their ballot. The provisional ballot procedures have an option for a voter to call in and check the status of his or her ballot, which places less burden on election officials.

11.

In order to avoid the recurrence of mismatch problems in the future, our office would like to update the voter's registration records to the correct signature. Are we to handle that by accepting the signature on the ballot and replacing whatever signature is on file? If not, do we require a new voter registration form to update the signature?

6

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 25 day of October, 2018.

*[signature: Lynn Ledford]*
Lynn Ledford