IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ALTANTA DIVISION

| | | |
|---|---|---|
| GEORGIA MUSLIM VOTER PROJECT and ASIAN- AMERICANS ADVANCING JUSTICE-ATLANTA, | * * * * | |
| Plaintiffs, | * * | CA No. 1:18cv4789-LMM |
| vs. | * * | |
| BRIAN KEMP, in his official capacity as Secretary of State of Georgia; and GWINNETT COUNTY BOARD OF VOTER REGISTRATION AND ELECTIONS, on behalf of itself and similarly situated boards of registrars in all 159 counties in Georgia, | * * * * * * * * | |
| Defendants. | * * | |

## SUPPLEMENTAL DECLARATION OF CHRIS HARVEY

I, Chris Harvey, do hereby declare and state that the following facts are true and correct to the best of my knowledge, information and belief.

1.

I am over the age of 21 years and am in all ways competent to give testimony.

2.

In paragraph 1 of the proposed injunction, the Court proposes to give voters whose absentee ballot has been or will be rejected because the signature does not match until the provisional ballot deadline to verify their identity with the county registrar. The Court further gives the voter the opportunity to appeal any denial from that process pursuant to O.C.G.A. § 21-2-229(e), which gives voters up to ten days after the determination by the registrar to file an appeal of the determination in Superior Court. An appeals process is not a part of provisional ballot determinations. See O.C.G.A. § 21-2-419 and 21-2-417(c). Adding an appeals process is unworkable given the need to have votes counted and the election certified by Monday after the election. O.C.G.A. § 21-2-493(k). The deadline to verify provisional ballots is Friday after the election, and counties schedule registrar meetings that evening in order to approve the provisional ballots that their deputized staff have determined should be counted.

3.

Creating a new right of appeal for a certain subset of provisional ballots would make it impossible for counties to meet their certification deadline. O.C.G.A. § 21-2-229(e) allows a voter ten days following the determination by the registrar, which in this case would be made the Friday following the election, to file an appeal in

superior court. If any denials are outstanding, counties would be unable to certify the results on time. Allowing for the hearing and the opportunity to appeal is unnecessary given that the voter simply needs to verify their identity and that they voted the ballot in question. They can do this informally in a similar manner as spelled out in O.C.G.A. § 21-2-418(c) (setting out how voters cure not having proper photo identification at the polls). There is no right to appeal this determination because the determination is really just a verification that voter is the person that was issued the ballot and that they actually voted the ballot.

4.

The other issue regarding the workability of issuing the injunction is the interplay between the counties' determinations, the state voter registration system, and the state's electronic poll books that are used on Election Day. These systems work together to ensure that voters who have voted an absentee ballot are not allowed to vote again on Election Day. The state voter registration system, called "eNet," is the system that is used by counties to register voters and serves as their list of eligible voters. It is also the system that tracks the issuance and acceptance of absentee ballots. Some, but not all, counties use eNet to track rejections of absentee ballots. Data is extracted from eNet and placed into the ExpressPoll poll book system, which is the system that counties use to check-in voters on Election Day.

ENet is continuously used in order to check the status of outstanding absentee ballots.

5.

Implementing this injunction would necessitate changes to the data that is in eNet that is extracted to ExpressPoll. After having preliminary discussions with both Secretary of State staff and county election officials regarding the feasibility of these changes, I do not believe it is impossible to make these changes, but it is a process that involves many steps with many different people that introduces opportunities for errors that are magnified by the compressed timeframe. This process would require counties to re-issue absentee ballots without a new application, and we are still testing to see how that process will work in eNet.

6.

In order to prevent voters who have been issued an absentee ballot from voting both absentee and on Election Day, they are flagged in ExpressPoll as "AB." If a voter shows up to vote and they are flagged "AB," the voter and the poll manager must follow certain processes set forth in O.C.G.A. § 21-2-388 in order to cancel their absentee ballot so that they can vote on Election Day. If the registrar shows that a voter in "AB" status already has an accepted ballot, the voter cannot cancel that ballot or vote again. This injunction would necessitate moving people whose

absentee ballots have been rejected and have had ballots re-issued into "AB" status in ExpressPoll. Before a voter can be moved into "AB" status in ExpressPoll, the county has to re-issue a ballot to ensure that the voter's absentee status is accurately in eNet. We would then update the ExpressPoll file that counties use on Election Day to ensure an accurate status. Having an accurate status in ExpressPoll is crucial because county officials do not know who voted on Election Day until 7-10 days after Election Day. Therefore, if a voter is not marked "AB" in ExpressPoll and they should be, they could vote on Election Day and also vote an absentee ballot.

7.

Similar, but not identical procedures exist for early voting. ExpressPoll is not used for early voting. Counties check eligibility and absentee ballot status directly from eNet. Counties issue absentee ballots from eNet and would have to ensure that a voter's absentee status in eNet is accurate when they come to vote early. My initial discussions with counties indicate that due to the limited number of ballots that have been rejected for the reason that the signature does not match, they believe that they can make this update, but it does not happen instantaneously and it introduces opportunities for errors that are magnified by making these necessary changes in a

very compressed timeframe as well as opportunities for voter confusion based on the possibility of having their absentee ballot status changed without their request.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

This 25th day of October, 2018.

**CHRIS HARVEY**
Director, Elections Division
Office of the Secretary of State