```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF GEORGIA
                    ATLANTA DIVISION



RHONDA J. MARTIN, ET AL.,      )
                               )
              PLAINTIFFS,       )
                               )
        VS.                     )           DOCKET NUMBER
                               )           1:18-CV-4776-LMM
BRIAN KEMP, ET AL.,            )
                               )            ATLANTA, GEORGIA
              DEFENDANTS.       )           OCTOBER 23, 2018
                               )
                               )
_____)



               TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE LEIGH MARTIN MAY
             UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFFS:           BRUCE BROWN
                              ATLANTA, GEORGIA  30306

                              JOHN POWERS
                              WASHINGTON, DC  20005


FOR DEFENDANT KEMP:           RUSSELL WILLARD & CRISTINA CORREIA
                              ATTORNEY GENERAL'S OFFICE
                              ATLANTA, GEORGIA  30334



            (APPEARANCES CONTINUED ON THE NEXT PAGE.)

             MECHANICAL STENOGRAPHY OF PROCEEDINGS
           AND COMPUTER-AIDED TRANSCRIPT PRODUCED BY

OFFICIAL COURT REPORTER:      MONTRELL VANN,RPR,RMR,RDR,CRR
                              2160 UNITED STATES COURTHOUSE
                              75 TED TURNER DRIVE, SOUTHWEST
                              ATLANTA, GEORGIA  30303
                              (404)215-1549
```

APPEARANCES CONTINUED

FOR DEFENDANT GWINNETT COUNTY:   BRYAN TYSON & FRANK STRICKLAND
                                 STRICKLAND, BROCKINGTON, LEWIS
                                 ATLANTA, GEORGIA  30309

1          (IN ATLANTA, FULTON COUNTY, GEORGIA, OCTOBER 23, 2018, IN

2    OPEN COURT.

3          THE COURT:  OKAY.  Y'ALL CAN ALL BE SEATED.  OKAY.

4    WE ARE HERE THIS AFTERNOON IN TWO CASES, 18-CV-4776, RHONDA

5    MARTIN, ET AL. VS. BRIAN KEMP, ET AL.; AND 18-CV-4789, GEORGIA

6    MUSLIM VOTER PROJECT, ET AL. VS. BRIAN KEMP, ET AL.

7          AND IF COUNSEL WOULD INTRODUCE THEMSELVES FOR THE RECORD,

8    PLEASE.

9          MR. YOUNG:  MY NAME IS SEAN YOUNG, AND WITH ME AT

10   COUNSEL'S TABLE IS SOPHIA LYNN (PHONETIC) LAKIN, AND WE ARE

11   COUNSEL FOR THE PLAINTIFFS IN GEORGIA MUSLIM VOTER PROJECT V.

12   KEMP.

13         THE COURT:  OKAY.  THANK YOU.

14         MR. BROWN:  BRUCE BROWN, YOUR HONOR, FOR THE

15   PLAINTIFFS IN THE MARTIN CASE, AND WITH ME IS JEFF POWERS AND

16   MY CLIENT, MARILYN MARKS.

17         THE COURT:  OKAY.  THANK YOU.

18         MR. WILLARD:  GOOD AFTERNOON, YOUR HONOR.  RUSS

19   WILLARD WITH THE STATE ATTORNEY GENERAL'S OFFICE HERE ON BEHALF

20   OF SECRETARY KEMP AND STATE ELECTION BOARD.  WITH ME IS CRIS

21   CORREIA FROM OUR OFFICE ALSO REPRESENTING THE STATE DEFENDANTS.

22         THE COURT:  OKAY.  THANK YOU.

23         MR. TYSON:  GOOD AFTERNOON, YOUR HONOR.  BRYAN TYSON

24   ON BEHALF OF THE GWINNETT COUNTY BOARD OF VOTER REGISTRATIONS

25   AND ELECTIONS, AND THEN THE INDIVIDUAL MEMBERS IN THE MARTIN

1    CASE AS WELL, AND WITH ME IS FRANK STRICKLAND AND BILL LINKOUS,

2    THE COUNTY ATTORNEY.

3              THE COURT:  OKAY.  GREAT.  WELL, THANK YOU ALL.  WHAT

4    I'M GOING TO DO FIRST IS TO GIVE YOU SOME INTRODUCTORY REMARKS

5    AND GIVE YOU JUST SOME OF MY GENERAL THOUGHTS AFTER READING THE

6    VOLUMINOUS PLEADINGS AND DOCUMENTS AND SUCH THAT HAVE BEEN

7    FILED IN THE CASE.  AND WHAT I'M TRYING TO DO WITH THIS IS JUST

8    TO GIVE YOU, LIKE I SAID, MY INITIAL THOUGHTS, BECAUSE THAT MAY

9    DIRECT YOU IN TERMS OF YOUR ARGUMENT HERE TODAY.  AND IT'S NOT

10   NECESSARILY GOING TO BE CONCLUSIVE OF WHERE I GO ON THIS, BUT

11   THIS IS KIND OF WHAT I'M THINKING AFTER I'VE READ EVERYTHING.

12   AND I WILL TELL YOU, TOO, THAT I HAVE READ EVERYTHING IN A LOT

13   OF DETAIL.  THE EXCEPTION TO THAT WOULD BE SOME OF THE STUFF

14   THAT MR. BROWN FILED TODAY AND LATE LAST NIGHT.  I HAVEN'T HAD

15   A CHANCE TO GO THROUGH ALL OF THAT IN A LOT OF DETAIL.  AND

16   THAT'S REALLY ONE OF THE FIRST ITEMS THAT I WANT TO TALK ABOUT

17   NOW, IS THAT THERE ARE TWO SEPARATE CASES.  THEY DO HAVE

18   CERTAINLY OVERLAPPING FACTS AND LEGAL CONCEPTS, BUT THEY ARE IN

19   SOME RESPECTS A LITTLE BIT DIFFERENT FROM EACH OTHER.

20       WHAT I'M LIKELY TO CONCENTRATE ON IN TERMS OF MY ORDER

21   THAT'S GOING TO COME OUT OF THIS HEARING IS THE ISSUE ABOUT THE

22   REJECTION OF THE ABSENTEE BALLOTS BECAUSE OF THE SIGNATURE

23   MISMATCH ISSUE AND LOOKING AT THAT SPECIFICALLY.  I DON'T KNOW

24   AT THIS POINT IN TIME IF THE BRIEFING AND THE OPPORTUNITY FOR

25   THE DEFENDANTS TO RESPOND IS SUFFICIENT ON SOME OF THE OTHER

```
 1   ISSUES, ESPECIALLY SINCE WITH THE PRELIMINARY INJUNCTION THAT
 2   THE MARTIN PLAINTIFFS HAVE FILED BEING KIND OF EVOLVING AND NEW
 3   INFORMATION BEING PROVIDED, WHAT I'M LIKELY TO CONCENTRATE THE
 4   ORDER ON IS THE PROCEDURAL DUE PROCESS CLAIMS BECAUSE I DO
 5   THINK THOSE ARE THE CLEAREST AND POTENTIALLY, AT LEAST AT MY
 6   INITIAL THOUGHT, THE STRONGEST FOR THE PLAINTIFFS, AND LOOKING
 7   AT THAT IN TERMS OF THE SIGNATURE MISMATCH ISSUE ON BOTH THE
 8   APPLICATION TO GET A BALLOT AND THE BALLOT ITSELF.  AND WHAT
 9   I'M ALSO THINKING ABOUT IN TERMS OF RELIEF, THAT AT LEAST TO ME
10   IS THE STRONGEST THAT THE PLAINTIFF HAS PUT FORTH, WHICH IS NOT
11   THE SAME AS SAYING THIS IS WHAT I'M GOING TO DO, BUT THE
12   STRONGEST WAY TO ME IN LOOKING AT IT IS TYING THIS TO THE
13   GEORGIA STATUTE THAT IS THE 21-2-230, WHICH IS THE STATUTE THAT
14   ALREADY ALLOWS AN APPEALS PROCESS IF THERE IS AN ELIGIBILITY
15   REJECTION TO AN ABSENTEE BALLOT.  SO SOME OF THE PROPOSALS ARE
16   BROADER THAN THAT THAT WILL MAYBE POSSIBLY HAVE ME CREATE
17   COMMISSIONS AND NEW WAYS TO EVALUATE REJECTED APPLICATIONS OR
18   BALLOTS.  THAT'S LESS PERSUASIVE TO ME AT THIS JUNCTURE.  AND
19   THE RELIEF THAT SEEMS THE MOST REASONABLE, AT LEAST KIND OF AT
20   THE OUTSET, IS THAT THAT'S ALREADY BEEN ESTABLISHED BY THE
21   GEORGIA LEGISLATURE AND ALREADY IS BEING UTILIZED BY THE
22   DIFFERENT COUNTIES IN DEALING WITH THAT.
23      SO CERTAINLY IF YOU WANT TO USE YOUR TIME TO KIND OF
24   ATTACK THE BROAD RELIEF THAT'S BEING ASKED, THAT'S UP TO YOU,
25   BUT THE RELIEF THAT IS MORE I THINK TO ME REASONABLE AT THIS
```

1   POINT IS THIS MORE NARROW RELIEF.  BUT THAT DOESN'T MEAN YOU

2   HAVE TO LIMIT YOUR ARGUMENT TO THAT.  THAT'S JUST KIND OF WHAT

3   I'M LOOKING AT RIGHT NOW.  THE ISSUE ABOUT PUTTING STRICT TIME

4   LIMITS IN ALL OF THIS ALSO CONCERNS ME POTENTIALLY BECAUSE I

5   REALLY DON'T KNOW IF THERE'S TIME TO GET THIS ALL DONE AND THAT

6   THERE IS ANY EVIDENCE IN THE RECORD THAT THESE COUNTY OFFICIALS

7   ARE NOT DOING A GOOD JOB IN TERMS OF TURNING THIS OVER QUICKLY

8   AND PROMPTLY.  AND I DON'T SEE ANY EVIDENCE THERE'S A PROBLEM

9   WITH THAT.  AND SOME OF THE DIFFICULTIES IN GETTING THIS ALL

10  DONE BEFORE THE ELECTION REALLY DO FALL ON THE PLAINTIFFS

11  BECAUSE THIS HAS JUST BEEN FILED.  SO WE HAVE WHAT WE HAVE.

12  BUT I DO HAVE SOME CONCERNS ABOUT INCLUDING STRICT TIME LIMITS

13  THAT MIGHT NOT BE WORKABLE WHEN I DON'T HAVE ANY EVIDENCE THAT

14  WHAT IS GOING ON HAS BEEN DELAYED IN ANY FASHION.

15      WHAT I'LL ALSO MENTION AS WELL IS THAT, AT LEAST INITIALLY

16  TO ME, THE ISSUE OF THE SIGNATURE MISMATCH IS DIFFERENT TO ME

17  THAN SOME OF THE OTHER PROBLEMS THAT HAVE BEEN REPORTED ABOUT

18  THE ABSENTEE BALLOTS.  AND THIS IS THE REASON WHY, IS THAT IF

19  SOMEONE HAS PUT AN INCORRECT BIRTH DATE ON THE APPLICATION OR

20  SOMEONE FAILED TO SIGN THE APPLICATION AT ALL, THERE IS A

21  SYSTEM IN PLACE WHEREBY THAT PERSON IS PROVIDED NOTICE OF THAT

22  AND AN OPPORTUNITY TO CORRECT THAT.  AND I THINK THAT IN TERMS

23  OF ISSUES LIKE THAT, THAT DOES SEEM LIKE IT MIGHT BE

24  REASONABLE.  THE SIGNATURE MISMATCH TO ME SEEMS A LITTLE

25  DIFFERENT, AND THE REASON WHY IS I DON'T, AT LEAST INITIALLY,

 1   FEEL THAT THERE IS THE SAME ABILITY TO POTENTIALLY CORRECT THAT
 2   PROBLEM.  AND THE REASON WHY IS THAT IF YOU'RE TRYING TO MATCH
 3   A SIGNATURE TO YOUR VOTER CARD ON FILE, I KNOW I DID MINE
 4   PROBABLY WHEN I WAS 18.  I HAVE NO IDEA WHAT MY SIGNATURE
 5   LOOKED LIKE.  AND SOME PEOPLE HAVE MEDICAL ISSUES.  THEY'RE A
 6   LOT OLDER.  IT'S DIFFERENT FOR THEM TO CORRECT THE PROBLEM WITH
 7   THE METHOD THAT IS IN PLACE RIGHT NOW BECAUSE THEY CAN TRY TO
 8   DO THIS TEN DIFFERENT TIMES AND IT BE THE CORRECT PERSON AND
 9   NOT BE ABLE TO KIND OF RE-MAKE THE SIGNATURE THAT THEY HAVE ON
10   THEIR CARD.  SO THAT TO ME IS DIFFERENT THAN SOME OF THE OTHER
11   PROBLEMS THAT HAVE BEEN CITED AS REASONS TO REJECT BALLOTS.
12       THE ISSUE OF A CLASS ACTION AND PROCEEDING IN THAT WAY,
13   THAT'S NOT REALLY SOMETHING I THINK IS NECESSARY TO DEAL WITH
14   AT THIS JUNCTURE.  I DO AT LEAST INITIALLY THINK THAT IF AN
15   INJUNCTION IS APPROPRIATE, I DON'T SEE ANY REASON -- AND I'D
16   LIKE THE DEFENDANT TO ADDRESS THIS IF THERE IS A REASON -- WHY
17   NOT ENJOINING THE SECRETARY OF STATE'S OFFICE WOULD NOT BE
18   SUFFICIENT IN TERMS OF A WAY OF DOING THIS AND WHY I WOULD HAVE
19   TO ENJOIN EACH COUNTY INDIVIDUALLY.  BUT, AGAIN, THAT'S JUST AN
20   ISSUE THAT I HAVE OPEN.
21       AND JUST FOR KIND OF EVERYONE HERE, A LOT OF WHAT'S GOING
22   TO TAKE PLACE TODAY WILL PROBABLY SEEM VERY TECHNICAL AND MAYBE
23   AT TIMES NOT VERY INTERESTING, AND THE REASON WHY IS THAT I'VE
24   RECEIVED A STACK OF DOCUMENTS THAT I'VE ALREADY READ ABOUT THE
25   ISSUES IN THE CASE.  AND WHAT TODAY IS MORE ABOUT, AT LEAST FOR

1   ME, IS THAT I HAVE TO MAKE A DECISION AND WRITE A WRITTEN ORDER

2   EXPLAINING ALL OF THIS.  AND I'VE CALLED THE PARTIES HERE TO

3   PRESENT THEIR CASE, BUT ALSO TO ANSWER MY QUESTIONS AND MAKE

4   SURE THAT I UNDERSTAND AND THAT WHAT I WRITE IS ACCURATE.  SO

5   TO DO THAT I'M GOING TO BE A LOT LESS INTERESTED IN HEARING

6   KIND OF RHETORIC ABOUT THE POLITICS OF SOME OF THIS AND MUCH

7   MORE INTERESTED IN LOOKING AT THE LAW AND THE RULES THAT I HAVE

8   TO APPLY TO COME UP WITH THE BEST DECISION.  SO SOMETIMES WE'RE

9   GOING TO BE IN THE WEEDS ON THESE CASES AND THESE LEGAL

10  STANDARDS, AND THAT'S BECAUSE THAT'S WHAT'S ULTIMATELY GOING TO

11  BE IMPORTANT TO MAKE SURE THAT WHAT I DO IS CORRECT.  AND ALSO

12  WE'RE HERE ON IN ONE CASE A TEMPORARY RESTRAINING ORDER AND

13  ANOTHER CASE A PRELIMINARY INJUNCTION.  AND THAT IS A VERY

14  UNUSUAL POSTURE TO BE IN IN COURT BECAUSE IT'S RIGHT WHEN THE

15  CASE HAS BEEN FILED, THERE HASN'T BEEN A LOT OF TIME FOR THE

16  PARTIES TO ADDRESS THE ISSUE, IT'S COMING UP ON AN EMERGENCY

17  BASIS.  AND BECAUSE OF THAT, THE STANDARDS ARE DIFFERENT FOR

18  GRANTING AN INJUNCTION THAN YOU MAY APPRECIATE.  SO NOT ONLY

19  DOES THE PLAINTIFF HAVE TO SHOW ME THAT THEY HAVE A VALID

20  CLAIM, THEY HAVE TO SHOW A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON

21  THE MERITS, AND THAT'S A VERY HIGH STANDARD.  AND THEY ALSO

22  HAVE TO SHOW OTHER POLICY RELATED ISSUES TO ESTABLISH AN

23  INJUNCTION OTHER THAN JUST SHOWING THAT THEIR CLAIM IS

24  SUCCESSFUL.  SO IT'S A HIGH BURDEN TO OVERCOME.  AND ALSO I

25  KNOW THAT THE DEFENDANTS HAVE REQUESTED CONTINUANCES AND

1   ADDITIONAL TIME TO RESPOND.  AND I APOLOGIZE FOR NOT BEING ABLE

2   TO GIVE YOU MUCH MORE OF THAT.  WE JUST ARE MOVING VERY QUICKLY

3   ON THIS.

4       BUT, LIKE I SAID, I DON'T KNOW THAT SOME OF THE ISSUES

5   THAT WERE RAISED LATER IN THAT MARTIN CASE, WHICH WAS THE

6   SECOND MOTION THAT WAS FILED, I'M NOT NECESSARILY GOING TO

7   REQUIRE YOU TO BE UP TO SPEED ON WHAT WAS FILED TODAY IN THAT.

8   AND IF FOR SOME REASON IT BECOMES IMPORTANT IN MY DECISION TO

9   GET INTO SOME OF THOSE ISSUES, I WILL GIVE YOU AN OPPORTUNITY

10  TO BE HEARD ON THOSE AND TO FILE A WRITTEN SUBMISSION ON THAT.

11      SO ALL OF THAT IS A LOT OF PREAMBLE, BUT I THOUGHT IT

12  WOULD BE HELPFUL FOR YOU TO HAVE SOME KIND OF IDEA OF WHAT

13  MIGHT BE AT PLAY HERE.  I'VE GIVEN BOTH SIDES AN HOUR.  I DON'T

14  KNOW IF Y'ALL SEEN HOW THE TIMERS WORK.  THE TIMER ON THE RIGHT

15  IS FOR THE PLAINTIFFS AND THE LEFT IS THE DEFENDANTS'.  IF THE

16  PLAINTIFFS DON'T USE ALL THEIR TIME INITIALLY, THEN WHATEVER'S

17  LEFT ON THAT TIMER, THEY CAN HAVE IN REBUTTAL, BUT YOU DON'T

18  HAVE TO RESERVE A SPECIFIC AMOUNT OF TIME.  SO I THINK THAT

19  IS -- OH, I ALSO DID WANT TO SAY THAT CERTAINLY THE ISSUES OF

20  STANDING ARE IMPORTANT.  THE LACHES ISSUE THAT HAS BEEN RAISED

21  IS ALSO IMPORTANT.  AND LACHES JUST MEANS -- I DON'T KNOW IF

22  IT'S LATIN OR FRENCH OR WHERE IT COMES FROM -- BUT IT JUST

23  MEANS YOU WAITED TOO LONG TO DO SOMETHING ABOUT THIS, SO YOU

24  SHOULDN'T BE ALLOWED TO DO IT.  THAT'S WHAT LACHES IS.  SO

25  THOSE ARE GOING TO BE IMPORTANT ISSUES TO COVER AS WELL.  SO,

1    WITH THAT, I WILL TURN IT OVER TO THE PLAINTIFFS.  AND I

2    APOLOGIZE IN ADVANCE BECAUSE I WILL PROBABLY ASK A LOT OF

3    QUESTIONS ON BOTH SIDES, SO THANK YOU.

4            MR. YOUNG:  GOOD AFTERNOON, YOUR HONOR.  MY NAME IS

5    SEAN YOUNG AND I REPRESENT THE PLAINTIFFS IN THE GEORGIA MUSLIM

6    VOTER PROJECT V. KEMP CASE.  GIVEN THE JUDGE'S INTRODUCTORY AND

7    PRELIMINARY REMARKS, I WILL TRY MY BEST TO HOME (VERBATIM) IN

8    ON I THINK THE JUDGE IS MORE -- MOST CONCERNED ABOUT.  FIRST,

9    I'LL JUST JUMP RIGHT INTO STANDING.  AS WE'VE OUTLINED IN OUR

10   REPLY BRIEF THAT WE FILED LAST NIGHT, THE STANDARD FOR

11   ORGANIZATIONAL STANDING IN VOTER RIGHTS CASES SIMPLY REQUIRES

12   THAT THE ORGANIZATIONS DIVERTED THEIR RESOURCES FROM EXISTING

13   ACTIVITIES TOWARDS -- TOWARDS NEW PROJECTS TO REACT TO THE

14   CHALLENGED LAW.  WE HAVE AMPLY MET THAT STANDARD IN THE CASE,

15   IN THIS CASE BASED ON THE DECLARATIONS THAT WE INITIALLY

16   SUBMITTED.

17      I WOULD ALSO REMIND THE COURT THAT THIS IS A T.R.O.

18   POSTURE AND THAT THE CASE THAT WE RELY ON, WHICH IS COMMON

19   CAUSE V. BILLUPS, THAT WAS AFTER A TRIAL.  BUT EVEN WITH THE

20   STANDARD OF STANDING AFTER TRIAL, WE MEET THE SAME LEVEL OF

21   SPECIFICITY THAT THOSE PLAINTIFFS IN COMMON CAUSE MET AT TRIAL.

22   AND IF THIS COURT WERE TO BELIEVE THAT OUR DECLARATIONS WEREN'T

23   SPECIFIC ENOUGH, WE DID ATTACH SUPPLEMENTAL DECLARATIONS TO OUR

24   REPLY BRIEF LAST NIGHT THAT PROVIDE A LITTLE BIT MORE DETAIL

25   ABOUT WHY THESE ORGANIZATIONS -- WHAT EXACTLY THEY DIVERTED

1   THEIR RESOURCES FROM AND WHAT EXACTLY THEY DIVERTED THEIR

2   RESOURCES TO.  AND SO WE BELIEVE THAT STANDING HAS BEEN AMPLY

3   MET IN THIS CASE.

4           THE COURT:  NOW, IN THE DEFENDANTS' STANDING ARGUMENT

5   THEY ADDRESS THE ISSUE ABOUT WHETHER OR NOT THE HARM THAT'S

6   ALLEGED BY THE ORGANIZATIONS IN YOUR CASE, WHETHER OR NOT

7   THAT'S REDRESSABLE BY THE RELIEF AND WHERE YOU'RE GOING WITH

8   WHAT YOU'RE REQUESTING.  AND I JUST WANT TO MAKE SURE THAT YOU

9   ADDRESS THAT ARGUMENT THAT THEY'VE RAISED AS WELL.

10          MR. YOUNG:  YES.  THE HARM, IF IT IS REDRESSED TODAY,

11  THESE ORGANIZATIONS WILL NO LONGER HAVE TO DIVERT THEIR

12  RESOURCES FROM EXISTING ACTIVITIES TOWARDS SCRAMBLING TO TELL

13  VOTERS AND WARNING THEM ABOUT SIGNATURE MISMATCHES OR HOW THEY

14  MIGHT CURE IT AT THE LAST MINUTE.  THEY WON'T HAVE TO DIVERT

15  THOSE RESOURCES ANYMORE.  AND THAT HAS BEEN SUFFICIENT TO

16  ESTABLISH STANDING.

17          THE COURT:  DOES IT MATTER THAT THEY STILL WILL HAVE

18  TO DEVOTE RESOURCES TO, IF PERHAPS I ORDER AN INJUNCTION THAT

19  DOES PROVIDE SOME SORT OF APPEALS PROCESS, THAT IT COULD BE

20  THAT THE SAME AMOUNT OF RESOURCES ARE UTILIZED TO INFORM PEOPLE

21  ABOUT THE RELIEF THAT COULD BE ORDERED HERE?

22          MR. YOUNG:  NO, YOUR HONOR, BECAUSE IF AN ORDER'S

23  ENTERED TODAY -- LET ME BACK UP A BIT.  SO A LOT OF THE

24  RESOURCES THAT'S BEING DIVERTED, THE VOLUME OF RESOURCES THAT

25  ARE BEING DIVERTED ARE TO ENSURE THAT NO ONE IS

12

1   DISENFRANCHISED, THAT THEY RECEIVE THEIR REJECTION NOTICE TOO

2   LATE AND THEY CAN'T CURE.  IF THE ORDER IS ENTERED, THAT THREAT

3   IS REMOVED AND THE ORGANIZATIONS NO LONGER NEED TO MAKE THAT

4   SUCH A HIGH PRIORITY.  AND SO OF COURSE THERE WILL BE SOME DE

5   MINIMIS, HEY, WE WON THE ORDER, YOU DON'T NEED TO WORRY SO MUCH

6   ABOUT THIS ANYMORE.  AND THEN THE ORGANIZATIONS CAN ACTUALLY

7   FOCUS ON OTHER HIGHER PRIORITY ASSIGNMENTS.  AND --

8           THE COURT:  AND I JUST WANTED TO MAKE SURE THAT

9   ASSOCIATIONAL STANDING IS SOMETHING THAT IS ALLUDED TO, BUT IT

10  DOESN'T APPEAR THAT YOU'RE PROCEEDING ON THAT BASIS; IS THAT

11  CORRECT?

12          MR. YOUNG:  THAT'S CORRECT.

13          THE COURT:  OKAY.

14          MR. YOUNG:  AND THAT ACTUALLY KIND OF SPILLS OVER

15  INTO THE LACHES ARGUMENT.  I THINK, JUST STEPPING BACK AGAIN

16  FOR A MOMENT, THE PLAINTIFF ORGANIZATIONS DON'T JUST SIT WITH

17  THE GEORGIA ELECTION CODE AND FLIP THROUGH EVERY PAGE AND TRY

18  TO FIND EVERY POSSIBLE PROBLEM THAT THERE IS AND THEN DEVOTE

19  THEIR LIMITED RESOURCES TOWARDS FOCUSING ON THOSE PROBLEMS.

20  THEY HAVE LIMITED RESOURCES.  THEY HAVE TO DECIDE WHAT ARE THE

21  HIGHEST PRIORITIES.  AND THEY OFTEN DON'T DIVERT RESOURCES

22  UNLESS THEY ARE MADE AWARE OF THE MAGNITUDE OF A PARTICULAR

23  PROBLEM.  SO HERE, YOU KNOW, WE HAVE AN OCTOBER 12TH NEWS

24  ARTICLE.  AND DEFENDANTS MAY CAST SOME DOUBT ABOUT THE ARTICLE

25  ITSELF, BUT THESE ORGANIZATIONS DON'T HAVE A LOT OF TIME AND

```
1   THEY GOT TO SCRAMBLE BASED ON WHAT THEY'RE LEARNING.  WHEN THIS

2   ARTICLE BLEW UP AND SUGGESTED THAT GWINNETT WAS REJECTING

3   ABSENTEE BALLOTS AT A HIGHER RATE, THEY SPRANG INTO ACTION.

4   WITHIN THREE BUSINESS DAYS THEY FILED THIS LAWSUIT AND THEN A

5   T.R.O. THE DAY AFTER.  THERE -- THE PLAINTIFFS HAVE BEEN EVERY

6   BIT AS DILIGENT AS THEY COULD BE IN THIS CASE, AND SO LACHES

7   DOESN'T REALLY APPLY IN THIS CASE.

8          THE COURT:  IS THERE ANY EVIDENCE THAT WHAT'S GOING

9   ON NOW IS ANY DIFFERENT THAN WHAT HAS OCCURRED IN PAST

10  ELECTIONS IN TERMS OF REJECTIONS OF ABSENTEE BALLOTS, OR IS

11  THERE ANY INFORMATION ABOUT WHETHER OR NOT THIS IS A NEW

12  PROBLEM OR IF THIS IS SOMETHING THAT HAS EXISTED AT THE SAME

13  RATE OR AT THE SAME LEVEL IN PRIOR ELECTIONS?

14         MR. YOUNG:  I DON'T HAVE THAT DATA, YOUR HONOR.  I

15  DON'T KNOW IF THE RATES HAVE BEEN HIGHER OR LOWER THAN THIS

16  LOCATION.  BUT FROM OUR CLIENT'S POINT OF VIEW, THEY ALL --

17  ESPECIALLY RIGHT NOW AT THIS STAGE OF THE ELECTIONS, THEY DON'T

18  HAVE A LOT OF TIME TO PARSE OUT IN THAT AMOUNT OF DETAIL

19  WHETHER THIS IS HIGHER THAN 2016 OR 2014 OR LOWER.  THEY'RE

20  JUST REACTING TO THE NEWS.  AND AS YOUR HONOR IS WELL AWARE,

21  THERE'S NEWS REPORTS EVERY DAY OF THINGS THAT ARE GOING ON.

22  AND THEY ARE SCRAMBLING.  AND THAT IS WHY THEY DIDN'T FILE THIS

23  LAWSUIT EARLIER.

24     IF I MAY TURN TO NEXT FOR -- BRIEF FOR THE PRELIMINARY

25  INJUNCTION FACTORS THAT YOUR HONOR HAS EMPHASIZED THIS MORNING.
```

1   THE PLAINTIFFS HAVE ESTABLISHED A SUBSTANTIAL LIKELIHOOD OF

2   SUCCESS.  AS YOUR HONOR INDICATED, THE PROCEDURAL DUE PROCESS

3   CLAIM IS ONE OF THE STRONGEST CLAIMS.

4       JUST VERY BRIEFLY, DEFENDANTS DON'T DISPUTE THE WEIGHT OF

5   THE FIRST MATHEWS FACTOR, THE IMPORTANCE OF THE PRIVATE

6   INTEREST AT STAKE.  AND HERE I WOULD EMPHASIZE THAT FOR

7   VOTERS -- THEY DON'T DISPUTE THAT FOR VOTERS WHO RECEIVE THEIR

8   REJECTION NOTICES TOO LATE, THEY HAVE NO OPPORTUNITY TO CURE IF

9   THEY GET THAT NOTICE ON OR AFTER ELECTION DAY.  THE SECOND

10  MATHEWS FACTOR, THEY DON'T REALLY DISPUTE THE RISK OF ERROR

11  INHERENT IN THIS PROCESS.  YOUR HONOR ALREADY WENT THROUGH

12  THOSE FACTORS THIS MORNING.  I DON'T NEED TO REPEAT THEM HERE.

13  AND, LASTLY, IN TERMS OF THE BURDEN ON ELECTION OFFICIALS,

14  AGAIN, THERE IS AN EXISTING PROCEDURE, WHICH YOUR HONOR IS

15  AWARE OF IN 230(G), AND THE COURSE IS -- THE COURTS ROUTINELY

16  HOLD THAT WHAT WHEN THERE'S AN EXISTING PROCEDURE AND YOU'RE

17  JUST EXTENDING IT, THAT IS NOT A BURDEN THAT IS SUFFICIENT TO

18  DEFEAT A PROCEDURAL DUE PROCESS CLAIM.

19          THE COURT:  NOW, ONE THING I AM UNCLEAR ON IS ARE YOU

20  JUST ASKING FOR GOING FORWARD IF THERE ARE APPLICATIONS OR

21  BALLOTS THAT HAVE A SIGNATURE MISMATCH, THAT THEY BE PROVIDED

22  THIS APPEALS PROCESS, OR ARE YOU ASKING EVERYONE TO GO BACK AND

23  PROVIDE THIS APPEALS PROCESS TO THOSE THAT HAVE BEEN PREVIOUSLY

24  REJECTED ON THIS BASIS AND GIVE THEM A CERTAIN AMOUNT OF TIME

25  TO CURE THEIRS?

```
 1              MR. YOUNG:  AT A MINIMUM WE ARE ASKING FOR THE FIRST

 2   TYPE OF RELIEF YOU'VE DESCRIBED, BUT IN TERMS OF

 3   ADMINISTRABILITY (VERBATIM), WE WOULD BE ASKING THAT EVERYONE

 4   WHOSE BALLOTS HAS BEEN REJECTED BE GIVEN THIS OPPORTUNITY.  AND

 5   LET ME DETAIL A LITTLE BIT ABOUT THE EXISTING PROCEDURES THAT I

 6   THINK MIGHT SHED SOME LIGHT --

 7              THE COURT:  AND AS PART OF THAT AND MAYBE AFTER THAT,

 8   ALSO MAKE SURE THAT YOU'RE CLEAR ON EXACTLY WHAT YOU WANT IN

 9   TERMS OF TIME LIMITS BECAUSE THE CURRENT RULES TALK ABOUT

10   PROMPTLY.  AND I KNOW THAT YOU ARE AT LEAST APPEARING THAT YOU

11   WANT TO GRAPH KIND OF ON THIS PROCESS SOME TIME LIMITS.  SO AT

12   THE POINTS WHERE YOU ARE ASKING A CHANGE TO INCLUDE A SPECIFIC

13   TIME, IF YOU CAN HIGHLIGHT THAT BECAUSE THAT WOULD BE HELPFUL.

14              MR. YOUNG:  SURE.  AND I'LL GET TO THAT AFTER I JUST

15   TALK REAL BRIEFLY.

16              THE COURT:  THAT'S FINE.

17              MR. YOUNG:  ONE THING I WANT TO POINT YOUR HONOR TO

18   IS A GEORGIA REGULATION.  I THINK THIS MAY HELP RESOLVE SOME OF

19   THE, WHAT DO WE DO WITH THOSE WHO HAVE ALREADY CAST BALLOTS.

20   IT'S 183-1-14-.09.  I APOLOGIZE, YOUR HONOR.  I CAN GIVE YOU A

21   COPY RIGHT NOW --

22              THE COURT:  THAT'S FINE.

23              MR. YOUNG:  OKAY.

24              THE COURT:  I'VE GOT A LOT OF STATUTES UP HERE, BUT I

25   DON'T FOR SOME REASON HAVE THAT ONE.
```

UNITED STATES DISTRICT COURT OFFICIAL CERTIFIED TRANSCRIPT

1          MR. YOUNG:  IT'S -- I AM NOT -- IT MAY HAVE BEEN

2     CITED.  FRANKLY I'M NOT SURE IF IT WAS CITED IN THE BRIEFS.

3          THE COURT:  THAT'S FINE.

4          MR. YOUNG:  I APOLOGIZE.  IT SAYS THAT, QUOTE, IF

5     THE BOARD OF REGISTRARS OR ABSENTEE BALLOT CLERK REJECTS OR

6     OTHERWISE FAILS TO CERTIFY AN ABSENTEE BALLOT, THE ELECTION --

7     THE ELECTOR SHOULD BE PROVIDED THE OPPORTUNITY TO VOTE IN AN

8     ELECTION.

9          AND SO FOR THE PEOPLE WHOSE BALLOTS HAVE BEEN REJECTED SO

10    FAR, THEY DO HAVE AN OPPORTUNITY TO VOTE IN PERSON TO CURE

11    THAT.  AND IF THEY DO, THE PROBLEM IS RESOLVED.  BUT FOR THOSE

12    WHO DON'T, THEY NEED TO BE GIVEN SOME KIND OF PROCESS AT LEAST

13    THREE DAYS AFTER ELECTION DAY TO RESOLVE THAT ISSUE.  FOR

14    EXAMPLE, VOTERS WHO HAVE CAST AN ABSENTEE BALLOT BECAUSE THEY

15    CAN'T VOTE IN PERSON BECAUSE OF AGE OR TRANSPORTATION OR

16    DISABILITY, THEY SHOULD BE GIVEN THE OPPORTUNITY TO CURE THAT

17    SITUATION, AT LEAST UNTIL THREE DAYS AFTER ELECTION DAY.  SO WE

18    ARE ASKING THAT THOSE VOTERS BE COVERED AS WELL.

19         AS FOR YOUR HONOR'S POINT ABOUT THE -- OUR REQUEST FOR ONE

20    DAY SO THAT WE GET SOME CLARITY ON THE PROMPTLY PART OF THE

21    STATUTE, WE ARE ASKING FOR A LITTLE BIT OF CLARITY THAT BECAUSE

22    WE'VE SEEN SOME VARIATION IN HOW LONG ELECTION OFFICIALS TAKE.

23    UNDER CHRIS HARVEY'S DECLARATION, HE SAID HE'S CALLED A LOT OF

24    CLERKS.  THEY SOMETIMES TAKE ONE DAY, THEY SOMETIMES DO IT THE

25    SAME DAY.  IN GWINNETT COUNTY THEY SAY THEY TAKE UP TO THREE

```
 1    DAYS.  AND GIVEN THAT THE ELECTION IS DOWN TO THE WIRE, WE JUST
 2    WANT TO CABIN A LITTLE BIT OF THAT RESPONSIBILITY -- OF THAT
 3    TIME BY WHICH SOME -- THE ELECTION OFFICIALS CAN REJECT THAT
 4    BALLOT.  HAVING SAID THAT, BECAUSE WE'RE ASKING FOR VOTERS TO
 5    HAVE AN OPPORTUNITY UP TO THREE DAYS AFTER ELECTION DAY OR
 6    THREE DAYS AFTER THEY RECEIVE THE REJECTION, WHICHEVER IS
 7    LATER, WE ACKNOWLEDGE THAT THAT CAN PROVIDE THAT LAYER OF
 8    PROTECTION FOR THE VOTER SO THAT IF ELECTIONS OFFICIALS TAKE
 9    TOO LONG TO SEND THE REJECTION, THERE WILL ALWAYS BE A
10    THREE-DAY BUFFER BY WHICH A VOTER CAN CURE IT.
11         THE SECOND FACTOR IS IRREPARABLE HARM.  AND I JUST WANT TO
12    REALLY BRIEFLY EMPHASIZE THIS BECAUSE DEFENDANTS SAY A LOT
13    ABOUT HOW, OH, PLAINTIFFS DON'T IDENTIFY A SINGLE VOTER WHO HAS
14    VOTED ABSENTEE AND CAN'T CURE IN PERSON.  WE ARE GETTING DOWN
15    TO THE WIRE HERE, AND THE RISK INCREASES WITH EACH PASSING DAY
16    THAT A VOTER -- THAT AN ABSENTEE VOTER WILL NOT RECEIVE A
17    REJECTION UNTIL IT'S TOO LATE.  AND LET ME JUST EMPHASIZE THAT
18    POINT.  IN ALL OF THE BRIEFS THAT WE SUBMITTED, DEFENDANTS DO
19    NOT DISPUTE, BECAUSE THEY CAN'T, THAT WHEN AN ABSENTEE VOTER
20    RECEIVES A REJECTION NOTICE AFTER ELECTION DAY, IT IS TOO LATE
21    FOR THEM TO CURE.  THE SECRETARY CONCEDES THAT POINT ON PAGE 29
22    OF THEIR BRIEF.  AND FOR THAT POPULATION, GIVEN THE UNCERTAINTY
23    OF MAIL, GIVEN THE UNCERTAINTY OF HOW LONG IT TAKES FOR
24    ELECTIONS OFFICIALS TO PROCESS THE BALLOT --
25              THE COURT:  BUT ISN'T THAT AN INHERENT PART OF
```

```
 1    ABSENTEE VOTING?  BECAUSE WHAT I'M STRUGGLING WITH A LITTLE BIT
 2    IS THAT IF YOU CHOOSE TO VOTE BY ABSENTEE VOTING, IT'S
 3    DIFFERENT.  IT'S GOT RULES.  IT'S GOT RISKS TO IT, TOO, THAT IF
 4    YOU DON'T DO IT RIGHT, IT MAY BE A PROBLEM.  AND THERE IS KIND
 5    OF TWO WAYS THAT THERE ARE CONSTITUTIONAL PROBLEMS AND DUE
 6    PROCESS CONCERNS, BUT SOME OF THIS JUST SEEMS TO BE GENERAL
 7    PROBLEMS WITH THE CONCEPT OF ABSENTEE VOTING BECAUSE IT'S
 8    ALWAYS BEEN A PROBLEM THAT IF YOU DO IT WRONG, YOU MAY NOT GET
 9    A CHANCE TO CORRECT IT.  SO SOME OF WHAT YOU'RE SAYING JUST
10    SEEMS TO BE INHERENTLY ABSENTEE VOTING THAT DOESN'T SEEM TO BE
11    SOMETHING UNIQUELY CONSTITUTIONAL.  SO LIKE WHAT YOU JUST SAID,
12    IF YOU MESS UP AND YOU SEND YOUR THING IN RIGHT AT THE END OF
13    THE TIME PERIOD, YOU MESS IT UP SOMEHOW, THAT'S A RISK THAT YOU
14    TAKE, BUT I DON'T KNOW THAT THAT IS A CONSTITUTIONAL VIOLATION.
15    IT'S JUST A CREATURE OF ABSENTEE VOTING.
16              MR. YOUNG:  I WOULD DISPUTE THE PREMISE A LITTLE BIT.
17    THESE AREN'T VOTERS WHO HAVE MESSED UP.  THEY'VE ACTUALLY DONE
18    EVERYTHING RIGHT.  THE GEORGIA LAW ALLOWS THEM TO CAST ABSENTEE
19    BALLOTS SO LONG AS THEY'RE RECEIVED BY ELECTION DAY.  THAT'S
20    THE DEADLINE.  SO THOSE VOTERS VOTE DURING THAT DEADLINE, THEY
21    FILL IN THE BLANKS, THEY SIGN THEIR OATH, THEY HAVE --
22    INCIDENTALLY I WOULD SAY THAT NOTHING ON THE ABSENTEE BALLOT
23    SAYS THAT THEIR SIGNATURES WILL BE COMPARED.  BUT EVEN PUTTING
24    THAT ASIDE, THEY SIGN THEIR OATH THE WAY THEY KNOW HOW, AND
25    THEN, THROUGH NO FAULT OF THE VOTER, A NON-EXPERT HANDWRITING
```

1   ANALYST DECIDES THAT THEIR SIGNATURES DOESN'T MATCH.  AND THE

2   VOTER HASN'T DONE ANYTHING WRONG.  AND WE JUST ARE CREATING A

3   BACK-END SAFETY NET JUST FOR THOSE VOTERS TO MAKE SURE THEY

4   EVEN HAVE THE OPPORTUNITY TO HAVE THEIR BALLOT COUNTED.

5          THE COURT:  ARE THERE ANY EXAMPLES THAT YOU'RE AWARE

6   OF -- I NOTED THAT THERE IS CERTAINLY THE POTENTIAL FOR THE

7   PEOPLE LOOKING THROUGH THESE SIGNATURES TO MAKE A MISTAKE IN

8   TERMS OF -- I CAN SAY WHY A SIGNATURE MAY BE DIFFERENT, AND

9   THAT'S A SEPARATE ISSUE, BUT DO YOU HAVE ANY EVIDENCE THAT THEY

10  HAVE, AT LEAST IN YOUR SIDE'S OPINION, INCORRECTLY STATED THAT

11  A SIGNATURE WAS WRONG WHEN IT APPEARED THAT IT WASN'T?

12         MR. YOUNG:  YES, WE DO.  EXHIBIT G I BELIEVE OF OUR

13  REPLY BRIEF THAT WE SUBMITTED LAST NIGHT, WE DID COME INTO

14  CONTACT WITH A VOTER WHO SWEARS THAT SHE MAILED IN HER ABSENTEE

15  BALLOT ON OCTOBER 5TH, SHE GOT A REJECTION NOTICE DATED

16  OCTOBER 12TH, AND NOW SHE'S GOING TO ATTEMPT TO VOTE IN PERSON,

17  WHICH REQUIRES A 25-MINUTE DRIVE.  SHE SWEARS THAT SHE WAS THE

18  SAME PERSON WHO CAST THE BALLOT AND WHO SIGNED IT AND YET HER

19  SIGNATURE WAS REJECTED.  SO THOSE ARE THE VOTERS THAT WE'RE

20  MOST CONCERNED ABOUT, ESPECIALLY AS WE GET DOWN TO THE WIRE.

21         THE COURT:  OKAY.  AND I KNOW THAT THE DEFENDANTS

22  HAVE PROVIDED AT LEAST COPIES OF THE TWO SIGNATURES FOR THE

23  BALLOTS I BELIEVE THAT WERE REJECTED BECAUSE OF THE SIGNATURE.

24  WHEN LOOKING THROUGH THOSE DID YOU HAVE ANY CONCERN THAT THAT

25  DECISION WAS IMPROPER JUST BASED PURELY ON THE SIGNATURE

1    THEMSELVES?

2            MR. YOUNG:  THAT'S A TOUGH QUESTION FOR ME TO ANSWER.

3    AND I'M NOT TRYING TO BE CUTE WHEN I SAY THIS BECAUSE I'M NOT A

4    HANDWRITING EXPERT.  I DON'T -- I DON'T KNOW.  LOOK, I'LL

5    CERTAINLY CONCEDE THERE MIGHT BE SOME EXAMPLES AND THEN

6    EVERYONE IN THIS ROOM MIGHT AGREE, OH, THAT'S NOT A MATCH, BUT

7    THAT'S NOT GOOD ENOUGH.  THAT RISK OF ERROR IS STILL TOO GREAT.

8    AND WE'RE JUST ASKING FOR THE VOTER -- AN OPPORTUNITY FOR THE

9    VOTER TO JUST EXPLAIN THE DISCREPANCY OR OTHERWISE PROVE THAT

10   THEY ARE WHO THEY SAY THEY ARE.  WE'RE NOT ASKING THAT THESE

11   BALLOTS GET AUTOMATICALLY COUNTED.  AND THE INHERENT RISK IN

12   THIS CASE IS JUST TOO GREAT FOR US NOT TO HAVE THE MINIMAL DUE

13   PROCESS PROTECTIONS THAT WE NEED TO PROTECT THESE VOTERS.  AND

14   THE RISK OF IRREPARABLE HARM HERE IS GREAT.  I JUST WANT TO

15   VERY QUICKLY -- YOU KNOW, THERE'S 14 DAYS UNTIL ELECTION DAY,

16   RIGHT.  BASED ON GWINNETT'S REPRESENTATIONS OF HOW LONG THEY

17   TAKE TO PROCESS ABSENTEE BALLOTS, YOU KNOW, IF SOMEONE MAILS IN

18   THEIR ABSENTEE BALLOT, TAKES ABOUT ONE TO THREE DAYS FIRST

19   CLASS MAIL FOR THEM TO RECEIVE IT, THEN THEY HAVE TO PROCESS

20   IT, POTENTIALLY INVOLVING FIVE ELECTION OFFICIALS.  WE DON'T

21   KNOW HOW LONG THAT TAKES.  THEN GWINNETT HAS UP TO THREE DAYS

22   TO SEND THE REJECTION, AND THEN ONE TO THREE DAYS MORE FOR THE

23   REJECTION NOTICE TO ARRIVE.  SO, AT BEST, WE'RE TALKING ABOUT A

24   FIVE- TO NINE-DAY WINDOW.  THERE'S ONLY 14 DAYS LEFT TO

25   ELECTION DAY.  EVERY DAY THAT PASSES, THE RISK IS SUBSTANTIALLY

1   INCREASED THAT A VOTER WILL NOT RECEIVE A REJECTION NOTICE

2   UNTIL IT'S TOO LATE.  AND THAT IS WHY THE BALANCE OF EQUITIES

3   TILT SO STRONGLY IN PLAINTIFFS' FAVOR.  WE'RE DEALING WITH A

4   PERMANENT DISENFRANCHISEMENT OF AN INCREASING POOL OF VOTERS,

5   MANY OF WHOM VOTE THROUGH THE WEEKEND LEADING UP TO ELECTION

6   DAY.  WE ACTUALLY -- JUST REAL BRIEFLY THIS MORNING WE DID COME

7   UP WITH SOME NUMBERS OF HOW MANY VOTERS CAST BALLOTS FROM

8   THURSDAY THROUGH ELECTION DAY IN 2014, AND IT'S IN THE HUNDREDS

9   OF THOUSANDS OUT OF ABOUT A MILLION BALLOTS THAT WERE CAST.

10  AND WE DO HAVE SOMEONE HERE TO TESTIFY ABOUT HOW THEY GOT THOSE

11  NUMBERS, IF YOUR HONOR DESIRES.

12          THE COURT:  I DON'T THINK THAT'S GOING TO BE

13  DETERMINATIVE, SO THAT'S --

14          MR. YOUNG:  YEAH, THAT'S WHAT -- THAT'S WHAT I

15  FIGURED.  THE BOTTOM LINE IS THERE'S GOING TO BE A LOT OF

16  VOTERS.  AND WE NEED TO MITIGATE THAT RISK TO ENSURE THERE'S A

17  BACK-END SAFETY NET.  AND THAT IS ALSO WHY THE PUBLIC INTEREST

18  ALSO TILTS SO STRONGLY IN PLAINTIFFS' FAVOR.

19          THE COURT:  NOW, I KNOW I'VE BEEN ASKING QUESTIONS

20  AND MOVING YOU AROUND FROM YOUR ARGUMENT, BUT I DO WANT TO MAKE

21  SURE THAT, IN TERMS OF PROCEDURAL DUE PROCESS ARGUMENT, THAT

22  YOU AND THE DEFENDANTS HAVE KIND OF A DIFFERENT TAKE ON SOME OF

23  THE PRECEDENT INVOLVED IN THIS IDEA -- AND I DON'T THINK I

24  WROTE THE WORDS DOWN EXACTLY, SO I'M GOING TO SAY THEM PROBABLY

25  INACCURATELY, BUT THEY TALK ABOUT WHEN YOU'RE EVALUATING THESE

```
 1   STATUTES -- AND I KNOW IT'S A FACIAL ATTACK, SO WE JUST LOOK AT

 2   THE STATUTE -- BUT THIS IDEA OF IS THERE A CONSTITUTIONALLY

 3   VALID WAY OF APPLYING THIS STATUTE SEEMS TO BE SOMETHING THAT

 4   Y'ALL KIND OF ANALYZE IN A DIFFERENT WAY.  SO IF YOU CAN

 5   RESPOND TO THE ARGUMENTS THAT THEY'VE PUT ON THAT BECAUSE I

 6   THOUGHT THAT WAS AN IMPORTANT PART OF THEIR ARGUMENT.

 7           MR. YOUNG:  THAT -- AGAIN, I MIGHT DISPUTE THE

 8   PREMISE OF THAT QUESTION.

 9           THE COURT:  NO.  AND I WANT YOU TO.

10           MR. YOUNG:  OH, OKAY.

11           THE COURT:  I WANT YOU TO ADDRESS THAT CONCEPT.

12           MR. YOUNG:  RIGHT.  THE ELEVENTH CIRCUIT SET OUT IN

13   J.R. V. HANSEN THE PROPER WAY TO CONDUCT FACIAL DUE PROCESS

14   CHALLENGES TO A PROCEDURAL DUE PROCESS VIOLATION.  AND IT KIND

15   OF INVOLVES, YOU KNOW, TWO STEPS.  FIRST, YOU LOOK AT THE

16   STATUTE AS WRITTEN TO DETERMINE WHETHER THE PROCEDURE PROVIDED

17   COMPORTS WITH DUE PROCESS.  AND, SECOND, YOU DON'T RELY ON THE

18   DEFENDANTS' EXPLANATION FOR HOW IT OPERATES IN PRACTICE.

19   THAT'S STRAIGHT FROM ELEVENTH CIRCUIT LAW.  AND IF YOU APPLY

20   THAT TEST HERE, PLAINTIFFS HAVE ESTABLISHED A SUCCESSFUL CLAIM.

21   YOU LOOK AT THE STATUTE AS WRITTEN.  THE STATUTE DOESN'T HAVE A

22   TIME LIMIT OF WHEN REJECTIONS SHOULD BE SENT.  BUT EVEN IF IT

23   DOES, THERE'S NO OPPORTUNITY FOR THE VOTER TO CONTEST THE

24   DECISION.  AND WE DON'T RELY ON THE DEFENDANTS' DESCRIPTION OF

25   HOW IT OPERATES IN PRACTICE, HOW AND WHEN COUNTIES SEND
```

1   REJECTION NOTICES OR HOW FAST THEY DO IT.  THE ELEVENTH CIRCUIT

2   SAYS WE DON'T LOOK AT THAT.  AND SO THAT IS THE ANSWER TO

3   DEFENDANTS' ARGUMENT.  AND WHAT IS UNDISPUTED, AT A MINIMUM,

4   YOU KNOW, WHETHER WE GO WITH FACIAL OR AS APPLIED, WHAT IS

5   UNDISPUTED FOR PURPOSES OF THIS T.R.O. IS THAT THERE IS A POOL

6   OF VOTERS THAT DEFENDANTS CANNOT DISPUTE THAT WILL BE

7   PERMANENTLY DISENFRANCHISED WHEN THEY GET THEIR REJECTION

8   NOTICES TOO LATE, AND WE'RE JUST ASKING FOR A BACK-END SAFETY

9   NET FOR THOSE PEOPLE.

10          THE COURT:  WELL, AT LEAST MY READING OF IT WAS THAT

11  THEY DO SEEM TO DISPUTE THAT BECAUSE MY READING OF IT IS THAT

12  THEY SAY, OKAY, YES, THERE WILL BE SOME PEOPLE THAT ARE -- I

13  THINK THEY GO THROUGH THIS "IF SCENARIO" KIND OF AND SAY THAT

14  REALLY THIS ISN'T AN ACTUAL PROBLEM BECAUSE YOU'RE PROVIDED

15  NOTICE, YOU HAVE THE ABILITY TO FIX THE PROBLEM, YOU HAVE THE

16  ABILITY AT ANY TIME TO KIND OF REMOVE YOURSELF FROM THE

17  ABSENTEE PROCESS AND GO VOTE, EARLY VOTING, VOTE IN PERSON,

18  YOU'VE GOT THIS THING.  AND, YES, YOU MAY HAVE, IF YOU GO DOWN

19  ALL THESE IF'S, THERE MAY BE THE POSSIBILITY OF ONE PERSON, FOR

20  VARIOUS REASONS, CAN'T CORRECT THEIR SIGNATURE, CAN'T EARLY

21  VOTE, CAN'T FIX IT, CAN'T DO THAT, BUT ENGAGING IN THAT KIND

22  OF THE LIKELIHOOD THAT HAPPENING IS SO REMOTE AS TO NOT

23  ACTUALLY BE A SITUATION THAT WILL HAPPEN.  AND SO I THINK THEY

24  DO DISPUTE THAT PIECE OF WHAT YOU'RE ARGUING.

25          MR. YOUNG:  YEAH, AND I'LL JUST MAKE -- HAVE TWO

1  RESPONSES.  I DON'T WANT TO BELABOR THIS POINT, BUT DEFENDANTS

2  KIND OF PROFFER AN ANALYSIS OF HERE'S A HYPOTHETICAL.  THAT'S

3  JUST NOT HOW THE ELEVENTH CIRCUIT HAS CONDUCTED FACIAL DUE

4  PROCESS -- PROCEDURAL DUE PROCESS CHALLENGES.  AND IT'S NOT

5  EVEN HOW THEY'VE CONDUCTED DUE PROCESS CHALLENGES, FOR EXAMPLE,

6  IN GRAYDEN WHERE IT'S NOT CLEAR WHETHER IT'S FACIAL OR AS

7  APPLIED.  THEY DON'T SEE THERE'S A HYPOTHETICAL PERSON WHO

8  SHOULD BE DEPRIVED OF THEIR RIGHT.  AND BECAUSE THAT'S -- THAT

9  COULD HAPPEN, THEN THERE'S NO DUE PROCESS CHALLENGES, NOR DO

10  THEY SAY, MORE TO DEFENDANTS' POINT, THERE'S A HYPOTHETICAL

11  PERSON WHO SHOULDN'T BE DEPRIVED OF THAT RIGHT AND BECAUSE THEY

12  PLACED A PHONE CALL -- BECAUSE THEY CAN PLACE A PHONE CALL TO

13  SOMEONE'S BUDDY THEY KNOW, THEY CAN GET OUT OF BEING

14  INSTITUTIONALIZED OR THEY CAN GET OUT OF BEING EVICTED OR THEY

15  CAN GET OUT OF BEING ARRESTED FOR TRESPASS BECAUSE THEIR BUDDY

16  IS THE POLICE OFFICER WHO ARRESTED THEM AND THEY GOT OUT OF IT.

17  YOU KNOW, YOU CAN PLAY THAT GAME WITH ALL OF THESE DUE PROCESS

18  CHALLENGES, AND THAT'S JUST NOT THE ANALYSIS THAT THE COURTS GO

19  THROUGH.  YOU LOOK AT THE STATUTE AS WRITTEN.  YOU LOOK TO SEE

20  WHETHER THERE ARE PROCEDURES, AND YOU DRAW YOUR CONCLUSION FROM

21  THAT.

22       AND THE SECOND KIND OF ALTERNATIVE ARGUMENT IS IF THIS

23  COURT IS INCLINED -- YOU KNOW, WE NEED NOT HASH OUT IN DETAIL

24  WHETHER THIS IS FACIAL OR AS APPLIED AT THIS STAGE BECAUSE IT

25  IS CLEAR THAT FOR VOTERS WHO RECEIVE REJECTION NOTICES TOO

1   LATE, THEY ARE DEPRIVED ABSOLUTELY OF PROCEDURAL DUE PROCESS.

2   AT A MINIMUM THEY DESERVE A REMEDY.  AND I KNOW YOU SAID I

3   MIGHT HAVE AN ARGUMENT.  I'M ONLY HERE TO ANSWER YOUR HONOR'S

4   QUESTIONS, SO I DON'T HAVE ANY ARGUMENT.  I'LL JUST PRESERVE

5   THE REST OF MY TIME FOR REBUTTAL.

6           THE COURT:  OKAY.

7           MR. YOUNG:  THANK YOU.

8           THE COURT:  AND YOU'LL PROBABLY KNOW FROM THE

9   QUESTIONS I ASKED THEM WHAT YOU MAY WANT TO COVER, SO THAT'S

10  FINE.  THANK YOU.

11          MR. YOUNG:  MM-HUM.

12          THE COURT:  AND IT WAS AN HOUR PER SIDE, NOT PER

13  PARTY, SO...

14          MR. BROWN:  YES.

15          THE COURT:  OKAY.  THANK YOU.

16          MR. BROWN:  YOUR HONOR, MY NAME IS BRUCE BROWN, AND I

17  REPRESENT THE MARTIN PLAINTIFFS IN THE MARTIN CASE.  I'M HAPPY

18  TO HAVE WITH ME CO-COUNSEL, MR. JOHN POWERS, A LAWYER WITH THE

19  VOTING RIGHTS PROJECT OF THE LAWYERS COMMITTEE FOR CIVIL RIGHTS

20  UNDER THE LAW.  AND MR. POWERS IS GOING TO START US OFF

21  DISCUSSING STANDING AND SOME OTHER INTRODUCTORY ISSUES, AND

22  THEN I'LL FOLLOW HIM, BUT WE'LL BE WITHIN OUR TIME.

23          THE COURT:  OKAY.  THAT'S FINE.  AND IF Y'ALL HAVE

24  ANYTHING TO ADD TO ANY OF THE QUESTIONS I ASKED MR. YOUNG, I'M

25  NOT NECESSARILY GOING TO ASK THEM AGAIN, BUT YOU'RE WELCOME TO

```
 1   CHIME IN ON ANY OF THAT, TOO, THAT YOU WOULD LIKE.

 2            MR. BROWN:  THANK YOU, YOUR HONOR.

 3            MR. POWERS:  GOOD MORNING, YOUR HONOR.

 4            THE COURT:  GOOD MORNING.

 5            MR. POWERS:  JOHN POWERS REPRESENTING THE MARTIN

 6   PLAINTIFFS.  MR. YOUNG ALREADY COVERED ORGANIZATIONAL STANDING

 7   IN SOME DETAIL.  I'D LIKE TO ADD A COUPLE OF POINTS TO WHAT HE

 8   SAID AND FOCUS A LITTLE ON OUR ORGANIZATIONAL PLAINTIFF, THE

 9   GEORGIA COALITION FOR THE PEOPLE'S AGENDA.

10            THE COURT:  AND ONE QUESTION I HAD, AND I DON'T KNOW

11   THE WAY YOU SPLIT IT UP WHO'S THE RIGHT PERSON TO ASK, BUT

12   THERE WERE SOME OVERLAPS OF CLAIMS.  I SAW THAT IN YOUR BRIEF

13   THERE WAS SOME STATEMENT THAT COULD BE PERCEIVED AS A

14   PROCEDURAL DUE PROCESS CLAIM, BUT IT WASN'T CLEAR THAT, AT

15   LEAST TO ME, THAT Y'ALL WERE MAKING A PROCEDURAL DUE PROCESS

16   CLAIM.  AND I HAVE SOME CONCERNS OF KIND OF, LIKE, MIXING AND

17   MATCHING THE PLAINTIFFS AND CLAIMS FROM THE DIFFERENT CASES TO

18   GET WHERE YOU NEED TO GO.  SO KIND OF MAKE SURE THAT YOU TIE

19   THAT TOGETHER FOR ME IN TERMS OF THE CLAIMS AND THE PEOPLE THAT

20   ARE IN THE SEPARATE CASES BECAUSE AT LEAST AT THIS POINT WE'RE

21   HAVING A JOINT HEARING, BUT THE CASES THEMSELVES ARE NOT

22   CONSOLIDATED, AT LEAST AT THIS POINT IN TIME.

23            MR. POWERS:  YES.  AND MY COLLEAGUE, MR. BROWN, WILL

24   GO INTO IT IN MORE DETAIL, BUT JUST SORT OF AT THE HIGHEST

25   50,000-FOOT LEVEL, THE MARTIN PLAINTIFFS ARE BRINGING CLAIMS
```

1    UNDER THE BURDEN ON THE FUNDAMENTAL RIGHT TO VOTE AND ALSO

2    UNDER EQUAL PROTECTION.

3           THE COURT:  SO YOU'RE NOT MAKING A PROCEDURAL DUE

4    PROCESS CLAIM; CORRECT?

5           MR. POWERS:  CORRECT.

6           THE COURT:  OKAY.

7           MR. POWERS:  I KNOW YOUR HONOR HAS NOT HAD TIME TO

8    READ THE HEARING BRIEF FILED BY THE MARTIN PLAINTIFFS EARLY

9    THIS MORNING.  I WANTED TO FLAG WITH RESPECT TO ORGANIZATIONAL

10   STANDING.  WE IDENTIFY A NUMBER OF CASES IN THE ELEVENTH

11   CIRCUIT THAT MIGHT BE USEFUL TO YOUR HONOR, IN PARTICULAR THE

12   BROWNING -- FLORIDA STATE CONFERENCE OF THE N.A.A.C.P. VS.

13   BROWNING, ARCIA (PHONETIC), OF COURSE YOUR HONOR'S PROBABLY

14   FAMILIAR WITH THE GEORGIA BILLUPS PHOTO I.D. CASE.  THERE'S

15   ALSO THE GREATER BIRMINGHAM MINISTRIES CASE IN THE NORTHERN

16   DISTRICT OF ALABAMA, AS WELL AS THE V.C. TEXAS PHOTO I.D. CASE

17   PROVIDES A SUBSTANTIAL BODY OF CASE LAW SUPPORTING ALL OF THE

18   ORGANIZATIONAL PLAINTIFFS, ORGANIZATIONAL STANDING CLAIMS HERE,

19   INCLUDING THE GEORGIA COALITION FOR THE PEOPLE'S AGENDA.

20          FOCUSING ON THE GEORGIA COALITION FOR A SECOND, I WANT TO

21   FLAG THE PEWS TO THE POLLS PROGRAM THAT THE GEORGIA COALITION

22   IS ORGANIZING AND RUNNING BECAUSE IT SORT OF CRYSTALLIZES THE

23   PROBLEMS THAT ARE IN THE PROCESS OF OCCURRING IN GEORGIA AND

24   HOW THE THREAT OF IMMINENT AND FUTURE HARM IS LIKELY TO WORK

25   OUT.  THE GEORGIA COALITION WORKS IN PREDOMINANTLY MINORITY

1  COMMUNITIES IN THE ATLANTA METRO AREA AND ORGANIZES AN

2  IN-PERSON SOULS TO THE POLLS PROGRAM, AS WELL AS AN ABSENTEE

3  BALLOT PEWS TO THE POLLS PROGRAM.  AND THE WAY THAT WORKS IS

4  THE GEORGIA COALITION WORKS WITH A BUNCH OF CHURCHES, THEIR

5  SOCIAL JUSTICE CONTACTS, AND WITH CHURCH LEADERSHIP TO IDENTIFY

6  A SPECIFIC DATE ON WHICH ALL OF THE CHURCHES' CONGREGANTS WHO

7  ARE INTERESTED IN PARTICIPATING IN THE PEWS TO THE POLLS

8  PROGRAM WILL SUBMIT THEIR ABSENTEE BALLOTS IN LARGE MAIL BINS

9  THAT ARE PUT NEXT TO THE PEWS AT THE CHURCH ON THE SPECIFIED

10  DATE.  THIS -- FOR THIS NOVEMBER GENERAL ELECTION THE PEWS TO

11  THE POLLS DATE IN -- FOR MOST OF THE CHURCHES THAT THE GEORGIA

12  COALITION WORKS WITH WAS THIS PAST SUNDAY, OCTOBER 21ST.  SO,

13  ACCORDING TO THE -- AS MR. YOUNG ALLUDED TO, THOSE ABSENTEE

14  BALLOTS ARE GOING TO BE DELIVERED TO THE BOARD OF ELECTIONS

15  WITHIN THE NEXT ONE TO THREE DAYS WITH SOME ADDITIONAL TIME FOR

16  PROCESSING AND GETTING NOTICE BACK TO THE VOTERS.  HELEN BUTLER

17  SIGNED A DECLARATION BASED ON HER EXPERIENCE WORKING

18  EXTENSIVELY WITH THE PEWS TO THE PROGRAM -- POLLS PROGRAM FOR

19  MANY YEARS, MANY VOTERS WON'T RECEIVE NOTICE THAT THEIR

20  ABSENTEE BALLOT WAS REJECTED UNTIL THE FOLLOWING WEEK, THE WEEK

21  OF OCTOBER 29TH, SPILLING INTO THE BEGINNING OF NOVEMBER.  SO

22  THAT IS -- THAT IS GOING TO PROVIDE VOTERS WHOSE ABSENTEE

23  BALLOTS WERE REJECTED WITH VERY LITTLE TIME TO VOTE BY OTHER

24  MEANS.

25          THE COURT:  IS THIS A NEW PROGRAM OR HAS THAT BEEN

```
 1   AROUND FOR THE OTHER ELECTIONS AS WELL?

 2           MR. POWERS:  THIS PROGRAM HAS BEEN AROUND FOR PAST

 3   ELECTIONS.  IN THIS ELECTION THERE ARE MORE THAN 3,500 PERSONS

 4   PARTICIPATING IN PEWS TO THE POLLS PROGRAMS JUST AT CHURCHES

 5   THAT THE GEORGIA COALITION WORKS WITH.  AND AS THE MARTIN

 6   PLAINTIFFS HAVE A BURDEN, YOUR HONOR ASKED A QUESTION ABOUT,

 7   YOU KNOW, WHAT IS -- YOU KNOW, WHAT ARE THE ABSENTEE NUMBERS

 8   LIKE IN THIS ELECTION VERSUS PAST ELECTIONS.  AND WE HAVE

 9   BRIEFED THIS ISSUE AND POINTED OUT THAT BECAUSE OF CONCERNS

10   AMONG --

11           THE COURT:  ACTUALLY MY QUESTION WAS MORE WAS ARE THE

12   REJECTION RATES AND THE PROBLEMS WITH THE REJECTIONS, IS THAT A

13   SIMILAR SITUATION AS WHAT HAS BEEN OCCURRING HERE?  BECAUSE ONE

14   OF THE ISSUES THAT THE DEFENDANT BRINGS UP IS THAT THIS STATUTE

15   HAS BEEN ON THE BOOKS FOR 15 YEARS JUST LIKE THIS AND THIS IS

16   THE FIRST THAT ANYBODY'S SAID ANYTHING ABOUT IT.  AND I KNOW

17   Y'ALL'S POSITION IS, WELL, THINGS HAVE CHANGED, THERE'S

18   DIFFERENT THINGS GOING ON, BUT I JUST WASN'T SURE IF, LIKE THIS

19   PEWS TO THE POLLS PROGRAM, IF THEY DID HAVE PROBLEMS WITH A LOT

20   OF ABSENTEE REJECTIONS IN THE PAST OR IS THIS A NEW THING OR

21   KIND OF WHAT'S GOING ON WITH THAT?

22           MR. POWERS:  THE -- YEAH, THERE'S A COUPLE OF

23   DIFFERENT ANSWERS TO THAT QUESTION.  I THINK THE FIRST PLACE TO

24   START IS THAT THE PEWS TO THE POLLS PROGRAM, AND MS. BUTLER

25   ATTESTS TO THIS IN HER DECLARATION, HAS SUFFERED SPECIFICALLY
```

```
 1   IN GWINNETT COUNTY BECAUSE OF THE SIGNIFICANT AMOUNT OF MEDIA

 2   COVERAGE AND ATTENTION DEVOTED TO THE SUBJECT IN THE MINORITY

 3   COMMUNITY IN PARTICULAR.  THERE'S A SUBSTANTIAL CONCERN

 4   EXPRESSED BY VOTERS TO MS. BUTLER DIRECTLY.  AND WE HAVE

 5   DECLARATIONS FROM OUR PLAINTIFFS, INCLUDING JASMINE CLARK, WHO

 6   SAID THE SAME THING, THAT THEY DON'T FEEL COMFORTABLE VOTING BY

 7   ABSENTEE BECAUSE THEY WORRY THAT THEIR ABSENTEE BALLOT IS GOING

 8   TO BE REJECTED, THEY'RE GOING TO HAVE TO GO THROUGH A WHOLE

 9   RIGAMAROLE, AND IF THEY'RE TRAVELING OR BUSY DURING ELECTION

10   DAY, THAT MIGHT IMPEDE THEIR ABILITY FOR THEIR VOTE TO COUNT.

11         SO, FOR EXAMPLE, IN THIS PARTICULAR ELECTION ONLY TWO OF

12   THE MORE THAN 3,500 VOTE REGISTRATION -- EXCUSE ME -- ABSENTEE

13   BALLOT APPLICATIONS SUBMITTED BY PEOPLE IN THE PEWS TO THE

14   POLLS PROGRAM ARE FROM GWINNETT COUNTY.  SO THERE'S A SPECIFIC

15   HARM IN THIS ELECTION THAT MAKES IT -- THE SITUATION

16   PARTICULARLY EXIGENT.  AND I THINK WE'VE POINTED OUT IN OUR

17   HEARING BRIEF AS WELL AT LEAST A COUPLE OF DIFFERENT SITUATIONS

18   WHERE YOU HAVE LONG-STANDING ELECTION LAWS THAT ARE ON THE

19   BOOKS AND HAVE BEEN ON THE BOOKS FOR QUITE A PERIOD OF TIME,

20   BUT NEW CIRCUMSTANCES, NONETHELESS, REQUIRE EMERGENCY

21   INJUNCTIVE RELIEF RIGHT ON THE EVE OF AN ELECTION.  ONE EXAMPLE

22   WOULD BE LAST YEAR IN THE GEORGIA STATE CONFERENCE OF THE

23   N.A.A.C.P. VS. GEORGIA CASE, JUDGE BATTEN ENJOINED THE STATE OF

24   GEORGIA --

25         THE COURT:  AND I UNDERSTAND ALL THAT.  I'M JUST
```

1   FOCUSING ON THIS PIECE ABOUT THAT THIS IS NEW BECAUSE I KNOW

2   THAT THE DEFENDANTS SAY NOTHING IS NEW HERE.  BUT IT DOESN'T

3   SEEM LIKE ANYONE HAS A LOT OF INFORMATION ABOUT WHAT WAS BEING

4   REJECTED IN 2014, 2012, 2010 TO KNOW IF THIS WAS -- AND I DON'T

5   KNOW THAT THIS IS NECESSARILY DETERMINATIVE, BUT IT DOESN'T

6   SEEM THAT ANYONE HAS ANY INFORMATION ABOUT HOW ABSENTEE BALLOTS

7   WERE BEING REJECTED IN PAST ELECTIONS.

8           MR. POWERS:  UNDERSTOOD, YOUR HONOR.

9           THE COURT:  AND THAT'S WHAT I JUST WANTED TO MAKE

10  SURE, THAT YOU DIDN'T HAVE THAT INFORMATION AS WELL.

11          MR. POWERS:  MY -- I DON'T HAVE THAT INFORMATION

12  RIGHT AT MY FINGERTIPS.  MY UNDERSTANDING IS THAT THE NUMBER OF

13  ABSENTEE BALLOT CASTS THEMSELVES HAS INCREASED SIGNIFICANTLY

14  SEVERAL TIMES FROM THE 2014 ELECTION DUE TO CONCERNS ABOUT THE

15  INTEGRITY OR RELIABILITY OF THE D.R.E. VOTING MACHINES WHICH

16  HAS BEEN WIDELY REPORTED IN THE MEDIA AND IS THE SUBJECT OF

17  OTHER LITIGATION.  AND DUE TO THE CONCERN ABOUT THE SAFETY AND

18  INTEGRITY OF THE D.R.E. MACHINES, MANY COMMUNITY MEMBERS IN

19  GEORGIA, INCLUDING MS. BUTLER AND THOSE IN THE MINORITY

20  COMMUNITY, HAVE BEEN SUGGESTING ABSENTEE BALLOTS AS AN

21  ALTERNATIVE FOR VOTERS WHO WERE CONCERNED ABOUT THEIR BALLOT

22  BEING ADJUSTED OR SOMEHOW NOT COUNTED.  AND --

23          THE COURT:  AND I UNDERSTAND THAT.  SO YOU CAN GET

24  BACK TO THE REST OF YOUR ARGUMENT.  I WAS JUST ASKING ON THAT

25  ONE PIECE.

```
 1          MR. POWERS:  YEAH.

 2          THE COURT:  THANK YOU.

 3          MR. POWERS:  AND I WANT TO TOUCH BRIEFLY ON

 4  INDIVIDUAL STANDING, SEEING AS THE GEORGIA MUSLIM VOTER PROJECT

 5  PLAINTIFFS DON'T HAVE ANY INDIVIDUALS, THE MARTIN PLAINTIFFS

 6  HAVE FIVE INDIVIDUAL PLAINTIFFS, SEVERAL OF WHOM ARE INDIVIDUAL

 7  VOTERS, INCLUDING ONE OF WHOM WHO IS A GWINNETT COUNTY VOTER.

 8  AND THE POINT I WANT TO MAKE HERE IS THAT TO HAVE STANDING,

 9  IT'S NOT NECESSARY FOR THE VOTERS' ABSENTEE BALLOT TO HAVE

10  ALREADY BEEN REJECTED.  ALL THAT'S NECESSARY IS THAT THERE BE A

11  THREAT OF -- A SIGNIFICANT RISK OF IMMINENT HARM.  AND THE

12  PLACE TO LOOK ON THIS IS, FOR EXAMPLE, SOME OF THE VOTER I.D.

13  CASES LIKE THE BILLUPS CASE OR V.C. IN THE FIFTH CIRCUIT WHERE

14  VOTERS THERE MIGHT NOT HAVE I.D., THEY HAVEN'T BEEN

15  DISENFRANCHISED BECAUSE OF THAT YET, BUT THE PROSPECT THAT THEY

16  MIGHT BE IN THE FUTURE, THAT THREAT ALONE IS SUFFICIENT.

17  SIMILAR IN REDISTRICTING CASES TO VOTERS WHO RESIDE IN A

18  DISTRICT AND MIGHT NOT -- THEY DON'T NEED TO HAVE VOTED IN A

19  BOARD OF COMMISSIONERS, BOARD OF EDUCATION ELECTION IN THE

20  PAST, WHAT MATTERS IS THEY COULD BE VOTING IN A FUTURE ELECTION

21  WHERE THEIR RIGHT TO VOTE COULD BE HARMED.

22          ALSO, WITH RESPECT TO CANDIDATE STANDING, WE -- MARTIN

23  PLAINTIFFS INCLUDE TWO CANDIDATES, AND WANTED TO FLAG A COUPLE

24  OF CASES FOR THE COURT'S ATTENTION WHICH I REFERRED TO IN OUR

25  HEARING BRIEF, INCLUDING THE FLORIDA LEAGUE OF WOMEN VOTERS VS.
```

1  DETZNER.  IN THESE -- IN THE -- EXCUSE ME.  IN THE FLORIDA

2  DEMOCRATIC PARTY VS. DETZNER IN WHICH CANDIDATES MAY HAVE

3  STANDING ON BEHALF OF THEIR SUPPORTERS, PARTICULARLY WHEN

4  THE -- THEIR COMPANY STRATEGY IS IMPACTED AND THEY ARE PUT AT A

5  DISADVANTAGE THROUGH DEFENDANT'S ACTIONS.  AND, IN PARTICULAR,

6  PLAINTIFFS CLARK AND DUVAL HAVE HAD TO TURN OUT THEIR

7  SUPPORTERS USING ALTERNATIVE MEANS.  AND PLAINTIFF CLARK IN

8  PARTICULAR REFUSES TO -- OR IS CONCERNED ABOUT ASKING HER

9  VOTERS TO CAST ABSENTEE BALLOTS EVEN THOUGH IN SOME CASES THAT

10  PUTS HER SUPPORTERS THROUGH ADDITIONAL BURDENS.

11      FINALLY, BEFORE I TURN IT OVER TO MY COLLEAGUE, MR. BROWN,

12  I WANTED TO FLAG AN ISSUE RELATED TO THE SCOPE OF RELIEF THAT

13  YOUR HONOR MAY BE CONSIDERING AND IN PARTICULAR CITE TO A

14  COUPLE OF NUMBERS.  BECAUSE IF YOU'RE LOOKING AT WHICH CLASSES

15  OF VOTERS MIGHT BE ABLE TO RECEIVE ANY RELIEF THAT YOU MAY

16  ORDER, THE DETAILS WILL MATTER SIGNIFICANTLY.  AND A REFERENCE

17  THAT YOUR HONOR MAY WANT TO LOOK AT IS DR. MCDONALD'S

18  DECLARATION WHERE HE BREAKS OUT THE REJECTED ABSENTEE BALLOTS

19  BY EACH OF THE INDIVIDUAL CATEGORIES.  AS OF SATURDAY,

20  OCTOBER 20TH, THERE HAD BEEN 136 ABSENTEE BALLOTS REJECTED ON

21  THE BASIS OF A SIGNATURE MISMATCH.  AND THAT'S OUT OF A TOTAL

22  OF 1,785 STATEWIDE.

23      THE COURT:  WELL, AND I UNDERSTAND THE NUMBER

24  DISCREPANCY.  WHAT YOU MAY WANT TO ADDRESS, IF YOU WANT TO

25  FOCUS ON THESE OTHER ISSUES, IS THAT AT LEAST IN TERMS OF, FOR

```
 1   EXAMPLE, I THINK YOU SAY THAT A LARGE NUMBER ARE REJECTED
 2   BECAUSE THE PERSON DOESN'T PUT THEIR BIRTH DATE ON THERE OR
 3   PUTS TODAY'S DATE INSTEAD OF THEIR BIRTH DATE.  AND CERTAINLY
 4   THAT'S A REASON THAT SOME OF THE APPLICATIONS ARE BEING
 5   REJECTED, AND IT IS IN SOME RESPECTS A TECHNICALITY, BUT IN
 6   SOME RESPECTS IT ALSO IS PART OF, I THINK WHAT THE STATE SAYS,
 7   IS THERE A VOTER FRAUD PIECE OF THIS.  BUT TO ME THERE MAY
 8   ALREADY BE ADEQUATE PROCEDURAL DUE PROCESS IN PLACE FOR THOSE
 9   PEOPLE BECAUSE AT LEAST THERE COULD BE THE ARGUMENT THAT IF
10   YOU'RE TOLD, OH, YOU PUT TODAY'S DATE, YOU DIDN'T PUT YOUR
11   BIRTH DATE ON THAT, THEN THAT'S AN EASY THING THAT SOMEONE WILL
12   JUST GET A NEW APPLICATION AND PUT THEIR BIRTH DATE ON IT.  AND
13   I DON'T KNOW WHY THAT REQUIRES ANYTHING TO BE CONSTITUTIONALLY
14   REMEDIED IF THAT'S THE PROBLEM.  AND THAT'S THE PIECE THAT, FOR
15   THE BROADER RELIEF THAT YOU WERE SEEKING, I'M HAVING MORE
16   DIFFICULTY WITH, NOT THE NUMBERS, BUT THE DIFFERENCE IN WHAT
17   THAT IS.
18           MR. POWERS:  RIGHT, RIGHT.  UNDERSTOOD.  AND THE --
19   FROM THE MARTIN PLAINTIFFS' PERSPECTIVE, THE PROBLEM THAT WE
20   SEE -- AND, I THINK, AGAIN, YOU KNOW, REFERRING BACK TO THE
21   PEWS TO THE POLLS EXAMPLE IS A GOOD IDEA.  YOU KNOW, WE HAVE --
22   SAY, A VOTER PUTS IN HIS OR HER ABSENTEE BALLOT, YOU KNOW, IN
23   THE MAIL BIN AT HIS OR HER CHURCH ON OCTOBER 21ST, THAT SUNDAY,
24   AND HAS PLANS TO TRAVEL THE WEEK OF ELECTION DAY FOR WORK OR
25   VACATION OR FOR WHATEVER REASON.  IT'S QUITE POSSIBLE THAT THE
```

1   VOTER IS NOT GOING TO RECEIVE NOTICE OF THE ABSENTEE BALLOT

2   REJECTION UNTIL TOO LATE FOR --

3        THE COURT:  BUT WOULDN'T THAT BE THE SAME WITH THE

4   HEARING THAT YOU'RE REQUESTING BECAUSE IF THERE'S A REJECTION

5   ON THAT BASIS, WHAT IT APPEARS Y'ALL ARE ASKING FOR IS A

6   HEARING TO ADDRESS THAT, OR I GUESS PART OF IT IS YOU'RE JUST

7   SAYING THAT THEY SHOULD ACCEPT THOSE DESPITE THEIR BEING WRONG.

8   BECAUSE I CAN SEE THAT BEING THE SAME SITUATION, WELL, YEAH,

9   YOU'RE OUT OF TOWN, YOUR BALLOT IS DEFECTIVE IN SOME WAY UNDER

10  THE STATUTE.  WELL, A LOT OF THE DUE PROCESS THAT'S BEING

11  REQUESTED IS THIS HEARING AND THE RIGHT TO BE HEARD ON IT.  AND

12  THAT'S STILL GOING TO BE A PROBLEM IF YOU'RE OUT OF TOWN.

13       MR. POWERS:  ABSOLUTELY WHICH IS WHY THE MARTIN

14  PLAINTIFFS TOOK THE POSITION THAT EXPEDITED NOTICE PROCEDURES

15  FOR FOLKS WHOSE ABSENTEE BALLOTS ARE REJECTED ON ANY BASIS,

16  BUT, YOU KNOW, INCLUDING ON BIRTH YEAR ARE ESPECIALLY

17  IMPORTANT.  YOU KNOW, FOR EXAMPLE --

18       THE COURT:  BUT I DIDN'T SEE ANYTHING THAT SHOWED ME

19  THAT IT WASN'T EXPEDITED.  I MEAN, AT LEAST IN THIS -- I AGREE

20  THAT IT'S IMPORTANT THAT THIS BE DONE PROMPTLY, BUT I DIDN'T

21  SEE ANYWHERE THAT THESE WEREN'T BEING DONE PROMPTLY.  IT

22  APPEARED THAT ALREADY THE STATUTE SAYS THAT THESE REJECTIONS

23  SHOULD BE -- THE NOTICE SHOULD BE PROVIDED PROMPTLY.  AND I

24  DON'T SEE ANYTHING THAT THEY'RE NOT BEING DONE PROMPTLY.  IN

25  TERMS OF ORDERING THAT THEY BE DONE ON A WHOLESALE BASIS

 1    DIFFERENT THAN WHAT'S IN THE STATUTE, I DON'T UNDERSTAND THE

 2    CONSTITUTIONAL BASIS FOR MY REWRITING A STATUTE THAT SAYS

 3    PROMPTLY TO SAY ONE-DAY OR THREE-DAY IN THESE OTHER

 4    CIRCUMSTANCES OTHER THAN IT WOULD BE MORE KIND OF LIKELY TO

 5    HAVE THE VOTE COUNTED.  BUT THE WHOLE CONSTITUTIONAL ANALYSIS

 6    TO KIND OF WRAP THAT INTO THERE SEEMS TO BE MISSING FOR THAT

 7    PIECE.

 8            MR. POWERS:  I THINK MY COLLEAGUE IS GOING TO BE

 9    TOUCHING ON THIS SUBJECT IN MORE DETAIL --

10            THE COURT:  OKAY.

11            MR. POWERS:  -- I THINK.

12            THE COURT:  THAT'S FINE.

13            MR. POWERS:  THE --

14            THE COURT:  I THINK HE'S BRINGING THE HOOK.  AND

15    THAT'S FINE.  I DIDN'T REALIZE WHAT Y'ALL'S AREAS WERE, SO

16    THAT'S NO PROBLEM.

17            MR. BROWN:  IT'S HARD TO SEPARATE, AND I APPRECIATE

18    THAT ANALYSIS.  AND THE STANDING ARGUMENT IS EXHAUSTIVELY

19    PRESENTED IN OUR HEARING BRIEF JUST IN CASE THEY DO RAISE

20    STANDING.  THEY MAY NOT.  BUT WE -- WE -- I DID TRY TO

21    ANTICIPATE IT.  YOUR HONOR, I'M GOING TO TRY TO PERSUADE YOU IN

22    SEVERAL MINUTES THAT THE MARTIN CASE IS BIGGER, STRONGER AND

23    EASIER TO IMPLEMENT.  AS STRONG AS THE CASE IS FOR THE GEORGIA

24    MUSLIMS, AND WE TOTALLY AGREE WITH THEIR POSITION AND WITH

25    THEIR CLAIM AND WITH THEIR RELIEF, THE MARTIN CASE IS BASED,

THOUGH, ON A DIFFERENT AND MORE ALL-ENCOMPASSING WRONG THAT HAS

BEEN COMMITTED BY THE STATE DEFENDANTS, AND THAT IS ILLUSTRATED

BY THE INCREDIBLE DISPARITY BETWEEN THE DIFFERENT JURISDICTIONS

IN THEIR REJECTION RATE.  WE DO RAISE A FUNDAMENTAL RIGHT TO

VOTE CLAIM AND EQUAL PROTECTION CLAIM AS THE STANDARD SORT OF

CLAIMS THAT ARE RAISED GIVEN THESE FACTS.  BUT IF THE FACTS

ARE, YOUR HONOR, THAT IF YOU ARE A CITIZEN IN GWINNETT COUNTY,

YOU ARE FIVE TIMES MORE LIKELY TO HAVE YOUR ABSENTEE BALLOT

REJECTED THAN IF YOU LIVE ANYWHERE ELSE IN THE STATE -- AND

IT'S NOT JUST GWINNETT COUNTY.  IF YOU'RE IN ABOUT EIGHT OTHER

COUNTIES YOU'RE ABOUT THREE TIMES MORE LIKELY.  AND THEN IN

FULLY 78 COUNTIES WHO HAVE PROCESSED THOUSANDS OF VOTES,

THERE'S ZERO CHANCE OF GETTING REJECTED, ZERO.  AND IN ANOTHER

COUPLE OF DOZEN THERE'S A TINY CHANCE OF GETTING REJECTED.

THESE RATES, THE COUNTY-BY-COUNTY DISPARITY ARE FREAKISH.  THEY

CANNOT BE EXPLAINED BY ANY LAWFUL AND UNIFORM AND NON-ARBITRARY

ENFORCEMENT OF THE LAW.  THAT IS EXACTLY WHAT DUE PROCESS IS

DESIGNED TO PREVENT.

            THE COURT:  AND, MR. BROWN, ONE THING THAT I THINK IS

A PROBLEM WITH YOUR POSITION, NOT NECESSARILY LEGALLY A

PROBLEM, BUT WE HAVE A LITTLE BIT OF A TIME PROBLEM PERHAPS

WITH YOUR CASE IN THAT WE JUST GOT THE MOTION I BELIEVE ON

FRIDAY.  YOU FILED A NEW MOTION TODAY.  A LOT OF YOUR EVIDENCE

AND INFORMATION IS -- I THINK THERE'S EXPERT AFFIDAVIT, A LOT

MORE INVOLVED.  AND THERE'S A LOT OF MORE OPEN QUESTIONS, FOR

1    EXAMPLE, JUST BECAUSE GWINNETT IS REJECTING MORE AND MAYBE

2    FULTON IS REJECTING ZERO, DOES IT MEAN THAT JUST FULTON'S NOT

3    LOOKING AT THEM, OR DOES IT MEAN -- THERE'S A LOT OF QUESTIONS

4    THAT ARE THERE.  AND I HAVE SOME SERIOUS CONCERNS ABOUT, 'A',

5    BEING ABLE TO HEAR FROM THE DEFENDANTS IN A TIMELY FASHION AND

6    BEING PREPARED, AND THEN IMPLEMENTING THE SOLUTION YOU SUGGEST

7    GIVEN THE TIGHT WINDOW.  SO SOME OF IT IS LESS MERITORIOUS AND

8    MORE I DON'T KNOW IF IT'S DOABLE WHERE WE ARE.

9              MR. BROWN:  YOUR HONOR, I BELIEVE I CAN ADDRESS THAT.

10             THE COURT:  OKAY.  PLEASE DO.

11             MR. BROWN:  THIS IS THE KIND OF ELECTION

12   CAME (VERBATIM) THAT IS ALWAYS GOING TO BE TIME SENSITIVE

13   BECAUSE YOU'RE NOT GOING TO KNOW THAT THERE'S ANYTHING

14   CAPRICIOUS GOING ON UNTIL RIGHT BEFORE THE ELECTION.  AND, YOUR

15   HONOR, IF THE STATE DEFENDANTS ESCAPE THESE DUE PROCESS CLAIMS,

16   THEN THIS SORT OF CONDUCT IS GOING TO CONTINUE BECAUSE YOU

17   CAN'T CATCH IT.  THE RESULTS FROM GWINNETT AND FROM THE OTHER

18   COUNTIES STARTED TRICKLING IN JUST AT THE BEGINNING OF OCTOBER.

19   BY OCTOBER 8TH, GWINNETT HAD ONLY REJECTED 250 APPLICATIONS.

20   THAT WEEK, WITHIN A WEEK WE FILED A VERY LONG AND

21   WELL-RESEARCHED COMPLAINT.  IF WE HAD ACTED ANY EARLIER, THEY

22   WOULD HAVE MOVED TO DISMISS BECAUSE IT'S NOT RIPE, YOUR HONOR.

23   WE HIT IT EXACTLY THE SOFT SPOT.  AS SOON AS THE CONSTITUTIONAL

24   INFRACTION BECAME APPARENT, WE FILED SUIT.  IF THAT'S NOT QUICK

25   ENOUGH, THEN THE STATE IS GOING TO BE ABLE TO MESS UP THESE

```
 1   ELECTIONS IN WHATEVER WAY THEY ARE, EITHER INTENTIONALLY OR
 2   UNINTENTIONALLY, EVERY SINGLE ELECTION THEY CAN ESCAPE BECAUSE
 3   WHAT THEY'LL DO IS THE SAME THING.  YOU -- YOU -- THEY -- IT'S
 4   NOT LIKE THE PLAINTIFFS WERE THE ONLY PEOPLE WHO KNEW THAT
 5   GWINNETT WAS REJECTING THESE BALLOTS AT A HIDEOUSLY HIGH RATE
 6   COMPARED TO FULTON.  THEY'RE CHARGED WITH THAT KNOWLEDGE.
 7   THAT'S NOT OUR JOB.  THAT IS THE DEFENDANTS' JOB TO KNOW THOSE
 8   THINGS.  AND IT'S ALSO THE DEFENDANTS' JOB --
 9            THE COURT:  WELL, AND I'M NOT CRITICIZING YOU IN
10   TERMS OF WHEN YOU FILED IT.  I'M JUST WONDERING IF, I MEAN,
11   JUST IN TERMS OF PRACTICALITY --
12            MR. BROWN:  SURE.
13            THE COURT:  AND ALSO I DO UNDERSTAND THAT THIS HAS
14   SERIOUS IMPLICATIONS AND WE DO HAVE THE ONE LAWSUIT AND THAT'S
15   ONE ISSUE AND YOURS OF COURSE IS BROADER.  AND I DON'T SAY THIS
16   IN A LIGHT WAY, BUT I DON'T THINK THAT YOU'RE ACCURATE IN
17   SAYING THAT THEN THIS WOULD CONTINUE ON TO DIFFERENT ELECTIONS
18   BECAUSE EVEN IF WE DON'T HAVE TIME TO GET THIS ALL SORTED
19   THROUGH ON A PRELIMINARY INJUNCTION, WHICH IS A VERY
20   EXTRAORDINARY WAY TO TACKLE SOME OF THESE, THAT DOESN'T MEAN
21   THE CASE GOES AWAY.  SO THESE ISSUES ARE NOT JUST THROWN TO THE
22   WAYSIDE.
23            MR. BROWN:  THAT'S A FAIR COMMENT.  BUT NEXT TIME IT
24   MAY BE SOMETHING ELSE, YOUR HONOR.  IT MAY BE SOME OTHER
25   INADVERTENCE OR INCOMPETENCE OR IT MAY BE WORSE.  AND IT WILL
```

1   HAPPEN -- IT WILL BE TIMED OR IT WILL JUST HAPPEN RIGHT BEFORE

2   AN ELECTION, AND THOUSANDS OF PEOPLE WILL BE DISENFRANCHISED.

3   I'M NOT SAYING THAT THE TIME -- WE HAVE MORE TIME THAN WE DO.

4   WE DON'T.  WHAT I'M SAYING IS THE NATURE OF THIS CONSTITUTIONAL

5   VIOLATION IS SOMETHING THAT CAN ONLY BE ADDRESSED IN A POSTURE

6   THAT PUTS TIME PRESSURES ON THE COURT AND ON THE PARTIES.

7   THERE'S NO WAY AROUND IT.  AND THE OTHER THING IS THAT THE --

8          THE COURT:  WELL, AND ONE THING I WILL TELL YOU TO

9   THINK ABOUT IS THAT IF IN TERMS OF THE ORDER THAT I MAY GET OUT

10  TODAY OR TOMORROW, IF I'M NOT ABLE TO ADDRESS ALL OF YOUR

11  ISSUES JUST BECAUSE OF THE RECORD AND THE NEWNESS OF ALL OF

12  THAT, WOULD THERE BE -- CERTAINLY THERE'S THE POSSIBILITY OF

13  ADDITIONAL OPPORTUNITY TO ALLOW THE DEFENDANTS TO RESPOND TO

14  THIS AND TO TAKE UP THE PIECES THAT ARE DEALT WITH IN THIS

15  FIRST ROUND OF AN ORDER PERHAPS.  AND ANOTHER THING YOU COULD

16  THINK ABOUT AS PART OF THAT IS IF THERE IS SOME ABILITY LIKE

17  THE VOTER I.D. STATUTE WHERE WE ARE WORKING ON A TIME SCHEDULE,

18  BUT PROVISIONAL BALLOTS OR KEEPING OF THESE TO DEAL WITH,

19  AGAIN, WE DON'T HAVE A LOT OF TIME, BUT THERE ARE WAYS THAT

20  THIS CAN BE DEALT WITH.  BECAUSE I'M JUST CONCERNED THAT YOUR

21  RECORD -- I MEAN, I DON'T THINK I COULD MAKE A DECISION ON YOUR

22  SUBSTANTIVE DUE PROCESS AND EQUAL PROTECTION ON THE RECORD WE

23  HAVE AND MY GIVING THE DEFENDANTS A FAIR OPPORTUNITY IN TERMS

24  OF AN ORDER I'M GOING TO GET OUT TODAY OR TOMORROW.  BUT I DO

25  HAVE SOME WILLINGNESS AND A HIGH LIKELIHOOD OF ALSO INSTRUCTING

1   THE DEFENDANTS TO RESPOND TO THESE ISSUES AND ADDRESSING THEM

2   IN A WRITTEN ORDER OR HAVING A SECOND HEARING IF I THINK THAT

3   THAT IS HELPFUL.  SO THERE ARE WAYS THAT WE CAN DEAL WITH THIS,

4   BUT I'M JUST SAYING FOR PURPOSES OF THE ORDER THAT I GET OUT

5   TODAY OR TOMORROW, I DON'T THINK THAT ADDRESSING A MOTION YOU

6   FILED TODAY IS REALLY PRACTICAL.

7            MR. BROWN:  YOUR HONOR, A COUPLE OF THINGS ON WHAT WE

8   FILED TO PUT THAT IN CONTEXT, THE RELIEF THAT WE'RE SEEKING

9   TODAY IS THE SAME RELIEF WE SOUGHT IN OUR COMPLAINT WHICH WE

10  ACTUALLY FILED BEFORE THE GEORGIA MUSLIM VOTER PROJECT CASE.

11  AND WE HAVEN'T CHANGED OUR -- WE HAVEN'T CHANGED OUR CLAIMS.

12  WE ALSO HAVEN'T CHANGED THE BASIS FOR OUR CLAIMS.  WE HAVEN'T

13  CHANGED THE SCOPE.  THE ONLY THING THAT WE'VE DONE IN OUR

14  AMENDED CLAIM FOR RELIEF IS ACTUALLY SHRINK IT.  THAT'S ALL

15  WE'VE DONE.

16           THE COURT:  AND I UNDERSTAND THAT.  I JUST GOT YOUR

17  MOTION ON FRIDAY, AND I HAVEN'T GOTTEN A RESPONSE FROM THE

18  DEFENDANTS --

19           MR. BROWN:  RIGHT.

20           THE COURT:  -- SO ISSUING AN ORDER ON THAT TODAY OR

21  TOMORROW DOES NOT SEEM FEASIBLE TO ME AT THIS POINT.

22           MR. BROWN:  I UNDERSTAND, YOUR HONOR.  I WANT TO

23  ADDRESS A COUPLE OF THINGS THAT MIGHT BE DIFFERENT FOR THIS.

24           THE COURT:  OKAY.

25           MR. BROWN:  THE ONE CLAIM WE HAVE, WHICH IS -- IT'S

1   NOT FACT-BOUND AT ALL -- AND THAT IS THE YEAR OF BIRTH PROBLEM.

2   IT'S ACTUALLY -- IT'S A PROBLEM THAT DWARFS THE SIGNATURE

3   MISMATCH PROBLEM IN TERMS OF THE NUMBER OF PEOPLE WHO ARE

4   GETTING REJECTED BY IT.  THE SIGNATURE MISMATCH CONCERNS EIGHT

5   PEOPLE IN GWINNETT, ABOUT 130 IN STATEWIDE.  OUR CLAIM INVOLVES

6   HUNDREDS OF PEOPLE.  SO IT'S MUCH -- IT IS BIGGER AND IT

7   AFFECTS A LOT OF PEOPLE, BUT IT'S VERY EASY.  THERE IS NO

8   PURPOSE FOR HAVING THE YEAR OF BIRTH ON THE OATH.  PEOPLE MAKE

9   THE MISTAKE ALL THE TIME.  BECAUSE WHEN I SIGN MY NAME, I GIVE

10  THE DATE I'M SIGNING IT.  THAT'S WHAT PEOPLE DO.  BUT THERE'S

11  NO REASON FOR HAVING THE YEAR OF BIRTH THERE.  BUT BECAUSE OF

12  THAT, GWINNETT, AND ALMOST GWINNETT ALONE, HAS REJECTED OVER

13  200 PEOPLE WHO ARE DISENFRANCHISED, WHO ARE JUST

14  DISENFRANCHISED.  YOU HAVE TO GET PUT IN JAIL AS A FELON TO GET

15  DISFRANCHISED.  BUT THESE PEOPLE, BECAUSE THEY PUT THE WRONG

16  DATE, ARE DISENFRANCHISED.  THEY MIGHT GET A LETTER.  WE DON'T

17  KNOW.  WE'VE ASKED THEM TO PRODUCE IN A OPEN RECORDS ACT THE

18  LETTERS THAT THEY'RE SENDING TO PEOPLE WHO HAD THE DATE OF

19  BIRTH MISTAKE.  HAVEN'T GOTTEN IT.  THEY DIDN'T GIVE US ANY.

20  SO I DON'T THINK THERE ARE ANY.

21      SO ONE OF THE THINGS TO THINK ABOUT IS THAT'S A FACIAL --

22  THAT'S -- IT'S SORT OF A FACIAL CHALLENGE IN THE SENSE THAT

23  THIS -- IT'S, LIKE, DUH, WHY WOULD THEY EVER HAVE THIS.  IT HAS

24  TO BE UNCONSTITUTIONAL TO DISENFRANCHISE PEOPLE BECAUSE OF

25  THAT.  THAT'S NOT A HARD THING FOR THEM TO RESPOND TO.  THE

1   OTHER THING IS THAT IT -- ONE THING THAT WOULD BE HELPFUL FOR

2   THE DEFENDANTS TO ADDRESS IN ANY RESPONSE IS WHY IS IT -- WHY

3   IS THIS HAPPENING, WHY ISN'T THIS UNCONSTITUTIONALLY CAPRICIOUS

4   ON ITS FACE TO HAVE SUCH A FREAKISH DISPARITY BETWEEN COUNTIES.

5   THE SECRETARY OF STATE IS STATUTORILY OBLIGATED TO PROVIDE FOR

6   A UNIFORM APPLICATION OF THE LAWS.  WE HAVE THE SAME LAWS IN

7   EVERY SINGLE COUNTY, AND WE GET FREAKISHLY DIFFERENT RESULTS.

8   THAT HAS TO BE A DUE PROCESS VIOLATION.  UNLESS -- I CAN'T

9   THINK OF WHAT THE RESPONSE IS.

10       IN ADDITION, THERE'S FREAKISH DISPARITIES BETWEEN ETHNIC

11   GROUPS.  THIS IS -- I'M NOT SAYING ANYTHING NEW.  THIS IS WHAT

12   WE PUT IN THE COMPLAINT.  AND WE PUT THAT IN THE COMPLAINT

13   RIGHT AFTER THIS PROBLEM AROSE.  SO IF THE COURT -- WITH ALL

14   RESPECT, I UNDERSTAND THE PRESSURES THAT THESE LAWSUITS PUT ON

15   THE COURT IN THE PRACTICAL APPLICATION.  I REALLY DO.  AND I

16   DON'T MEAN TO SUGGEST THAT THE COURT IS NOT DOING EVERYTHING IT

17   CAN --

18           THE COURT:  NO.  I'M JUST SAYING YOU FILED YOUR

19   MOTION ON FRIDAY, AND I DON'T HAVE A RESPONSE FROM THE

20   DEFENDANTS YET, SO...

21           MR. BROWN:  WELL, I THOUGHT WE WOULD GET ONE BY THE

22   TIME THAT YOU SET FOR THE OTHER PLAINTIFFS, BUT WE DIDN'T GET

23   ONE.  BUT I --

24           THE COURT:  MY UNDERSTANDING AT LEAST, OR AT LEAST MY

25   THINKING WHAT I'M GOING TO HEAR FROM THE DEFENDANTS, AND I WANT

1   TO MAKE SURE YOU ADDRESS IT ON THE DATE OF BIRTH, IS THAT I

2   ASSUME THAT IT'S GOING TO BE ARGUED THAT THAT'S PART OF THEIR

3   VOTER FRAUD KIND OF PART OF IT, THAT IT'S ANOTHER IDENTIFYING

4   PIECE OF INFORMATION THAT THEY'RE REQUIRING ON THE BALLOT AND

5   THAT IT'S NOT THAT THERE'S ABSOLUTELY NO PURPOSE TO IT.  AND I

6   THINK THAT PART OF WHAT YOU'RE ASKING ME TO DO IS TO BASICALLY

7   TAKE THAT OFF THE ABSENTEE BALLOT OR TAKE THE FORCE OF IT OFF

8   THE ABSENTEE BALLOT.  AND IF WE HAVE THE STATE SAYING, WELL,

9   THERE'S A PURPOSE FOR THAT, I DON'T KNOW THAT HAVING

10  REQUIREMENTS LIKE THE OATH AND YOUR BIRTHDAY AND THE DATE,

11  THAT, YES, THERE ARE PEOPLE THAT ARE MESSING THIS UP, BUT THERE

12  IS AN ABILITY TO CURE IT.  SO I'M HAVING PROBLEMS WITH AS A

13  JUDICIAL PERSON JUST LEGISLATIVE REMAKING THE ABSENTEE BALLOT

14  TO TAKE THINGS OFF THAT ARE CAUSING PEOPLE PROBLEMS.

15          MR. BROWN:  YOUR HONOR, WE HAVE CASE AFTER CASE IN

16  OUR HEARING BRIEF ADDRESSING THIS ISSUE, NOT THIS PARTICULAR

17  FACTUAL ISSUE, BUT WHERE COURTS HAVE OVER AND AGAIN STRUCK DOWN

18  ABSENTEE BALLOT -- UNCONSTITUTIONAL FEATURES OF AN ABSENTEE

19  BALLOT REGIME.  SO IT'S NOT THE CASE THAT ABSENTEE BALLOT IS

20  SOME SORT OF PRIVILEGE AND YOU'VE GOT TO DO -- IT HAS TO BE

21  APPLIED UNIFORMLY.  CASE AFTER CASE SAY THAT.  IN PARTICULAR

22  HERE, YOUR HONOR, WHAT WE HAVE HERE IS THE STATE -- YOU'RE

23  FAMILIAR WITH -- YOU MAY BE FAMILIAR WITH THE CASE BEFORE JUDGE

24  TOTENBERG IN WHICH THE CHALLENGE WAS TO THE ELECTRONIC

25  MACHINES.  IN RESPONSE TO THE LAWSUIT SAYING THAT THOSE

 1   ELECTRONIC MACHINES ARE NOT SAFE, AND JUDGE TOTENBERG AGREED,

 2   THE STATE DEFENDANT'S RESPONSE WAS, YOU CAN ALL VOTE ABSENTEE.

 3   YOU CAN ALL GO VOTE ABSENTEE.  THEN EVERYBODY GOES TO VOTE

 4   ABSENTEE, AND THEY'RE SAYING, WELL, ABSENTEE BALLOT ISN'T

 5   REALLY A PRIVILEGE.  IT'S NOT GIVING THEM A CONSTITUTIONAL

 6   RIGHT TO VOTE ABSENTEE.  AND THESE REJECTION RATES ARE

 7   FREAKISH.  AND SO I DON'T THINK THEY CAN -- I DON'T THINK THEY

 8   CAN DO BOTH.  THE -- THERE IS A LOT OF LAW ON THE ABSENTEE.

 9   AND I -- ON THE RIGHT TO CURE ON THE LITTLE DATE, THERE'S NO

10   REASON FOR THE DATE, YOUR HONOR.  THEY DIDN'T EVEN REQUIRE IT

11   BEFORE 2017.  IT'S JUST SOMETHING ELSE -- I DON'T KNOW IF THEY

12   DID IT ON PURPOSE, BUT IT'S SOMETHING ELSE TO TRIP PEOPLE UP.

13   A THIRD OF THE PEOPLE WHO ARE REJECTED, YOUR HONOR, ARE

14   DISABLED OR ELDERLY.  AND SENDING THEM BACK A CARD IN THE MAIL

15   THAT SAYS, YOU GOT TO APPLY AGAIN TO VOTE BECAUSE YOU LEFT OUT

16   A DATE IS AN INFRINGEMENT, AN UNCONSTITUTIONAL INFRINGEMENT ON

17   THE RIGHT TO VOTE.  ALL OF THESE CASES, YOUR HONOR, THEY SAY

18   OVER AND OVER AGAIN, AND WE RECITE THEM IN OUR BRIEF AND

19   THEY'RE ALWAYS IN THE FRONT OF THE COMPLAINT, SAYS THAT THE

20   RIGHT TO VOTE IS PRECIOUS.  IT'S PRECIOUS.  YET, IT SEEMS LIKE

21   IT'D JUST BE DISCARDED BECAUSE OF INCOMPETENCE OR INADVERTENCE

22   OR WORSE.  IF IT'S PRECIOUS, WE NEED TO TREAT IT AS PRECIOUS.

23   AND WE'RE NOT TREATING IT AS PRECIOUS IF THESE ELDERLY PEOPLE

24   AND OLD PEOPLE AND DISABLED PEOPLE AND PEOPLE PRIMARILY IN

25   GWINNETT -- AND THE MOST AND THE HIGHEST PERCENTAGE IS

```
 1   ASIAN-AMERICANS -- ARE GETTING DISENFRANCHISED BECAUSE OF
 2   STUPID LITTLE THINGS LIKE THIS.  AND IT NEEDS TO STOP
 3   IMMEDIATELY.  THANK YOU, YOUR HONOR.
 4           THE COURT:  OKAY.  THANK YOU, MR. BROWN.
 5       AND WHO WANTS TO GO FORWARD ON BEHALF OF THE STATE?
 6           MR. TYSON:  THANK YOU, YOUR HONOR.  I'M BRYAN TYSON.
 7   I'M GOING TO START OUT.  I'M REPRESENTING THE BOARD OF
 8   REGISTRATIONS AND ELECTIONS FOR GWINNETT COUNTY.  I'M GOING TO
 9   COVER THE STANDING PIECE AND SOME OF THE UNIQUE ISSUES RELATED
10   TO GWINNETT COUNTY.  MR. WILLARD FOR THE STATE IS THEN GOING TO
11   COVER THE ISSUES RELATED TO LACHES AND THE PUBLIC INTEREST
12   PRONGS OF THE INJUNCTIVE RELIEF, AND THEN MS. CORREIA FROM THE
13   STATE WILL BE COVERING THE LIKELIHOOD OF SUCCESS ON THE MERITS
14   AND THE CONSTITUTIONAL CLAIMS.
15           THE COURT:  OKAY.  AND IF I ASK QUESTIONS IN THE
16   WRONG AREA, JUST LET ME KNOW, AND I'LL SAVE THEM.
17           MR. TYSON:  I CERTAINLY WILL, YES.
18           THE COURT:  OKAY.  THANK YOU.
19           MR. TYSON:  AND, YOUR HONOR, GWINNETT IS IN A UNIQUE
20   POSITION OBVIOUSLY.  WE DON'T HAVE A PREFERENCE ON THE
21   CONSTITUTIONALITY OR POSITION OF THE CONSTITUTIONALITY OF THE
22   STATUTE.  AS WE NOTED, WE ARE FOLLOWING STATE LAW AS IT STANDS
23   RIGHT NOW.  AND I WANTED TO GIVE YOUR HONOR AN UPDATE ON A
24   COUPLE OF THINGS JUST ON WHAT GWINNETT HAS BEEN DOING AND WHERE
25   WE STAND -- I KNOW THE NUMBERS ARE CHANGING CONSTANTLY -- AND
```

1  UPDATE MS. LEDFORD'S DECLARATION.  GWINNETT YESTERDAY OPENED

2  EIGHT ADDITIONAL SATELLITE VOTING SITES FOR IN-PERSON VOTING.

3  WE'RE GOING TO -- GWINNETT WILL BE OFFERING A TOTAL 1,230 HOURS

4  OF EARLY -- IN-PERSON OR EARLY VOTING FOR VOTERS IN GWINNETT

5  COUNTY.  STATE LAW REQUIRES 168 HOURS, SO GWINNETT IS TRYING TO

6  GO ABOVE AND BEYOND TO ENSURE THAT WE HAVE -- ALL VOTERS HAVE

7  THE OPPORTUNITY IN GWINNETT COUNTY TO VOTE.  SO FAR GWINNETT

8  COUNTY HAS PROCESSED 26,459 APPLICATIONS.  WE'VE RECEIVED 8,218

9  BALLOTS BACK FROM VOTERS.  AND THE REJECTION RATE NOW, THE

10  NUMBER OF REJECTIONS IS 568.  THAT BRINGS THE REJECTION RATE

11  THAT WE'VE HEARD SO MUCH ABOUT DOWN BELOW SEVEN PERCENT DOWN TO

12  6.9 PERCENT.  AND THEN I KNOW MR. BROWN HAS CITED THIS IDEA

13  THAT THIS IS VASTLY DISPROPORTIONATE IN GWINNETT COUNTY.

14  ULTIMATELY WE DON'T KNOW.  AS MR. HARVEY AND MS. LEDFORD BOTH

15  SAID, OTHER -- NOT ALL COUNTIES TRACK REJECTIONS IN THE

16  SECRETARY OF STATE SYSTEM, SO WE DON'T KNOW WHAT THE REJECTION

17  RATES MAY BE IN OTHER COUNTIES.  BUT AS MR. BROWN ALSO NOTED IN

18  HIS BRIEF ON THE PRELIMINARY INJUNCTION, THAT GWINNETT'S

19  REJECTION RATE, ACCORDING TO HIS NUMBERS FOR THE 2018 PRIMARY,

20  WAS EIGHT PERCENT, ALMOST EXACTLY WHERE WE'RE TRACKING RIGHT

21  NOW.  SO, AGAIN, WE'RE NOT IN A SCENARIO WHERE WE'VE CHANGED A

22  PROCESS OR DONE SOMETHING DIFFERENT.  WE'RE FOLLOWING THE

23  EXISTING STATUTE AND MOVING ALONG THROUGH THAT PROCESS.

24          THE COURT:  DO PEOPLE RECEIVE LETTERS IF THEIR

25  BALLOTS ARE REJECTED FOR THE DATE OF BIRTH PROBLEM?  ARE THEY

1    TOLD THAT AND PROVIDED THE INSTRUCTION SIMILAR TO THE MISMATCH

2    OF THE SIGNATURES?

3           MR. TYSON:  YES, YOUR HONOR, THEY ARE.  SO ANYONE WHO

4    IS REJECTED EITHER AT THE APPLICATION STAGE OR AT THE BALLOT

5    STAGE RECEIVES A LETTER FROM THE BOARD OF ELECTIONS THAT

6    SPECIFIES WHAT'S HAPPENED AND THEN PROVIDES THEM WITH A NEW

7    BALLOT APPLICATION, TELLS THEM ABOUT THE OPPORTUNITIES TO VOTE

8    IN PERSON EARLY OR TO VOTE ON ELECTION DAY, TO ASSURE PEOPLE

9    THAT THEY HAVE THAT OPPORTUNITY.  SO GWINNETT IS PROVIDING THAT

10   NOTICE TO VOTERS IN ALL THOSE SCENARIOS.  WE ALSO HAVE, OF THE

11   NINE BALLOT REJECTIONS THAT WE ATTACHED TO DIRECTOR LEDFORD'S

12   AFFIDAVIT, YOU CAN SEE FOR THE SIGNATURE MISMATCHES THAT IT

13   DIDN'T TAKE A HANDWRITING EXPERT TO SEE THAT THOSE ARE

14   DIFFERENT PEOPLE ON THOSE BALLOTS.  AND, AGAIN, THE VOTER THAT

15   THE -- THAT MR. YOUNG'S CLIENTS PRODUCED THE DECLARATION LAST

16   NIGHT WAS A VOTER REJECTED, NOT BY GWINNETT COUNTY FOR A

17   SIGNATURE MISMATCH, BUT BY WALTON COUNTY FOR A SIGNATURE

18   MISMATCH.  SO I DON'T -- SO I STILL DON'T SEE THAT WE'VE HAD

19   ANYONE WHO WAS REJECTED BY GWINNETT COUNTY, AN ALLEGEDLY

20   IMPROPER SIGNATURE MATCH.  SO --

21           THE COURT:  NOW, AND THIS MAY NOT BE SOMETHING YOU'RE

22   FAMILIAR WITH, SO IT'S FINE IF YOU'RE NOT.  BUT I KNOW ONE OF

23   THE PIECES OF RELIEF THAT'S BEING ASKED BY THE PLAINTIFFS IS

24   FOR THE SAME APPEALS PROCESS THAT IS UTILIZED FOR ELIGIBILITY

25   DECLARATIONS TO BE USED FOR THAT.  AND, AGAIN, MAYBE SOMEONE

1   ELSE IS THE BEST PERSON TO ASK, BUT SINCE YOU'RE FROM GWINNETT

2   COUNTY, I'LL ASK YOU.  WHAT WOULD YOU PERCEIVE TO BE THE

3   DIFFICULTIES IN USING THAT SAME PROCESS IF IN FACT WE WERE TO

4   USE IT FOR THE SIGNATURE MISMATCH ISSUES?  BECAUSE, AGAIN, I'VE

5   SEEN THE SIGNATURES YOU'VE PROVIDED ME.  I CAN SEE FOR MYSELF

6   WHETHER OR NOT THEY ARE DIFFERENT, BUT I CAN'T TELL WHY THEY'RE

7   DIFFERENT AND IS IT SOMEONE BROKE THEIR ARM, THEY JUST FOR

8   VANITY PURPOSES CHANGE THEIR SIGNATURE?  I DON'T KNOW THAT

9   THAT'S NOT THE SAME PERSON.  SO WHAT WOULD BE THE DIFFICULTIES

10  AND THE CHALLENGES FROM YOUR PERSPECTIVE IF WE WERE TO REQUIRE

11  SOME SORT OF EXTRINSIC EVIDENCE OR ABILITY FOR SOMEONE TO SAY,

12  OH, YEAH, THAT'S THE REASON MY SIGNATURE IS DIFFERENT, THIS IS

13  ME?

14        MR. TYSON:  SO I'LL LET MS. CORREIA ADDRESS THAT

15  ISSUE --

16        THE COURT:  OKAY.

17        MR. TYSON:  -- DIRECTLY.  AS FAR AS GWINNETT COUNTY,

18  JUST IN TERMS OF OUR MAJOR CONCERN AT THIS POINT, IS THAT THE

19  PROCESS THAT HAS BEEN UNDER WAY FOR MORE THAN 30 DAYS NOW FOR

20  ABSENTEE BALLOTS, THAT CHANGING THE PROCESS SIGNIFICANTLY AT

21  THIS POINT COULD LEAD TO DISPARATE TREATMENT OF VOTERS AS A

22  FIRST INSTANCE, BUT ALSO WE HAVE VOTERS WHO HAVE RECEIVED THOSE

23  REJECTION NOTICES AND THEN HAVE GONE BACK AND CORRECTED

24  WHATEVER THE ISSUE WAS OR HAVE VOTED IN PERSON.  AND IF WE'RE

25  NOW GOING TO HAVE TO TRY TO SORT THROUGH WHERE THOSE PEOPLE

1    ARE, IT'S NOT LIKE WE HAVE A STACK OF REJECTIONS ON THE SHELF

2    WE CAN PULL OFF AND JUST REPROCESS.  THESE PEOPLE HAVE BEEN --

3    HAVE RECEIVED NOTICE, HAVE IN SOME CASES GONE BACK AND VOTED

4    AND THROUGH ANOTHER MEANS.  AND SO OUR PRIMARY CONCERN IS NOT

5    SO MUCH ABOUT THE FASHION OF THE REMEDY -- AND I'LL LET MS. --

6    LIKE I SAID, MS. CORREIA SPEAK TO THAT --

7            THE COURT:  THAT'S FINE.  AND I'LL DO THAT.  JUST

8    DIDN'T KNOW IF THERE'S SOME PRACTICAL ISSUES THAT YOU HAD.

9            MR. TYSON:  RIGHT.  OUR PRIMARY CONCERN WITH THE

10   REMEDIES THAT HAVE BEEN PROPOSED SO FAR WERE FROM THE MARTIN

11   PLAINTIFF REMEDIES.  WE HAVE -- FOR OUR IN-PERSON VOTING, JUST

12   FROM A PRACTICAL PERSPECTIVE, WE ONLY HAVE ONE BALLOT BOX FOR

13   PROVISIONAL BALLOTS AT EACH PRECINCT LOCATION.  AND THE MARTIN

14   PLAINTIFFS WERE ASKING FOR, FOR EXAMPLE, TAKING ABSENTEE

15   BALLOTS TO A PRECINCT AS OPPOSED TO THE CENTRAL OFFICE.  TO GO

16   BACK AND REPROCESS WHEN OUR ELECTION OFFICIALS ARE KIND OF

17   STRETCHED TO THE LIMIT RIGHT NOW, THAT'S REALLY WHERE OUR

18   CONCERN IS, THAT ANYTHING AT THIS POINT THAT IS GOING TO UPSET

19   THE CURRENT FLOW OF EVERYBODY WORKING AS HARD AS THEY CAN TO

20   MAKE SURE THIS ELECTION IS SUCCESSFUL, THAT'S OUR PRIMARY

21   CONCERN.  SO A POST ELECTION REMEDY WE ARE LESS CONCERNED

22   ABOUT, BUT THAT'S OUR MAIN THING, IS NOT MESSING UP THE SYSTEM

23   THAT WE HAVE RIGHT NOW THAT'S OPERATIONAL.

24       SO LET ME TALK A LITTLE BIT ABOUT THE ISSUE OF STANDING.

25   OBVIOUSLY IT'S CRITICALLY IMPORTANT.  AND AS TO THE GEORGIA

1   MUSLIM VOTER PROJECT PLAINTIFFS, WITH THE NEW DECLARATIONS THAT

2   HAVE BEEN SUBMITTED LAST NIGHT, I THINK THE PLAINTIFFS HAVE

3   LARGELY ADDRESSED THE ISSUE OF DO -- HAVE THEY ALLEGED AN

4   INJURY IN FACT.  THEY'VE AT LEAST ALLEGED AN INJURY THAT

5   THEY'RE GOING TO BE DIVERTING RESOURCES AS TO SPECIFIC

6   ACTIVITIES.  THE CONCERN AT THIS POINT IS THERE STILL ARE THE

7   ELEMENTS OF TRACEABILITY AND REDRESSABILITY THAT HAVE TO BE

8   ADDRESSED IN TERMS OF DO THESE INDIVIDUALS -- THESE

9   ORGANIZATIONS ACTUALLY HAVE STANDING TO BRING THESE.  AND AS

10  FAR AS TRACEABILITY GOES, THE STATUTE IN QUESTION ONLY PUTS

11  DUTIES ON THE COUNTIES.  IT DOESN'T PLACE ANY DUTIES ON

12  SECRETARY KEMP.  AND SO THERE'S NO REAL ALLEGATION I SEE FROM A

13  STANDING PERSPECTIVE WHERE SECRETARY KEMP IS GOING TO HAVE BEEN

14  RESPONSIBLE FOR THE ACTIONS THAT HAVE TAKEN PLACE UP TO THIS

15  POINT.  BUT EVEN IF YOU COULD TRACE SOMETHING BACK TO THE

16  COUNTY, FOR EXAMPLE, THE REJECTIONS THAT GWINNETT COUNTY HAS

17  BEEN ENGAGED IN -- WE TALKED EARLIER ABOUT THE ISSUE OF

18  REDRESSABILITY AND BEING ABLE TO SAY, CAN THE -- THE COURT'S

19  INJUNCTION OR RELIEF, WHATEVER YOU'RE FASHIONING, ADDRESS THE

20  MAJOR PROBLEM, THE HARM THAT THE PLAINTIFFS ARE ALLEGING.  AND

21  IN THIS CASE THEY'RE ALLEGING A DIVERSION OF RESOURCES RELATED

22  TO EDUCATION.  AND YOU ASKED THE QUESTION EARLIER ABOUT IF YOU

23  HAVE TO CONTINUE TO EDUCATE PEOPLE ABOUT A WHOLLY NEW PROCESS,

24  HAS IT TRULY -- HAS THE HARM TRULY BEEN ADDRESSED.  AND WE

25  WOULD SUBMIT THAT IT HAS NOT BEEN ADDRESSED AT THAT POINT AND

1    THAT ULTIMATELY THE DIVERSION OF RESOURCES THAT THE PLAINTIFFS

2    SAY THAT THEY HAVE WOULD NOT BE REDRESSED BY A FAVORABLE RULING

3    FROM THE COURT BECAUSE THEY WOULD STILL HAVE TO ENGAGE IN THESE

4    SAME KINDS OF ACTIVITIES.

5        IN ADDITION, IF WE'RE GOING TO BE -- WE'RE IN A SCENARIO

6    FROM A TRACEABILITY STANDPOINT WHERE A LOT OF THE DIVERSION OF

7    RESOURCES THAT PLAINTIFFS HAVE ENGAGED IN IS SPECULATIVE.  THEY

8    READ A NEWS ARTICLE ON OCTOBER THE 12TH, AS THEY SAY IN THEIR

9    DECLARATIONS, OF WHY THEY BELIEVE THIS IS THE TIME TO CHANGE

10   THINGS.  AS WE SUBMITTED IN OUR DECLARATIONS IN OUR BRIEF, THIS

11   IS A LAW THAT'S BEEN ON THE BOOKS FOR 15 YEARS AT LEAST,

12   PROBABLY A WHOLE LOT LONGER THAN THAT.  THIS IS A PROCESS THAT

13   GWINNETT COUNTY HAS FOLLOWED CONSISTENTLY FOR AS LONG AS ANYONE

14   CAN REMEMBER.  AND THE FACT THAT IT'S NEW TO THE PLAINTIFFS

15   DOES NOT IN AND OF ITSELF CREATE AN INJURY THAT'S TRACEABLE TO

16   CONDUCT -- TO NEW CONDUCT OF THE DEFENDANTS IN THIS CASE, AT

17   LEAST FOR PURPOSES OF A TEMPORARY RESTRAINING ORDER.

18       I'D JUST POINT YOUR HONOR TO THE CLAPPER CASE THAT WE

19   CITED, THAT THE IDEA THAT MAKING A -- AN EXPENDITURE BASED ON

20   A -- AN IDEA THAT SOMETHING IS GOING TO BE A PROBLEM FOR YOU,

21   THE SUPREME COURT HAS SAID THAT'S AN ISSUE OF TRACEABILITY IF

22   YOU CAN'T TRACE BACK THE DEFENDANTS' CONDUCT TO THE HARM THAT

23   YOU'RE ALLEGING.  AND WE BELIEVE THE PLAINTIFFS IN THE GEORGIA

24   MUSLIM VOTER PROJECT CASE STILL HAVE THAT ISSUE.

25       IN ADDITION, MS. GOITIA'S DECLARATION THAT WAS SUBMITTED

1   LAST NIGHT, OBVIOUSLY SHE'S NOT A PARTY TO THIS CASE.  AS I

2   MENTIONED, SHE IS IN A DIFFERENT COUNTY THAN GWINNETT COUNTY.

3   AND SHE HAS THE REMEDIES THAT GWINNETT OFFERS AVAILABLE TO HER.

4   SHE CAN UPDATE -- BEFORE THE VOTER REGISTRATION DEADLINE YOU'RE

5   ABLE TO UPDATE YOUR VOTER REGISTRATION INFORMATION IF YOUR

6   SIGNATURE HAS CHANGED.  AND IN SOME CASES WHERE THERE IS AN

7   ISSUE WITH A VOTER REGISTRATION RECORD, THE GWINNETT COUNTY

8   BOARD OFFICE WILL SEND A NEW VOTER REGISTRATION FORM AND A NEW

9   APPLICATION WITH THE LETTER TO SAY, HERE, IF YOU NEED TO

10  PROVIDE AN UPDATE TO YOUR VOTER REGISTRATION INFORMATION, YOU

11  CAN GO AHEAD AND DO THAT.  THAT WINDOW'S OBVIOUSLY CLOSED NOW

12  THAT VOTER REGISTRATION APPLICATIONS ARE NO LONGER BEING

13  ACCEPTED AFTER OCTOBER 9TH.  THE KEY ISSUE I THINK WITH

14  MS. GOITIA'S DECLARATION IS NONE OF THE DEFENDANTS THAT ARE

15  HERE HAVE ANYTHING TO DO WITH WHAT HAPPENED TO HER.  SHE HAS --

16  MAY HAVE SOME ACTION AGAINST WALTON COUNTY, BUT IT'S NOT AS TO

17  GWINNETT COUNTY OR TO ANY OF THE STATE DEFENDANTS THAT ARE

18  INVOLVED IN THIS CASE.

19       AND, FINALLY, ON THE MARTIN PLAINTIFFS, WE HAVE ISSUES

20  THERE AS FAR AS THERE'S ONLY TWO INDIVIDUALS FROM GWINNETT, AS

21  FAR AS WE CAN SEE.  ONLY ONE IS PLANNING TO ENGAGE IN THE

22  ABSENTEE BALLOT PROCESS.  I APOLOGIZE.  I HAVE NOT REVIEWED THE

23  ISSUES ON CANDIDATE STANDING THAT MR. BROWN CITED, SO I'M NOT

24  AWARE OF THE ABILITY THERE.  BUT ULTIMATELY FOR THE INDIVIDUAL

25  PLAINTIFFS, EVEN MS. BOWERS, THE -- AS WE PUT IN MS. LEDFORD'S

1   DECLARATION, WHO'S THE ONE VOTER IN GWINNETT COUNTY WHO SAID

2   THAT SHE IS GOING TO BE VOTING BY ABSENTEE BALLOT, HAS NOT YET

3   APPLIED FOR AN ABSENTEE BALLOT.  SO WE'RE IN A SCENARIO WHERE

4   NONE OF THE INDIVIDUAL PLAINTIFFS HAVE CONTACTED GWINNETT

5   COUNTY ABOUT GETTING AN ABSENTEE BALLOT OR BEGINNING THAT

6   PROCESS.  AND THEN THE OTHER COUNTIES THAT THEY'RE ALLEGING

7   THERE ARE PROBLEMS IN FULTON COUNTY AND IN MORGAN COUNTY,

8   THOSE -- THOSE COUNTIES ARE NOT HERE.  AND SO, AGAIN, TO YOUR

9   HONOR'S QUESTION EARLIER ABOUT ENJOINING THE SECRETARY VERSUS

10  ENJOINING ALL THE COUNTIES, THERE IS A SERIOUS ISSUE IN THIS

11  CASE OF DETERMINING -- IF THE COUNTY BOARDS OF ELECTIONS ARE

12  THE ONES SOLELY RESPONSIBLE FOR THE REVIEW OF THESE DOCUMENTS,

13  AND YOU ENTER AN INJUNCTION AS TO THE PARTIES IN THIS CASE,

14  THAT ONLY BINDS ONE COUNTY BOARD OF ELECTIONS AND NOT THE OTHER

15  158 COUNTIES.  AND WE WOULD HAVE A SERIOUS CONCERN ABOUT THE

16  OVERALL DISPARATE TREATMENT OF VOTERS IF THERE'S GOING TO BE

17  ONE PROCESS IN GWINNETT COUNTY AND A DIFFERENT PROCESS IN THE

18  REMAINDER OF THE STATE.

19          THE COURT:  IN TERMS OF AN INJUNCTION THAT'S DIRECTED

20  AT THE SECRETARY OF STATE IN HIS OFFICIAL CAPACITY IN TERMS OF

21  ELECTIONS, I ASSUME THAT GWINNETT COUNTY BOARD OF ELECTIONS, IF

22  THE SECRETARY OF STATE TELLS THEM TO DO SOMETHING WITH RESPECT

23  TO ELECTIONS THAT'S REQUIRED THAT THE COUNTY DOES, THEN IT IN

24  FACT FOLLOWS THOSE INSTRUCTIONS; IS THAT CORRECT?

25          MR. TYSON:  ALMOST, YOUR HONOR.  GWINNETT COUNTY IS

1    RESPONSIBLE UNDER THE STATUTE FOR FOLLOWING THE STATUTE AS IT'S

2    WRITTEN.  AND ALTHOUGH THE SECRETARY OF STATE CAN GIVE

3    GUIDANCE -- AND, MR. WILLARD AND MS. CORREIA CAN ADDRESS THAT

4    POINT -- IT IS STILL ON THE COUNTIES.  AND WHILE GWINNETT

5    COUNTY WILL CERTAINLY FOLLOW WHATEVER DIRECTION WE'RE GIVEN, WE

6    WANT EVERYBODY TO BE ABLE TO VOTE, AND WE'LL FOLLOW WHATEVER

7    INSTRUCTIONS WE ARE GIVEN.  THERE MAY BE COUNTIES WHERE THE

8    COUNTY ATTORNEY ADVISES THE COUNTY ELECTIONS OFFICIALS TO

9    FOLLOW THE STATUTE INSTEAD OF GUIDANCE FROM THE SECRETARY OF

10   STATE BECAUSE IT'S NOT BINDING.  SO I'LL ALLOW THE ATTORNEY

11   GENERAL'S OFFICE TO ADDRESS THAT POINT IN MORE DETAIL.  BUT AS

12   FAR AS GWINNETT, WE WOULD CERTAINLY FOLLOW WHATEVER DIRECTION

13   WE WERE GIVEN BY THE COURT OR BY THE SECRETARY.

14       YOU ASKED A QUESTION EARLIER, YOUR HONOR, BRIEFLY ABOUT

15   THE CLASS ACTION ISSUE, AND THAT KIND OF ALSO IS RELATED TO

16   THIS.  WE DON'T THINK THAT THERE'S ANY NEED TO CERTIFY A CLASS.

17   WE AGREE ON THAT AND DON'T THINK THAT GWINNETT WOULD BE A

18   PROPER CLASS REPRESENTATIVE.  WE ALSO DO NOT BELIEVE THAT

19   GWINNETT COUNTY SHOULD BE RESPONSIBLE IF THE PLAINTIFFS SEEK

20   THEIR ATTORNEY'S FEES IN THIS ACTION.  WE WERE APPARENTLY THE

21   ONLY COUNTY SUED BECAUSE WE WERE IN THE NEWS, BUT THE -- AS

22   WE'VE SEEN IN THE DISCUSSION, THE STATUTE, WE'RE FOLLOWING A

23   STATE STATUTE THAT HAS GIVEN US DIRECTION ABOUT WHAT TO DO.  SO

24   WE DON'T THINK WE'RE A PROPER CLASS REPRESENTATIVE.  AND THE

25   PLAINTIFFS HAVE NOT MADE ANY ALLEGATION THAT WE'RE NOT

1    FOLLOWING THE STATE STATUTE AT THIS POINT.  OUR PRIMARY

2    CONCERN, AGAIN, IS WE'RE 11 DAYS FROM THE END OF THE ABSENTEE

3    BALLOTING PERIOD THAT IS 45 DAYS LONG.  AND IF WE NOW BEGIN A

4    PROCESS WHERE WE'RE GOING TO HAVE TO HAVE AN ADDITIONAL RELIEF

5    PUT IN PLACE, IT'S GOING TO PUT AN EXTREME BURDEN ON ALREADY

6    OVERWORKED ELECTION OFFICIALS WHO ARE WORKING AS HARD AS THEY

7    CAN TO GET THIS ELECTION DONE CORRECTLY.

8        I KNOW THAT THERE'S BEEN DISCUSSION ABOUT KIND OF THE

9    MINOR NATURE OF THE MARTIN CLAIMS, PLAINTIFFS' RELIEF THAT

10   THEY'RE SEEKING.  THE PRIMARY THING WE'D SAY THERE IS WHILE

11   THE -- THE -- IN THEORY THE RELIEF IS MINOR AND WITH A

12   REASONABLE IMPLEMENTATION SCHEDULE IT PROBABLY IS EXTREMELY

13   MINOR, AT THIS POINT IN AN ELECTION ANY CHANGE IN A PROCESS

14   THAT AFFECTS WHAT'S CURRENTLY HAPPENING IS VERY MAJOR FOR

15   ELECTIONS OFFICIALS.  WE'VE ALREADY TRAINED THE POLL WORKERS.

16   THE PREPARATION FOR ALL THE PRECINCTS HAS ALREADY OCCURRED.  TO

17   THEN TRY TO CHANGE PROCESSES AT THIS POINT COULD LEAD TO

18   SIGNIFICANT VOTER CONFUSION AND DISRUPTION IN THE PROCESS.  AND

19   THAT'S NOT SOMETHING WE WANT TO SEE.  WE KNOW THE COURT DOESN'T

20   WANT TO SEE THAT EITHER.  WE WANT TO MAKE SURE THAT THIS

21   ELECTION CAN GO FORWARD.  AND THAT'S WHY WE WOULD REQUEST THAT

22   THE COURT DENY THE PRELIMINARY INJUNCTION PLAINTIFFS ARE

23   SEEKING.  THE ELECTION IS UNDER WAY.  WE CAN LEAVE THE RULES IN

24   PLACE AND THEN PROCEED WITH WHAT WE HAVE.  BUT IF THE COURT

25   GIVES US DIRECTION, WE'LL OF COURSE FOLLOW THE DIRECTION THAT

1    WE'RE GIVEN BY THE COURT.  AND, WITH THAT, I'LL HAND THINGS

2    OVER TO MR. WILLARD TO DISCUSS THE PUBLIC INTEREST ISSUES AND

3    THEN THE INTEREST RELATED TO LACHES.

4              THE COURT:  OKAY.  THANK YOU VERY MUCH.

5              MR. TYSON:  THANK YOU, YOUR HONOR.

6              THE COURT:  THE GROUP THAT GOES SECOND GETS LESS

7    QUESTIONS BECAUSE YOU'VE ALREADY HEARD MY QUESTIONS.  SO IT'S

8    NOT THAT I HAVE LESS QUESTIONS, IT'S JUST THAT YOU'VE ALREADY

9    HEARD THEM, SO...

10             MR. WILLARD:  WELL, YOUR HONOR, YOU KNOW, I WILL SAY

11   AS A YOUNG CHILD I DID COMPETITIVE SWIMMING.  AND YOU ALWAYS

12   PUT THE WEAKEST SWIMMER IN THE MIDDLE OF THE RELAY.  THAT'S HOW

13   I VIEW MYSELF IN THIS SITUATION.  YOUR HONOR, SEPTEMBER 18TH,

14   2018, ABSENTEE VOTING BEGAN IN THE STATE OF GEORGIA.

15   OCTOBER 9TH, 2018, REGISTRATION CLOSED.  OCTOBER 15TH, 2018,

16   ADVANCED IN-PERSON OR EARLY IN-PERSON ABSENTEE VOTING BEGAN.

17   IT WAS ONLY AFTER ALL THAT HAD OCCURRED WHEN PLAINTIFFS ELECTED

18   TO BEGIN FILING THESE SUITS ASKING FOR A CHANGE IN A PROCESS

19   THAT HAS BEEN IN PLACE FOR TWO DECADES, IN SUBSTANTIALLY

20   SIMILAR FORM WITH APPARENTLY SUBSTANTIALLY SIMILAR APPLICATION.

21   THEY ARE CHOOSING NOW.  AND WE CAN ARGUE WHERE ON THE DOOMSDAY

22   CLOCK THIS IS, WHETHER WE'RE AT 11:57 OR WHETHER WE'RE AT

23   11:59 AND 30 SECONDS ON THE DOOMSDAY CLOCK, BUT WE ARE WELL

24   ALONG IN THE PROCESS FOR THIS ELECTORAL CYCLE.  AND TO CAUSE A

25   CHANGE AT THIS POINT, A RADICAL CHANGE IN THE ABSENTEE PROCESS

1   THAT HAS BEEN THE RESULT OF MONTHS OF TRAINING TO GET TO THIS

2   POINT, YOU HAVE MANDATORY STATE TRAINING FOR THE SUPERVISORY

3   PERSONNEL IN THE COUNTY, THEN YOU HAVE COUNTY LEVEL TRAINING TO

4   TRAIN EVERYONE DOWN TO THE POLL WORKERS ON WHAT THE PROCESSES

5   ARE THAT ARE GOING TO GOVERN THIS ELECTION CYCLE.  IT IS TOO

6   LATE FOR PLAINTIFFS TO COME IN NOW AND ASK THIS COURT TO

7   FUNDAMENTALLY ALTER THAT PROCESS.

8        THE COURT:  WHY WOULD THE PROCESS BE FUNDAMENTALLY

9   ALTERED IF THE EXISTING APPELLATE PROCESS THAT IS ALREADY IN

10  PLACE FOR THE DISQUALIFICATION OF VOTERS IN THE ABSENTEE

11  PROCESS IS APPLIED TO THE REJECTION BECAUSE OF THE SIGNATURE

12  MISMATCH?

13       MR. WILLARD:  MS. CORREIA AND I WERE PASSING NOTES

14  WHEN YOU HAD FIRST RAISED THE 230(G) APPEAL PROCESS.  I THINK

15  SHE'S GOING TO ADDRESS IT IN GREATER DETAIL.

16       THE COURT:  OKAY.  REMIND ME WHAT YOUR AREA IS.

17       MR. WILLARD:  I'M GOING TO BE ADDRESSING LACHES AND

18  THE HARM TO THE STATE DEFENDANTS AND THE 158 OTHER COUNTIES OUT

19  THERE IF THE PLAINTIFFS' REQUESTED RELIEF IS GRANTED IN THIS

20  CASE.

21       THE COURT:  OKAY.  GOT IT.  THANK YOU.

22       MR. WILLARD:  WHILE THE RIGHT TO VOTE IS CRITICALLY

23  IMPORTANT AND NO ONE FOR THE STATE DEFENDANTS IS ARGUING

24  AGAINST THAT POINT, IT IS EQUALLY AND ALSO CRITICALLY IMPORTANT

25  THAT WE MAINTAIN THE INTEGRITY OF THE ELECTION PROCESS.  ALONG

1  THOSE LINES, LACHES HAS TWO ELEMENTS THAT COURTS ARE TO LOOK

2  AT.  THE FIRST IS WHETHER THERE HAS BEEN A LACK OF DILIGENCE ON

3  THE PART OF THE PLAINTIFFS.  AND, SECOND, IS THE PREJUDICE TO

4  THE NON-MOVING PARTY.  THE PLAINTIFFS, AS I MENTIONED, ARE

5  CHALLENGING A STATUTE THAT HAS BEEN ON THE BOOKS FOR TWO

6  DECADES IN GEORGIA.  THERE HAS NOT BEEN A CHALLENGE IN THE PAST

7  TO IT.  IT IS ONLY AT THIS POINT, GIVEN A NEW STORY -- AND I'M

8  NOT GOING TO CALL INTO QUESTION THE PLAINTIFFS' MOTIVES FOR

9  BRINGING THIS CASE.  IT MAY BE THAT A LIGHT BULB WENT OVER

10 THEIR HEAD WHEN THEY SAW THE MEDIA REPORTS, AND SAID, HEY,

11 LET'S -- LET'S GO FILE SUIT NOW THAT WE HAVE GOTTEN PUBLIC

12 INTEREST IN THIS ISSUE AND WE THINK WE MAY HAVE A VIABLE CLAIM

13 GOING FORWARD.  BUT THEY ARE SEEKING AN EMERGENCY MOTION TO

14 AFFECT A VOTING PERIOD THAT IS OVER TWO-THIRDS COMPLETED.

15 THEY'RE NOT ONLY ASKING FOR PERSPECTIVE RELIEF, BUT EVERY ONE

16 OF THE PLAINTIFFS IS ASKING US TO GO BACK OR ASKING THE

17 COUNTY -- BOTH THE COUNTY THAT'S HERE, AS WELL AS ALL THE

18 UNREPRESENTED COUNTIES HERE, TO GO BACK AND ALTER WHAT THEY

19 HAVE DONE OR AT LEAST REDO EVERYTHING THAT THEY'VE DONE DURING

20 THE FIRST TWO-THIRDS OF THE VOTING PROCESS.

21     THE LAWYERS FOR THE PLAINTIFFS, THE ORGANIZATIONAL

22 PLAINTIFFS HAVE BEEN FREQUENT LITIGATORS AGAINST THE STATE OVER

23 THE LAST TWO ELECTION CYCLES.  THEY ARE FAMILIAR WITH THE

24 PARAMETERS OF GEORGIA ELECTION LAW.  MR. YOUNG SAID IT WAS

25 ABOUT PRIORITIZING THE ARGUMENTS THAT THEY WERE GOING TO MAKE

1    AND THE FOCUS OF THEIR ATTENTION.  WELL, THAT'S FINE AND I HAVE

2    NO SAY IN HOW THE ORGANIZATIONAL PLAINTIFFS APPORTION THEIR

3    RESOURCES.  BUT AS THE U.S. SUPREME COURT AND CIRCUIT COURTS

4    AROUND THE COUNTRY HAVE SAID, WHEN YOU'RE TALKING ABOUT THE

5    ELECTORAL PROCESS, THERE MAY VERY WELL BE SITUATIONS WHERE YOU

6    HAVE PROCESSES OR PRACTICES IN PLACE THAT MAY BE

7    CONSTITUTIONALLY INFIRMED, BUT THE COURTS ARE GOING TO DECLINE

8    TO INTERVENE BECAUSE OF THE PUBLIC'S RIGHT AND THE STATE'S

9    RIGHT TO HAVE A ELECTION PROCESS THAT MAINTAINS THE INTEGRITY

10   THAT THE PEOPLE'S REPRESENTATIVES HAVE BUILT INTO THE PROCESS.

11            THE COURT:  WHY IS HAVING AN APPEALS PROCESS NOT

12   MAINTAINING THE INTEGRITY OF THE ELECTION PROCESS?

13            MR. WILLARD:  YOUR HONOR, LIKE I SAID --

14            THE COURT:  OKAY.  YOU'RE JUST SAYING THAT THERE'S

15   NOT GOING TO BE ANY INTEGRITY, SO --

16            MR. WILLARD:  WELL, IN TERMS OF -- THAT'S NOT -- I

17   UNDERSTAND THAT YOU'RE FOCUSED ON, AS THE PLAINTIFFS CONCEDE,

18   NINE ELECTORS OR PUTATIVE ELECTORS IN GWINNETT COUNTY, THAT IS,

19   IN TERMS OF THE SIGNATURE MISMATCH.  BUT AS THE MARTIN

20   PLAINTIFFS CAME UP HERE AND ARE ARGUING BEFORE THE COURT, THAT

21   IS NOT THE EXTENT OF THE REMEDY THAT THEY'RE SEEKING.  THEY'RE

22   WANTING TO CHALLENGE THE BIRTH DATE OR ANY OF THE OMITTING

23   INFORMATION THAT GOES TO DETERMINING WHETHER THE PERSON WHO HAS

24   SUBMITTED THAT ABSENTEE BALLOT IS IN FACT THE PERSON WHO IS THE

25   REGISTERED VOTER.

1          THE COURT:  OKAY.  WELL, AS I SAID AT THE OUTSET AND

2   I WAS DISCUSSING WITH MR. BROWN, YOU CAN CERTAINLY USE YOUR

3   TIME TO ADDRESS THAT.  I'M MUCH MORE LIKELY TO GIVE THE STATE

4   DEFENDANTS AN OPPORTUNITY TO BRIEF THAT ISSUE FULLY AND NOT

5   DECIDE THAT IN TERMS OF THE ORDER I'M GOING TO BE ISSUING.  SO

6   THE ORDER I'M REALLY FOCUSED ON TODAY IS LESS THIS OVERARCHING

7   SCHEME AND MORE THIS MORE NARROW LOOK AT THINGS.

8          MR. WILLARD:  I APPRECIATE THAT, YOUR HONOR, AND I

9   THANK YOU FOR THAT REPEATED GUIDANCE.  I DO HAVE A QUESTION,

10  YOUR HONOR.  I DON'T WANT TO INFRINGE ON MS. CORREIA'S TIME.

11  IS THERE IN FACT A TIMER THAT I AM SUPPOSED TO BE LOOKING AT?

12         THE COURT:  YES, IT'S THAT ONE TO THE LEFT.

13         MR. WILLARD:  OH, OKAY.

14         THE COURT:  THERE YOU GO.

15         MR. WILLARD:  THANK YOU.

16         THE COURT:  IT'S OLD-FASHIONED.  IT'S AN ACTUAL CLOCK

17  TIMER, SO...

18         MR. WILLARD:  NO PROBLEM.  THANK YOU.  IN TERMS OF

19  THEY ACTUALLY HAVE TO ESTABLISH THAT THEY HAVE NOT BEEN

20  DILATORY IN BRINGING THIS ACTION --

21         THE COURT:  AND THEIR ARGUMENT ON THAT IS THAT THEY

22  HAD NO IDEA THAT THIS WAS GOING ON.  SO THE SECOND THEY HAD AN

23  IDEA THAT THIS WAS HAPPENING, THEN THEY IMMEDIATELY WENT AHEAD

24  AND MOVED FORWARD WITH THEIR CASE.  SO WHAT IS THE REQUIREMENT

25  UNDER THE LAW THAT -- THEIR ARGUMENT AT LEAST IS THAT AS AN

1   ORGANIZATION THEY'RE NOT GOING TO BE KIND OF SEARCHING THE LAW

2   LOOKING FOR POTENTIAL PROBLEMS, AND THAT IN TERMS OF LACHES,

3   THE SECOND THEY LEARNED ABOUT THIS, THEY FILED SUIT, AND THAT'S

4   ENOUGH TO GET THEM BY?

5           MR. WILLARD:  YOUR HONOR, NOT TO BE FLIPPANT, BUT I

6   WOULD SAY IN TERMS OF THE NUMBER OF CASES THAT MY SECTION HAS

7   LITIGATED AGAINST THE ORGANIZATIONAL PLAINTIFFS OVER THE PAST

8   TWO ELECTION CYCLES, IF THEY ARE INDEED NOT LOOKING FOR

9   POTENTIAL PROBLEMS IN GEORGIA ELECTION CODE, THEN THEY --

10          THE COURT:  I GUESS THE QUESTION IS, IS THERE A

11  REQUIREMENT THAT THEY DO SO?

12          MR. WILLARD:  WELL, I THINK THAT WHEN THEY ARE

13  FAMILIAR WITH THE PROCESS, THEY HAVE GONE, IN MY OPINION, WITH

14  A FINE-TOOTH COMB BASED ON THE NUMBER OF CASES THAT WE HAVE

15  LITIGATED AGAINST THEM OVER THE LAST TWO ELECTION CYCLES,

16  IDENTIFYING POTENTIAL INFIRMITIES IN GEORGIA'S ELECTION CODE.

17  IN THIS INSTANCE YOU HAVE A PROCESS THAT HAS BEEN IN PLACE.

18  2014 --

19          THE COURT:  AND IN SPEAKING ABOUT THE MUSLIM VOTER

20  PROJECT AND --

21          MR. WILLARD:  ACTUALLY IT'S LAWYER'S COMMITTEE AND

22  THE GEORGIA COALITION, YOUR HONOR.

23          THE COURT:  OKAY.

24          MR. WILLARD:  AND A.C.L.U. HAS ALSO LITIGATED AGAINST

25  US, ESPECIALLY THIS ELECTION CYCLE.

```
 1              THE COURT:  BUT I DON'T LOOK AT THE LAWYERS.  I LOOK

 2  AT THE PARTIES.

 3              MR. WILLARD:  I UNDERSTAND.

 4              THE COURT:  OKAY.  BUT YOUR ARGUMENT THAT THESE

 5  PARTIES HAVE BEEN EXTENSIVELY INVOLVED IN VOTER LITIGATION, IS

 6  THAT ALSO DIRECTED AT THE GEORGIA MUSLIM VOTER PROJECT AND THE

 7  ASIAN-AMERICANS ADVANCING JUSTICE?  AND THE REASON I ASK THAT

 8  IS BECAUSE I REMEMBER ONE OF YOUR AFFIDAVITS SAYING THAT ONE OF

 9  THE DEFENDANTS FILED THAT NO ONE HAD EVER HEARD OF THESE

10  ORGANIZATIONS BEFORE.

11              MR. WILLARD:  I THINK THAT WAS THE GWINNETT COUNTY

12  SUPERINTENDENT.

13              THE COURT:  OKAY.  SO THESE GROUPS HAVE BEEN INVOLVED

14  IN THIS LITIGATION?

15              MR. WILLARD:  IF I COULD HAVE ONE SECOND, YOUR HONOR?

16              THE COURT:  CERTAINLY.

17              MR. WILLARD:  FOR THE ORGANIZATIONAL PLAINTIFFS AT

18  ISSUE, AT LEAST IN THE G.M.V.P. CASE, YOUR HONOR, WE'RE -- WE

19  CONCEDE THAT THOSE ORGANIZATIONAL PLAINTIFFS HAVE NOT LITIGATED

20  AGAINST THE STATE.

21              THE COURT:  OKAY.  I THOUGHT SO.  THAT MAKES SENSE.

22              MR. WILLARD:  IN TERMS OF THE SECOND PRONG OR THE

23  LACHES --

24              THE COURT:  GOING BACK TO MY QUESTION, IS THERE A

25  REQUIREMENT FOR THEM TO BE -- BECAUSE THEY'RE SAYING THAT THE
```

1    LACHES ONLY KICKS IN WHEN THEY HEARD THAT THERE WAS A PROBLEM

2    AND THAT THERE'S NO REQUIREMENT FOR THEM TO KIND OF GO THROUGH

3    THIS AND HAVE KNOWN THAT THIS WAS GOING ON, THAT'S THEIR

4    RESPONSE TO WHAT YOU'VE RAISED.  AND I DIDN'T KNOW IF YOU

5    WANTED TO ADDRESS THAT.

6           MR. WILLARD:  WELL, YOUR HONOR, I THINK -- AND THE

7    COURTS, ESPECIALLY THE APPELLATE COURTS, HAVE BLENDED THE

8    ANALYSIS OF WHETHER THEY ARE GOING TO DECLINE TO ORDER

9    EMERGENCY RELIEF BASED ON EITHER A LACHES ANALYSIS OR SORT OF

10   ALMOST A COMITY ARGUMENT WHERE THEY'RE GOING TO REFRAIN FROM

11   INTERJECTING THE COURT INTO A PROCESS THAT IS ALREADY WELL

12   UNDER WAY.  BUT YOU HAVE A SITUATION WHERE COURTS HAVE LOOKED

13   AT THE FACT THAT WHERE YOU HAVE A STATUTORY SCHEME THAT HAS

14   BEEN IN PLACE THAT IS CONTINUING AND HASN'T BEEN SIGNIFICANTLY

15   ALTERED IN TERMS OF EITHER ITS PARAMETERS OR ITS APPLICATIONS,

16   THAT THE COURT IS NOT GOING -- THE COURT IS GOING TO ATTRIBUTE

17   THAT MUCH LIKE ANY SORT OF STATUTORY FRAMEWORK, EVERY -- THAT

18   KNOWLEDGE IS IMPUTED IN TERMS OF HOW IT'S BEEN APPLIED IN THE

19   PAST AND WHAT ITS PARAMETERS ARE IN TERMS OF --

20          THE COURT:  IT WOULD SEEM THAT THAT ARGUMENT WOULD BE

21   THAT AS LONG AS A STATUTE IS VERY OLD, YOU CAN'T CHALLENGE THE

22   CONSTITUTIONALLY OF IT IF IT HAS TO DO WITH VOTING.

23          MR. WILLARD:  EXCEPT THAT IN THIS CASE, YOUR HONOR,

24   AND I BELIEVE THAT WE HAVE IDENTIFIED FROM MR. HARVEY'S

25   AFFIDAVIT THAT SIGNATURE MISMATCH HAS BEEN UTILIZED IN THE PAST

1   TO REJECT ABSENTEE BALLOTS.

2          THE COURT:  BUT WHAT I'M SAYING IS ISN'T YOUR

3   ARGUMENT THAT IF SOMETHING IS REALLY OLD AND BEEN HAPPENING FOR

4   A LONG TIME, NO ONE CAN CHALLENGE IT EVEN IF IT'S

5   UNCONSTITUTIONAL?

6          MR. WILLARD:  YOUR HONOR, LIKE I SAID, I -- YOU'RE

7   TALKING ABOUT -- I'M SAYING THAT THE APPELLATE COURTS HAVE

8   BLENDED THE ARGUMENT IN TERMS OF WHAT THEY'RE GOING TO LOOK AT.

9   WHETHER THEY EMPLOY A LACHES TYPE ANALYSIS OR IT'S SIMPLY

10  TALKING ABOUT COMITY, THEY ARE LOOKING AT IT AND SAYING THE

11  FRAMEWORK HAS BEEN IN PLACE, THE APPLICATION HAS BEEN

12  CONSISTENT THROUGH THE ELECTION CYCLES AND, THEREFOR, AT LEAST

13  WHEN YOU'RE TALKING ABOUT SOMETHING THAT IS LITERALLY TWO WEEKS

14  OUT FROM THE ELECTION, THE COURTS ARE GOING TO DECLINE TO

15  INTERVENE AT THIS POINT AND ALTER A PROCESS THAT IS ALREADY

16  TAKING PLACE.

17         THE COURT:  BUT THAT SOUNDS LIKE -- LACHES, THE WAY I

18  UNDERSTAND IT, YOU'RE SAYING THAT FOR A TEMPORARY RESTRAINING

19  ORDER OR PRELIMINARY INJUNCTION THERE COULDN'T BE LACHES

20  BECAUSE OF THE COMBINATION OF AN OLD STATUTE WITH AN IMPENDING

21  ELECTION.  BUT LET'S SAY THAT I DENY THE TEMPORARY RESTRAINING

22  ORDER AND THE CASE KEEPS GOING FORWARD, I FEEL CERTAIN THAT YOU

23  WOULD STILL ARGUE LACHES, AND THEN WE WOULDN'T EVEN HAVE THE

24  ELECTION THAT WE WERE STARING IN THE FACE.  I DIDN'T THINK

25  LACHES WAS SUCH A SITUATIONALLY DEPENDENT CONSTITUTIONAL

1    DEFENSE.

2           MR. WILLARD:  CORRECT, YOUR HONOR.  AND, LIKE I SAID,

3    I'M TRYING TO FOCUS MY ARGUMENTS TODAY ON JUST THE EMERGENCY

4    RELIEF IN TERMS OF WHY THIS COURT SHOULD FOREGO ORDERING RELIEF

5    TODAY.  BUT IT IS PART OF THE LACHES ARGUMENT THAT THEN BLENDS

6    INTO WHETHER THEY HAVE FAILED TO ESTABLISH THE FOURTH PRONG FOR

7    EMERGENCY RELIEF, THE PUBLIC POLICY IN TERMS OF WHAT SHOULD BE

8    GOING FORWARD, WHETHER IT'S IN THE PUBLIC INTEREST TO ORDER THE

9    RELIEF, AS WELL AS THE COURT'S DESIRE NOT TO INTERFERE WITH A

10   PROCESS THAT IS ALREADY IN PLACE THAT THE STATE'S

11   REPRESENTATIVES HAVE DETERMINED THE PARAMETERS FOR EACH

12   INDIVIDUAL STATE AS TO WHAT ARE GOING TO BE THE SAFEGUARDS IN

13   PLACE TO PROTECT THE INTEGRITY OF THE ELECTORAL PROCESS.

14        IT IS WITHOUT QUESTION THAT THE STATE HAS AN INTEREST IN

15   VERIFYING THE IDENTITY OF VOTERS, WHETHER IT IS IN-PERSON

16   VOTING BY REQUIRING THEY SUBMIT THE PHOTO I.D., OR AN ABSENTEE

17   VOTING WHERE THE STATE HAS MADE THE POLICY DETERMINATION THAT

18   IT REALLY BOILS DOWN TO TWO FACTORS.  YOU'RE GOING TO PUT THE

19   YEAR OF BIRTH, WHICH IS CLEARLY DESIGNATED ON THE FORM, ON THAT

20   BLANK, AS PLACING THE YEAR OF BIRTH, AND THEN THE SIGNATURE OF

21   THE VOTER.  AND THE SIGNATURE OF THE VOTER NEEDS TO MATCH THE

22   REGISTRATION CARD TO DETERMINE THAT THE IDENTITY OF THE PERSON

23   SUBMITTING THAT BALLOT IS IN FACT THE PERSON WHO REGISTERED AS

24   A VOTER.  WE HAVE HAD A NUMBER OF CASES OVER THE LAST SEVERAL

25   ELECTION CYCLES WHERE YOU HAVE AN INDIVIDUAL WHO HAS VOTED AN

```
 1    ABSENTEE BALLOT --

 2              THE COURT:  EXCUSE ME.  IS THERE A RECORDING PLAYING?

 3    OR I GUESS SOMEONE'S ON THE PHONE OUTSIDE THE DOOR.  I DON'T

 4    KNOW.  I CAN JUST HEAR SOMETHING.

 5              COURT SECURITY OFFICER:  I THINK THEY'RE RECORDING.

 6              THE COURT:  YEAH, IS SOMEONE PLAYING SOMETHING?

 7              COURTROOM DEPUTY CLERK:  IT'S CONNECTED TO OUR SOUND

 8    SYSTEM.

 9              MR. BROWN:  IT SOUNDS LIKE JUDGE BATTEN.

10              THE COURT:  WELL, THAT'S FINE.  I JUST HEARD

11    SOMETHING, AND I DIDN'T KNOW WHERE IT WAS COMING FROM.  IT MUST

12    BE SOMETHING IN OUR MICROPHONE SYSTEM.  I GUESS WE'VE BEEN

13    HACKED BY SOMEBODY AND THEY'RE MAKING ARGUMENTS THAT WE CAN'T

14    HEAR, SO, OKAY.  I'M SORRY TO INTERRUPT YOU.  I JUST COULD HEAR

15    SOMETHING, AND DIDN'T KNOW WHERE IT WAS COMING FROM.

16              MR. WILLARD:  NO.  AND, YOUR HONOR, I HEARD THE SAME

17    THING, BUT I APPRECIATE THAT.

18              THE COURT:  IT'S FINE.  WE'LL IGNORE IT.

19              MR. WILLARD:  THE BALANCE THAT THE STATE HAS STRUCK

20    IS THAT IT WILL AUTHORIZE ABSENTEE BALLOTS PROVIDED THAT YOU

21    MEET THOSE RELATIVELY DE MINIMIS REQUIREMENTS, AND, THAT IS,

22    YOU PROVIDE THE YEAR OF BIRTH SO THAT WE CAN VERIFY THAT YOU

23    HAVE AT LEAST BASIC INFORMATION ESTABLISHING THAT YOU KNOW THIS

24    INDIVIDUAL OR YOU ARE THIS INDIVIDUAL, AND THEN THE SIGNATURE

25    MATCHING ON THE ABSENTEE BALLOT CARD --
```

UNITED STATES DISTRICT COURT OFFICIAL CERTIFIED TRANSCRIPT

1              THE COURT:  WE'LL IGNORE IT.

2              MR. WILLARD:  I'M SORRY, YOUR HONOR.

3              THE COURT:  OUR I.T. GUY IS FLYING AROUND.  HE MAY

4     CORRECT IT, SO...

5              MR. WILLARD:  THANK YOU.  AND YOUR HONOR HAS ALLUDED

6     TO THE PROBLEM, OR WHAT THE COURT HAS IDENTIFIED AS A POTENTIAL

7     PROBLEM, IN TERMS OF SOMEONE WHOSE SIGNATURE HAS CHANGED OR

8     SOMEONE WHO HAS CHANGED IN TERMS OF PHYSICAL APPEARANCE OR YOU

9     EVEN MENTIONED THEY JUST WANT TO CHANGE WHAT THEIR SIGNATURE

10    IS.  AND THERE ARE MECHANISMS IN PLACE FOR INDIVIDUALS WHO ARE

11    AFFECTED BY THAT TO UPDATE THEIR REGISTRATION.  IF -- IT'S NOT

12    DIFFERENT THAN IF MY MOTHER HAS BEEN LIVING IN THE SAME HOME

13    FOR 40 YEARS AND SHE MOVES TO A RETIREMENT VILLA OR SHE IS

14    FORCED TO MOVE INTO AN ASSISTED CARE HOME.  SHE'S GOING TO

15    UPDATE HER REGISTRATION INFORMATION TO REFLECT THAT HER ADDRESS

16    HAS CHANGED SO THAT SHE CAN BE UPDATED WITH PRECINCT

17    INFORMATION SO THAT SHE CAN VOTE WHO THE INDIVIDUALS WHO ARE

18    GOING TO BE AFFECTING HER AT THAT POINT, AS OPPOSED TO THOSE

19    WHO WERE AFFECTING HER AT HER OLD ADDRESS.  IT IS NO DIFFERENT

20    IF YOU HAVE SOMEONE WHO HAS A POTENTIAL INFIRMITY THAT HAS

21    AFFECTED THEIR ABILITY TO SIGN THEIR SIGNATURE.  I KNOW THAT

22    BOTH MY PARENTS AND MY IN-LAWS ARE GETTING INTO ADVANCED AGE.

23    I KNOW FOR A FACT THAT MY FATHER-IN-LAW, HIS SIGNATURE FROM

24    WHEN I FIRST MET MY WIFE IS RADICALLY DIFFERENT THAN IT IS NOW,

25    BUT THERE IS A MECHANISM IN PLACE WHERE HE CAN UPDATE HIS

1    REGISTRATION --

2              THE COURT:  BUT THE PROBLEM I HAVE WITH THAT TO SOME

3    EXTENT IS A TIMING ISSUE.  AND, AGAIN, WE'RE TALKING ABOUT THE

4    RIGHT TO VOTE, SO IT'S A VERY IMPORTANT ISSUE.  AND SOMEONE

5    APPLIES TO GET AN ABSENTEE BALLOT -- I HAVE TO SAY, AND I DON'T

6    WANT TO ADD TOO MUCH OF MYSELF INTO THAT BECAUSE THAT'S NOT

7    APPROPRIATE, BUT THE IDEA THAT SOMEONE WOULD BE CHECKING MY

8    18-YEAR-OLD SIGNATURE DIDN'T REALLY CROSS MY MIND AND I ASSUME

9    IT WOULDN'T CROSS THE MIND OF A LOT OF PEOPLE THAT CHOOSE TO

10   VOTE IN AN ABSENTEE BALLOT.  AND THEY GET THE REJECTION OF

11   THEIR VOTE, THEY CAN'T VOTE IN PERSON AND THERE'S NO WAY TO FIX

12   THE PROBLEM AND PROVE THAT IT'S THEM.  I DON'T HAVE ANY PROBLEM

13   WITH THE SIGNATURE REQUIREMENT AS A WAY TO MAKE SURE THERE'S NO

14   VOTER FRAUD.  THAT MAKES SENSE TO ME.  BUT WHEN YOU HAVE A

15   PERSON THAT IS THAT PERSON AND THEY'RE FACING A SITUATION OF

16   THEIR VOTE NOT COUNTING AND NOT BEING ABLE TO FIX THE PROBLEM,

17   THE LACK OF A PROCEDURE IN PLACE FOR THAT TIMING PROBLEM

18   CONCERNS ME BECAUSE IT'S TOO LATE THEN TO GO BACK AND CHANGE

19   THE SIGNATURE CARD.  SO WHY IS THAT NOT A PROBLEM?

20             MR. WILLARD:  WELL, AND I BELIEVE MS. CORREIA WILL

21   ADDRESS THIS IN GREATER DETAIL, BUT I WILL SAY THAT TO THE

22   EXTENT THAT THE COURTS HAVE IDENTIFIED, SUCH AS THE FLORIDA

23   CASE, WHERE THERE WAS A PROBLEM WITH THE ABSENTEE BALLOT, THE

24   FLORIDA CASE REALLY TURNED ON THE FACT THAT YOU WERE TREATING

25   DISPARATELY SIGNATURE MISMATCH FROM AN OMITTED SIGNATURE.  AND

1    THE COURT THERE WAS CONCERNED THAT YOU REALLY HAD A PROCESS IN

2    PLACE, A PRE-ELECTION PROCESS IN PLACE IN WHICH THE SIGNATURE

3    WAS OMITTED, AS OPPOSED TO IF THERE WAS A SIGNATURE MISMATCH,

4    IT WAS A POST ELECTION NO REMEDY.  YOU WERE NOTIFIED POST

5    ELECTION AND HAD NO REMEDY TO CURE.  HERE, EVERYBODY UNIFORMLY

6    IS NOTIFIED IF THERE IS A PROBLEM WITH THEIR SUBMITTED ABSENTEE

7    BALLOT.  AND THERE ARE PROCESSES IN PLACE THAT THEY CAN CURE,

8    WHETHER IT'S RESUBMISSION OF AN ABSENTEE BALLOT OR UTILIZING

9    DAY-OF-ELECTION OR ADVANCE IN-PERSON VOTING --

10            THE COURT:  HOW CAN A PERSON THAT IS HOME-BOUND

11   CORRECT THE PROBLEM?

12            MR. WILLARD:  YOUR HONOR, I WILL SAY THAT I HAVE BEEN

13   AWARE IN THE PAST OF ELECTION SUPERINTENDENTS WHO WILL MAKE

14   EFFORTS IN -- ESPECIALLY IN AREAS OF THE STATE TO ENSURE THAT

15   HOME-BOUND INDIVIDUALS ARE ABLE TO DO IT.  IF SOMEONE IS SO

16   PHYSICALLY DISABLED THAT THEY CANNOT EXECUTE A MARK, THERE ARE

17   PROVISIONS IN PLACE TO ALLOW FOR THE ASSISTANCE OF SOMEONE ELSE

18   TO COMPLETE THAT BALLOT FOR THEM AND SIGN AN OATH AS ASSISTING.

19            THE COURT:  I'M NOT TALKING ABOUT THEM -- I'M NOT

20   TALKING ABOUT A PERSON THAT CAN'T WRITE AT ALL.  I'M TALKING

21   ABOUT A PERSON WHO IS NOT ABLE TO VOTE IN PERSON, THAT PIECE

22   RIGHT THERE, THE PERSON THAT'S NOT ABLE TO VOTE IN PERSON AND

23   WHO HAS JUST FOUND OUT ABOUT THE SIGNATURE CARD TOO LATE TO

24   SUPPLY A NEW ONE.  AND YOU MENTIONED THIS ISSUE THAT SOME

25   PRECINCTS DO PROVIDE ASSISTANCE IN THAT SITUATION, BUT IN A

```
 1   FACIAL ATTACK ON A STATUTE, IT'S MY UNDERSTANDING THAT THAT'S
 2   NOT WHAT I DO.  I DON'T LOOK AND SEE, WELL, IN SOME PLACES THEY
 3   HANDLE IT THIS WAY.  SO, AGAIN, IT'S A SMALL PIECE HERE, BUT
 4   IT'S THAT PERSON THAT YOUR ARGUMENT HASN'T SEEMINGLY ADDRESSED.
 5            MR. WILLARD:  YOUR HONOR, I UNDERSTAND, BUT FOR THE
 6   EMERGENCY PURPOSES TODAY, YOU HAVE TO TAKE INTO ACCOUNT THE
 7   FACT THAT THE SYSTEM IS ALREADY IN PLACE, IS ALREADY OPERATING,
 8   AND THAT INDIVIDUAL IS A HYPOTHETICAL PERSON AT THIS POINT, BUT
 9   THERE ARE PROCESSES THAT THE GENERAL ASSEMBLY HAS PUT IN PLACE
10   THAT THEY CAN VOTE WHETHER IT'S ASSISTANCE, WHETHER IT IS
11   ADVANCE IN-PERSON, OR WHETHER IT IS DAY-OF-ELECTION VOTING, OR
12   IT'S RESUBMISSION OF THEIR ABSENTEE BALLOT WITH MORE CARE PAID
13   TO THEIR SIGNATURE, THOSE PROCESSES ARE ADEQUATE.  AND
14   MS. CORREIA WILL ADDRESS THE DUE PROCESS CONCERNS THERE.  BUT I
15   BELIEVE THAT THE STATE'S POSITION IS GOING TO BE THAT THOSE
16   PROCESSES, WE'VE MADE THE POLICY DETERMINATION THAT BY
17   EXTENDING YOU THE RIGHT TO VOTE BY ABSENTEE BALLOT, THOSE ARE
18   THE PROCESSES THAT ARE GOING TO BE IN PLACE FOR THIS ELECTION
19   CYCLE AND THERE ARE ADEQUATE SAFEGUARDS BUILT IN TO ENSURE THAT
20   NO ONE IS DEPRIVED OF THEIR RIGHT TO VOTE BECAUSE OF SOME
21   POTENTIAL OR ALLEGED INFIRMITY IN TERMS OF THEIR ABILITY TO
22   EXECUTE A SIGNATURE THAT WILL MATCH THE REGISTRATION CARD.
23        AS THE MARTIN PLAINTIFFS POINT OUT, YOU'RE TALKING ABOUT
24   NINE INDIVIDUALS IN GWINNETT COUNTY THAT IS THEIR PROBLEM
25   CHILD, THAT IS ALLEGEDLY MOTIVATED BOTH G.M.V.P. PLAINTIFFS, AS
```

1  WELL AS THE MARTIN PLAINTIFFS, TO BRING THIS ACTION.  AND AS

2  YOUR HONOR CAN SEE FROM THE LEDFORD DECLARATION, THIS IS NOT A

3  SITUATION WHERE IT APPEARS THAT THE SIGNATURE WAS DUE TO

4  PARKINSON'S OR SOME OTHER INABILITY TO EXECUTE A SIGNATURE --

5          THE COURT:  I THINK THAT'S A PROBLEM WE DON'T KNOW

6  WHAT THE PROBLEM IS.

7          MR. WILLARD:  IN THIS CASE, YOUR HONOR, I DON'T SEE

8  HOW PROVIDING THE HEARING IS GOING TO ALLEVIATE THE STATE'S

9  CONCERNS THAT WITHOUT PROVIDING TRAINING TO THESE INDIVIDUALS

10  ON A 230(G) APPEAL AS IT RELATES TO A SIGNATURE MISMATCH, TO

11  PROVIDE A PROCESS WHERE THEY'RE GOING TO HAVE TO DEVOTE

12  RESOURCES TO GET UP TO SPEED IN TERMS OF TRAINING ON HOW TO

13  HANDLE THE 230(G) APPLICATIONS OR THE APPEALS AND TO, AS THE

14  BENISEK COURT, AS THE PURCELL COURT, AND AS THE FOURTH CIRCUIT

15  IN PERRY NOTED, THE ELECTION PROCESS AND BALLOTS DON'T

16  MAGICALLY MATERIALIZE.  THIS IS A PROCESS THAT IS ALREADY UNDER

17  WAY.  AND THERE IS A PUBLIC INTEREST IN MAINTAINING THE

18  INTEGRITY OF THE PROCESS THAT IS ALREADY UNDER WAY WITHOUT

19  INSERTING AN ADDITIONAL VARIABLE IN AT LITERALLY THE 11TH HOUR.

20          WHETHER YOU COUCH IT AS A FAILURE TO -- OR AS ESTABLISHING

21  THE SECOND PRONG OF THE LACHES ANALYSIS, WHETHER YOU COUCH IT

22  AS THE PLAINTIFFS' FAILURE TO CARRY THEIR BURDEN OF

23  ESTABLISHING THAT THE PUBLIC INTEREST IS SERVED BY THE ENTERING

24  OF AN INJUNCTION, OR WHETHER YOU COUCH IT AS THIS COURT SHOULD

25  REFRAIN FROM GRANTING RELIEF GOING FORWARD BASED ON THE FACT

```
 1    THAT THE ELECTORAL PROCESS IS ALMOST COMPLETE AT THIS POINT,
 2    THIS COURT SHOULD DECLINE TO GRANT EMERGENCY RELIEF.  THERE IS
 3    NO TIME OR AVAILABLE BAND WIDTH IN THE SYSTEM TO PROVIDE ANY OF
 4    THE BACK-OF-THE-NAPKIN SCRIBBLING RELIEF REQUEST THAT THE
 5    PLAINTIFFS HAVE SOUGHT, WHETHER IT'S THE WEDNESDAY FILING BY
 6    THE G.M.V.P. PLAINTIFFS, WHETHER IT'S THE FRIDAY SUBMISSION BY
 7    THE MARTIN PLAINTIFFS, OR WHETHER IT'S THE REQUESTED RELIEF
 8    THAT WAS FILED THIS MORNING BY THE MARTIN PLAINTIFFS, ALL OF
 9    THOSE ARE GOING TO INVOLVE TIME, RESOURCE, AND EXPENSE THAT THE
10    COUNTIES DO NOT HAVE AT THIS POINT TO DEVOTE.  THEY ARE RUNNING
11    AT MAXIMUM CAPACITY RIGHT NOW, ESPECIALLY IN LIGHT OF THE
12    INCREASED VOTER PARTICIPATION FOR THIS ELECTION CYCLE.  YOU'RE
13    ALREADY -- YOU'VE GOT MS. LEDFORD'S AFFIDAVIT WHERE SHE'S GOT
14    FOLKS WHO ARE WORKING OVERTIME, IN SOME CASES ALMOST DOUBLE
15    HOURS DURING THE DAY TRYING TO MEET THE REQUIREMENTS THAT ARE
16    ALREADY IN PLACE, THAT HAVE ALREADY BEEN TRAINED FOR, THAT HAVE
17    ALREADY BEEN TAKEN INTO ACCOUNT WHEN THIS ELECTORAL PROCESS
18    BEGAN.  AND INSERTING ANY HICCUP INTO THAT SYSTEM, WHETHER IT'S
19    THE LIMITED RELIEF THAT THE COURT ASKED THE PARTIES TO
20    CONSTRAIN THEMSELVES ON IN TERMS OF THE SIGNATURE MISMATCH OR
21    WHETHER IT'S THE BROADER RELIEF SOUGHT BY BOTH THE G.M.V.P.
22    PLAINTIFFS AND ESPECIALLY THE MARTIN PLAINTIFFS, THAT HAS THE
23    POTENTIAL TO RADICALLY AFFECT HOW COUNTIES ARE GOING TO BE ABLE
24    TO DISCHARGE THEIR DUTIES.  WE'VE ALREADY HAD CASES IN THE
25    S.E.B. WHERE COUNTIES HAVE BEEN BROUGHT BEFORE THE STATE
```

```
 1   ELECTION BOARD FOR FAILURE TO CERTIFY IN A TIMELY MANNER THEIR

 2   ELECTION RESULTS BECAUSE OF A HUGE INFLUX OF PROVISIONAL

 3   BALLOTS OR SIGNIFICANTLY MORE ABSENTEE BALLOTS THAN THEY WERE

 4   ACCOUNTING FOR, AND IT BEGAN TO EBB INTO WHEN THEY WERE

 5   SUPPOSED TO CERTIFY THE ELECTION RESULTS SO THAT WE CAN HAVE A

 6   STATE-WIDE CERTIFICATION.  AND BY INSERTING ANY OF IT, WHETHER

 7   IT'S LOOKING AT THE NINE ALLEGEDLY OR POTENTIALLY

 8   DISENFRANCHISED VOTERS IN GWINNETT, OR WHETHER IT IS TALKING

 9   ABOUT THE BROADER, AS MR. BROWN POINTED OUT, POTENTIALLY

10   HUNDREDS IF NOT THOUSANDS OF FOLKS STATEWIDE WHO FAILED TO FILL

11   OUT A FORM CORRECTLY OR IT'S NOT THE ACTUAL VOTER AND

12   SOMEBODY -- WHETHER IT'S THE NURSING HOME ATTENDANT WHO DECIDES

13   TO EXERCISE THE FRANCHISE ON BEHALF OF ALL THE RESIDENTS OF THE

14   NURSING HOME, WHETHER IT'S THE DAUGHTER WHO'S SUBMITTING A

15   BALLOT ON BEHALF OF THEIR DECEASED PARENT BECAUSE THEY, QUOTE,

16   KNEW HOW THEIR PARENT WAS GOING TO VOTE, THE STATE HAS PUT

17   THESE PROCEDURAL SAFEGUARDS IN PLACE AND HAS ESTABLISHED A

18   FRAMEWORK AT THIS POINT FOR PREVENTING THE INTEGRITY OF THE

19   ELECTION TO BE CALLED INTO QUESTION.  AND WE WOULD RESPECTFULLY

20   ASK THIS COURT TO REFRAIN FROM INJECTING ITSELF AT THIS POINT

21   AND GRANTING THE PLAINTIFF-REQUESTED RELIEF.

22             THE COURT:  OKAY.  THANK YOU.

23             MR. CORREIA:  GOOD AFTERNOON, YOUR HONOR.

24             THE COURT:  GOOD AFTERNOON.

25             MR. CORREIA:  I'M CRIS CORREIA.  I GET TO ANSWER ALL
```

1    THE CONSTITUTIONAL QUESTIONS FOR YOU.

2              THE COURT:  WELL, YOU'VE ALREADY HEARD MOST OF THEM.

3              MR. CORREIA:  YES.  AND I MADE NOTES, BUT PLEASE

4    REMIND ME IF I MISS SOME.

5              THE COURT:  I WILL.

6              MR. CORREIA:  I DO WANT TO START OUT WITH -- AND WE

7    DO INTEND TO FILE A BRIEF IN THE MARTIN CASE.  I HAVE ANOTHER

8    ONE DUE TOMORROW -- SO I PROBABLY CAN'T GET IT DONE BY THEN --

9    IN ANOTHER ACTION, BUT WE WOULD LIKE TO FILE ONE TO ADDRESS

10   THOSE CLAIMS DIRECTLY IN WRITING, BUT I AM PREPARED TO DISCUSS

11   THEM SOMEWHAT TODAY AS WELL.

12      I DO WANT TO JUST TAKE ONE STEP BACK FIRST TO TALK ABOUT

13   THE CONSTITUTIONAL CLAIMS TO -- TO KEEP IN MIND THREE THINGS.

14   WE ALL AGREE THE RIGHT TO VOTE IS FUNDAMENTAL, BUT IT'S NOT THE

15   SAME THING AS THE RIGHT TO VOTE BY ABSENTEE BALLOT.  SO THAT'S

16   NUMBER ONE.  THE SECOND IS THAT -- BECAUSE THERE IS NO FEDERAL

17   RIGHT TO VOTE BY ABSENTEE BALLOT.  THE SECOND IS THAT WHILE WE

18   CAN ALL AGREE THAT MAKING IMPROVEMENTS AND PERFECTING AS BEST

19   WE CAN THE ELECTION STRUCTURE OF THE STATE IS EVERYONE'S GOAL,

20   IT IS NOT THE CONSTITUTIONAL STANDARD.  AND, THIRD, I WANT TO

21   POINT OUT THAT IN MR. HARVEY'S AFFIDAVIT, THE ELECTION'S

22   DIRECTOR FOR THE STATE, THAT WE ATTACHED TO OUR BRIEF IN

23   RESPONSE TO THE GEORGIA MUSLIM VOTER PROJECT, THAT HE DOES GO

24   THROUGH AND PROVIDE IN PARAGRAPH 11 THE TOTAL REJECTED BALLOTS

25   THAT THE STATE HAS TRACKED IN ITS SYSTEM.  AND HE EXPLAINS IN

```
 1    HIS AFFIDAVIT -- HIS DECLARATION THAT WHILE ALL STATES HAVE TO

 2    USE THE STATE SYSTEM TO PROVIDE AN ABSENTEE BALLOT BECAUSE

 3    THAT'S HOW THE STATE KEEPS TRACK OF, YOU KNOW, WHO'S ALREADY

 4    VOTED BY ABSENTEE SO YOU CAN'T SHOW UP AT THE POLLS AND VOTE

 5    AGAIN, THAT NOT ALL STATE'S TRACK -- OR, I'M SORRY -- NOT ALL

 6    COUNTY'S TRACK -- IN THAT SYSTEM THEY ALL TRACK IT, THEY -- YOU

 7    KNOW, EVERY COUNTY IN GEORGIA IS -- RUNS THEIR OWN ELECTION.

 8    THE STATE DOES NOT RUN THEM FOR THEM.  AND WHILE THEY'RE ALL

 9    REQUIRED TO TRACK THOSE REJECTIONS, THEY DON'T ALL ENTER THAT

10    DATA INTO THE STATEWIDE REGISTRATION SYSTEM BECAUSE THAT

11    FEATURE IS FAIRLY NEW.  IT'S A FEW YEARS OLD.  BUT OF THOSE

12    COUNTIES THAT HAVE ENTERED THE DATA INTO THE SYSTEM -- AND I

13    BELIEVE MOST DO, BUT -- IN THE DECLARATION, IN PARAGRAPH 11 OF

14    THE DECLARATION, HE GOES THROUGH SOME OF THE NUMBERS.  AND JUST

15    TO GET AN UNDERSTANDING OF WHAT WE ARE TALKING ABOUT IN TERMS

16    OF THE TOTAL ABSENTEE BALLOTS THAT GO OUT, IN 2014 THE NUMBER

17    OF ABSENTEE BALLOTS THAT WERE REJECTED FOR ANY REASON WAS

18    .16 PERCENT.  THAT'S LESS THAN A QUARTER OF ONE PERCENT.  OF

19    THOSE, .06 PERCENT -- I'M SORRY -- NOT OF THOSE.  OF ALL

20    ABSENTEE BALLOTS, .06 PERCENT WERE REJECTED BECAUSE OF A

21    SIGNATURE MISMATCH.  IN -- NO.  THAT IS WRONG AGAIN.  I'M

22    SORRY.  THE POINT ZERO IS .06 PERCENT OF ALL BALLOTS CAST IN

23    THE STATE.  THE SIGNATURE MISMATCH WAS .009 PERCENT --

24              THE COURT:  IF I'M DOING --

25              MR. CORREIA:  -- THAT WERE REJECTED.
```

1          THE COURT:  IF I'M LOOKING AT A FACIAL CONSTITUTIONAL

2    CHALLENGE TO A STATUTE, HOW DOES THAT FIT WITHIN THAT FRAMEWORK

3    THAT I HAVE TO UTILIZE TO EVALUATE THAT?  BECAUSE AT LEAST WHAT

4    THE PLAINTIFF IS ARGUING IS THAT SIX PEOPLE, SEVEN PEOPLE, TEN,

5    50 PEOPLE, IT'S UNCONSTITUTIONAL ON ITS FACE BECAUSE IT DOESN'T

6    PROVIDE THE APPEALS PROCESS THAT WOULD HANDLE THESE SITUATIONS

7    WHERE OTHERWISE THIS PERSON WOULDN'T GET A RIGHT TO VOTE.

8          MR. CORREIA:  OKAY.  AND SO UNDER SUPREME COURT LAW,

9    A FACIAL CHALLENGE MUST BE UNCONSTITUTIONAL IN ALL

10   APPLICATIONS.  AND I THINK WE ARE MAYBE TALKING ABOUT SLIGHTLY

11   DIFFERENT THINGS WHEN WE'RE TALKING IN OUR BRIEFS ABOUT THE

12   APPLICATION PRONG, BUT AS I READ THOSE CASES, IF A STATUTE IS

13   ENACTED WHEREBY ITS VERY DESIGN, THE WAY THE STATUTE WORKS,

14   VOTERS ARE NOT NOTIFIED AND CAN'T TELL -- I'M SORRY -- IF A

15   STATUTE BY ITS VERY DESIGN PROVIDES THAT THE VOTER DOESN'T GET

16   NOTICE AND AN OPPORTUNITY TO CURE, THAT'S WHEN THE STATUTE IS

17   UNCONSTITUTIONAL IN ALL ITS APPLICATIONS BECAUSE YOU COULDN'T

18   APPLY IT CONSTITUTIONALLY IN THAT CIRCUMSTANCE.  IN ALL OF THE

19   CASES WHERE BALLOT OATHS OR OTHER OR SIGNATURES -- AND THEY

20   HAVE ALL BEEN SIGNATURES.  THERE HAS NEVER BEEN AN ABSENTEE

21   BALLOT PROVISION THAT HAS BEEN STRUCK DOWN THAT WASN'T RELATED

22   TO A SIGNATURE MISMATCH.  THAT WAS RELATED TO SOME OTHER

23   MISMATCH, MISSING THE YEAR OR MISSING THE RESIDENCE ADDRESS.

24   BUT WHEN THOSE ARE STRUCK DOWN, IT IS BECAUSE BY OPERATION OF

25   THAT STATUTE NO VOTE CAN CURE BECAUSE --

1          THE COURT:  SO YOU'RE SAYING THAT THE CONSTITUTIONAL

2     STANDARD IS THAT AS LONG AS THERE'S NOTICE AND SOME PEOPLE HAVE

3     THE RIGHT TO CURE, IT'S OKAY, BUT NOT EVERYONE?

4          MR. CORREIA:  IT'S NOT THAT IT'S SOME PEOPLE OR NOT

5     EVERYONE.  IT'S THAT THE STATUTE -- IT'S NOT BECAUSE OF THE

6     STATUTE'S DESIGN THAT A VOTER CAN'T CURE.  I AGREE THAT IF A

7     VOTER WAITS UNTIL, YOU KNOW, THE LAST WEEK, THE LAST FEW DAYS,

8     THEY MAY NOT GET THAT LETTER BACK IN TIME TO CURE, BUT THAT'S

9     NOT ON THE STATUTE.  THE STATUTE PROVIDES FOR AN OPPORTUNITY TO

10    CURE.  IT PROVIDES FOR WEEKS OF EARLY VOTING.  IT PROVIDES

11    FOR --

12         THE COURT:  WELL, AND, AGAIN, THE CROWD THAT CONCERNS

13    ME ARE THE PEOPLE THAT CAN'T DO EARLY VOTING AND THEY CAN'T

14    COME TO THE POLLS.  THERE IS A SEGMENT OF OUR POPULATION THAT

15    CAN'T TRAVEL TO THE POLLS, AND THAT'S ONE OF THE MAIN REASONS

16    WE HAVE ABSENTEE BALLOTS, IS FOR THAT CROWD OF PEOPLE.  AND

17    THAT'S WHO MOST CONCERNS ME WITH THIS.  IT DOESN'T CONCERN ME

18    AS MUCH AS THE PEOPLE THAT FOR CONVENIENCE SAKE CHOOSE TO TAKE

19    AN ABSENTEE BALLOT, IT'S REJECTED, AND THEY EASILY HAVE AN

20    OPPORTUNITY TO GO TO THE POLLS.  THAT GROUP DOES NOT CONCERN ME

21    LIKE THE GROUP THAT CANNOT GO TO THE POLLS AND HAS NO ABILITY

22    TO CONTEST THE FACT THAT THEY REALLY CAN'T VOTE BY ABSENTEE.

23    THAT'S THE GROUP THAT, WHEN I LOOK AT THE STATUTE, AT LEAST I

24    THINK THAT IT DOES NOT PROVIDE AN OPPORTUNITY FOR THAT CLASS OF

25    PERSON TO CURE THE PROBLEM.  THE PERSON THAT CAN'T GO TO THE

1  POLLS AND CANNOT CORRECT THE SIGNATURE MISMATCH.  THAT'S THE

2  PIECE THAT'S REALLY CONCERNING ME.

3        MR. CORREIA:  OKAY.  WELL, THERE -- I HAVE TWO

4  THINGS.  ONE, IS THERE IS A STATUTE, 21-2 -- 21-2-384A4 THAT

5  PROVIDES THE COUNTIES CAN -- THEY CAN ACTUALLY DEPUTIZE

6  SOMEBODY TO GO TO SOMEONE'S HOME.  IT IS USED PRIMARILY FOR

7  THINGS LIKE NURSING HOMES TO ALLOW A VOTER TO VOTE AND COLLECT

8  THE BALLOT THAT WAY.  IT'S ALSO USED FOR REGISTRATION.  ANOTHER

9  THING IS THAT VOTERS CAN, FOR PURPOSES OF ABSENTEE VOTERS, CAN

10  HAVE SOMEBODY ASSIST.  SOMEBODY CAN DELIVER A BALLOT TO YOU.

11  SOMEONE CAN ASSIST YOU IN CASTING IT.  SOMEONE CAN RETURN IT

12  BACK TO THE VOTER REGISTRATION OFFICE, THE ELECTIONS OFFICE.

13        THE COURT:  HOW DOES THAT WORK WITH THE ABSENTEE

14  BALLOT AND THE SIGNATURE MISMATCH.  BECAUSE I UNDERSTAND YOU

15  HAVE TO -- IF YOU'RE VOTING ELECTRONICALLY OR YOU'RE VOTING AT

16  THE POLLING PLACE, YOU HAVE TO GO IN PERSON.  SO WHAT DID YOU

17  MEAN BY SOMEONE CAN VOTE FOR YOU?

18        MR. CORREIA:  NOT VOTE FOR YOU.  I'M SORRY.  SOMEONE

19  CAN DELIVER YOUR BALLOT, YOUR ABSENTEE BALLOT FOR YOU.

20        THE COURT:  BUT IT DOES HAVE TO HAVE THE SIGNATURE;

21  CORRECT?

22        MR. CORREIA:  IT DOES, BUT THERE'S NOTHING -- THERE'S

23  NO EVIDENCE TO SUGGEST -- I MEAN, THE PURPOSE OF THE SIGNATURE

24  IS TO SIMPLY IDENTIFY THE VOTER.  IT IS NOT A QUALIFICATION FOR

25  VOTING.  IT IS SIMPLY TO -- BECAUSE WHEN YOU VOTE IN PERSON,

1  YOU VOTE WITH A PHOTO I.D.  WHEN YOU DON'T, THEN THE STATE

2  NEEDS TO HAVE SOME MEASURE.  I MEAN, WHEN I GO -- AND IF I

3  ORDER AN ABSENTEE BALLOT, AND THEN SOMEBODY ELSE GETS MY BALLOT

4  IN THE MAIL AND VOTES IT, WHEN I GO TO THE POLLS, I DON'T VOTE.

5  SO THE STATE HAS TO HAVE SOME WAY TO IDENTIFY AND MAKE SURE

6  THAT THE BALLOTS THAT ARE COMING IN ARE FROM THE CORRECT

7  VOTERS.

8           THE COURT:  AND I AGREE WITH YOU AND I DON'T HAVE ANY

9  PROBLEM WITH THERE BEING A SIGNATURE REQUIREMENT, AT LEAST IN

10 TERMS OF WHAT'S IN FRONT OF ME TODAY, AS A MEANS TO DO THAT.

11 AND I THINK THAT THE REASON FOR IT, AS YOU STATED, IS SO THAT

12 YOU CAN PROVE THAT THE PERSON IS WHO THEY SAY THEY ARE.  AND,

13 AGAIN, I'M FOLLOWING YOU.  I'M RIGHT THERE WITH YOU.

14          MR. CORREIA:  RIGHT.

15          THE COURT:  BUT HERE'S THE PROBLEM, IS THAT I'M IN A

16 NURSING HOME, I HAVE 15 THINGS THAT PROVE THAT I AM WHO I AM,

17 BUT MATCHING THE SIGNATURE IS NOT ONE OF THE WAYS THAT I CAN DO

18 IT BECAUSE I CAN'T LOOK AT IT, I DON'T SEE IT, I DON'T KNOW HOW

19 IT IS, AND MAYBE I'M NOT PHYSICALLY ABLE TO EXECUTE THE

20 SIGNATURE IN THE SAME WAY.  IN FACT, I CAN'T DO THAT.  SO, YES,

21 THERE'S A PROVISION THAT SOMEONE MAY DEPUTIZE SOMEONE, BUT

22 THAT'S NOT THERE AS A WAY THAT YOU CAN NECESSARILY MAKE THAT

23 WORK FOR YOU.  AND SO WHAT DOES THAT PERSON DO?  I CAN'T SEE A

24 WAY THAN PERSON CURRENTLY HAS ANY WAY TO VOTE.

25          MR. CORREIA:  I THINK THAT -- WHILE I DO NOT BELIEVE

```
 1   THAT IS NECESSARY FOR PURPOSES OF WHETHER OR NOT THERE'S A
 2   PROCEDURAL DUE PROCESS VIOLATION, I'LL GET TO THAT, BUT I THINK
 3   THAT ALL THAT PERSON HAS TO DO IS THE SAME THING THEY'D HAVE TO
 4   DO IF THEY GO TO A HEARING, IS PROVE THAT THEY'RE WHO THEY ARE.
 5   I MEAN, IF THE COURT WERE TO ORDER THAT THAT PERSON GETS A
 6   HEARING UNDER THE 21-230 PROVISION, WHICH IS A CHALLENGE TO A
 7   VOTER'S QUALIFICATIONS, HAS NOTHING TO DO WITH IDENTITY
 8   NORMALLY.  AND I'LL GET TO -- THE DISTINCTIONS BETWEEN THOSE,
 9   THAT IS WHAT MAKES IT A PROBLEM FOR THE COUNTIES.  BUT IF THE
10   COURT WERE TO ORDER THAT A VOTER HAS TO GO TO A HEARING TO
11   PROVE THAT THEY ARE WHO THEY SAY THEY ARE, THEY CAN DO THE SAME
12   THING AT AN ELECTION OFFICE, WHICH THEY'D HAVE TO GO TO ANYWAY.
13           THE COURT:  BUT NOT NECESSARILY.  AT A HEARING YOU
14   COULD BE REPRESENTED BY A LAWYER.  LIKE, BRIAN KEMP IS NOT HERE
15   TODAY.  YOU ARE HERE FOR HIM AND PRESENTING THE ARGUMENTS FOR
16   THAT OFFICE.  I MEAN, IT WOULD BE THAT PERSON'S OBLIGATION IF
17   THEY COULDN'T GO TO THE HEARING TO HAVE SOMEONE AS AN ATTORNEY
18   OR A REPRESENTATIVE, AND THEY WOULD HAVE TO WIN THAT HEARING.
19   I'M NOT SAYING THAT THEY'D HAVE TO ACCEPT ANYTHING.  BUT I
20   WOULD ASSUME THAT WHOEVER IS CONDUCTING THE HEARING, ALL THEY
21   WANT IS TO MAKE SURE THERE'S NO FRAUD AND THE RIGHT PERSON IS
22   VOTING.  SO IF THERE IS SOME WAY THAT THEY COULD PROVIDE SOME
23   INFORMATION FROM AN ATTORNEY IF THEY CAN'T COME OR SOMETHING
24   THAT SHOWS THERE'S NO FRAUD, THEN I DO THINK THAT THAT WOULD BE
25   A MEANINGFUL RELIEF.
```

1         MR. CORREIA:  I DON'T THINK THAT THAT IS ANY

2    DIFFERENT THAN THE SAME EFFORT AN ATTORNEY, DOCUMENTATION,

3    PROOF THAT THIS REALLY IS THAT PERSON'S SIGNATURE.  THAT'S ALL

4    THE COUNTY ELECTION OFFICE IS GOING TO WANT.

5         THE COURT:  BUT THEY CAN'T DO THAT RIGHT NOW.

6    THERE'S NO MECHANISM FOR THEM TO DO THAT.

7         MR. CORREIA:  I THINK THAT ANY -- I AM NOT AWARE OF A

8    SINGLE CIRCUMSTANCE AND I WOULD BE SURPRISED IF ANY COUNTY

9    ELECTION OFFICE TOLD A VOTER, UNLESS YOU CAN MATCH YOUR

10   SIGNATURE, EVEN IF YOU CAN PROVE TO ME YOU ARE WHO YOU SAY YOU

11   ARE, YOU CAN VOTE AN ABSENTEE BALLOT --

12        THE COURT:  BUT THAT'S WHAT THE STATUTE SAYS AND

13   THAT'S WHAT I'M GRASPING WITH.  THE STATUTE DOESN'T PROVIDE ME

14   WITH ANY LAW THAT SAYS THAT THAT'S WHAT HAPPENS.

15        MR. CORREIA:  THERE'S ACTUALLY A STATE SUPREME COURT

16   CASE.  I DON'T HAVE IT WITH ME, BUT I CAN PROVIDE THE COURT

17   WITH THE CITATION WHEN I GET BACK TO THE OFFICE.  I BELIEVE

18   IT'S JONES VS. -- IT WAS AN ELECTION CHALLENGE CASE.  IT'S

19   JONES VS. SOMEBODY.  IT'S A GEORGIA STATE SUPREME COURT CASE.

20   IT HAS INTERPRETED 21-2-386 PROVISION FOR THE COUNTY ELECTION

21   OFFICIAL VERIFYING ALL OF THE IDENTITY.  I KNOW THE STATUTE

22   READS, SHALL COMPLETE THESE PROVISIONS.  AND THE COURT HAS

23   INTERPRETED THAT TO MEAN THAT THE COUNTY REGISTER HAS THE

24   DISCRETION, AS LONG AS THEY ARE SATISFIED, THAT THE BALLOT IS

25   OF THAT VOTER.

1          THE COURT:  WELL, IF YOU'RE SAYING THAT'S WHAT

2     HAPPENS ANYHOW, WHY WOULD IT BE PROBLEMATIC TO SAY THAT THAT IS

3     JUST WHAT'S REQUIRED, THAT THERE IS SOME ABILITY TO PROVIDE

4     EXTRINSIC EVIDENCE TO PROVE THAT THAT IS YOUR SIGNATURE?

5     YOU'RE SAYING THAT THAT HAPPENS ALREADY, BUT IT IS NOT A RIGHT

6     THAT IS PROVIDED FOR IN THE PLAIN TEXT OF THE LAW.  AND SO IT

7     SEEMS CONTRADICTORY TO ME ON ONE HAND FOR THE GOVERNMENT TO

8     SAY, THIS WOULD UP-END EVERYTHING ABOUT THE ELECTION AND WHAT

9     WE DO TO PROVIDE A WAY FOR SOMEONE TO CHALLENGE THIS WITH

10    EXTRINSIC EVIDENCE, AND THEN AT THE SAME TIME SAY THIS IS IN

11    FACT WHAT WE ACTUALLY DO, SO THERE'S NO NEED FOR YOU TO REQUIRE

12    IT BECAUSE WE ALREADY DO IT.  BUT IF YOU REQUIRE IT, IT'S GOING

13    TO UP-END EVERYTHING AND WE'RE NOT GOING TO BE ABLE TO

14    FUNCTION, BUT WE ALREADY DO IT.  THAT SEEMS CONTRADICTORY TO

15    ME.

16          MR. CORREIA:  OKAY.  WELL, WE DO NOT INTERPRET THAT

17    STATUTE TO MEAN THAT A VOTER GETS A HEARING OR THAT A HEARING

18    IS REQUIRED UNDER 21-2-230.  BECAUSE 21-2-230 IS TO DETERMINE

19    WHETHER A VOTER IS ELIGIBLE TO VOTE --

20          THE WITNESS:  I UNDERSTAND.  I'M TRYING TO SAY WHAT

21    IS IN PLACE TO PROVIDE THE VOTER WITH AN OPPORTUNITY TO PROVIDE

22    EXTRINSIC EVIDENCE OR BE HEARD ON THE ISSUE OF A SIGNATURE

23    MISMATCH?  THERE'S NOTHING I READ IN ANYTHING THAT PROVIDES

24    THAT.

25          MR. CORREIA:  OKAY.  WELL, TWO THINGS.  THE -- ONE,

1   IS THIS GEORGIA SUPREME COURT CASE THAT DOES INTERPRET THE

2   STATUTE TO ALLOW THE COUNTY OFFICIAL TO HAVE DISCRETION AS LONG

3   AS THAT COUNTY OFFICIAL BELIEVES THAT THAT BALLOT --

4   UNDERSTANDS THAT THAT BALLOT IS FROM THAT VOTER, THEY CAN --

5   THEY DO NOT HAVE TO REJECT THAT BALLOT EVEN IF ONE OF THE

6   PIECES OF INFORMATION THAT'S REQUIRED BY STATE LAW IS MISSING.

7   THE SECOND IS THAT I AM NOT SUGGESTING THAT NOT PROVIDING THAT

8   VIOLATES THE PROCEDURAL DUE PROCESS --

9          THE COURT:  I UNDERSTAND THAT.

10          MR. CORREIA:  -- OR OTHERWISE THE -- YOU KNOW, THE

11  OTHER 14TH AMENDMENT CLAIMS --

12          THE COURT:  I JUST HEARD YOU SAY THAT IT VIOLATES

13  PROCEDURAL DUE PROCESS IF YOU DON'T HAVE A NOTICE AND AN

14  OPPORTUNITY TO CURE THE PROBLEM.  THAT'S WHAT I HEARD YOU

15  ARGUE.  AND I -- MY QUESTION FOR YOU IS I DON'T SEE THERE'S AN

16  OPPORTUNITY TO CURE FOR THE SUBSET OF PEOPLE THAT HAVE AN

17  ABSENTEE BALLOT BECAUSE THEY CAN'T DO EARLY VOTING AND THEY

18  CAN'T VOTE IN PERSON.  THAT'S WHY WE GOT ON THAT BECAUSE THAT'S

19  WHAT I HEARD YOU SAY I WAS SUPPOSED TO LOOK AT.

20          MR. CORREIA:  I BELIEVE THAT BECAUSE THE STATE HAS

21  CONFERRED THE RIGHT TO ABSENTEE VOTING IN GEORGIA, THERE IS A

22  STATE RIGHT TO DO IT, NOT A FEDERAL RIGHT.  THE PROCEDURAL DUE

23  PROCESS PROTECTIONS, THERE IS ONLY A FEDERAL CLAIM FOR A

24  VIOLATION OF THE PROCEDURAL DUE PROCESS WHEN THAT VOTER -- TO

25  BE A VIOLATION FIRST --

1          THE COURT:  THE WAY I VIEW THE LAW, THE STATE IS NOT

2     REQUIRED TO PROVIDE ABSENTEE BALLOT, BUT IF THE STATE DOES

3     PROVIDE IT AND TAKES IT AWAY WITHOUT DUE PROCESS OF LAW, THEN

4     THAT'S A VIOLATION OF THE CONSTITUTION.

5          MR. CORREIA:  BUT IT'S NOT MEASURED VOTER BY VOTER.

6     IT IS MEASURED WHETHER OR NOT THE STATUTE CREATES CLASSES OF

7     VOTERS THAT HAVE NO -- THAT HAVE NO OPPORTUNITY.  YOU -- THIS

8     IS WHERE A FACIAL CHALLENGE HAS TO BE UNCONSTITUTIONAL IN ALL

9     OF ITS APPLICATIONS UNDER THE SUPREME COURT LAW, UNDER MARION

10    OR CRAWFORD VS. MARION COUNTY, WHICH WAS THE PHOTO I.D. CASE

11    FROM INDIANA AT THE U.S. SUPREME COURT, OR WASHINGTON STATE

12    GRANGE CASE ALSO OUT OF THE U.S. SUPREME COURT.  A FACIAL

13    CHALLENGE -- IF THE STATUTE HAS A LEGITIMATE PURPOSE, WHICH I

14    THINK WE CAN ALL AGREE THE STATUTE HAS A LEGITIMATE PURPOSE,

15    YOU DON'T WANT SOMEBODY OTHER THAN THE TRUE VOTER GOING TO VOTE

16    SOMEBODY'S ABSENTEE BALLOT.  THEN UNLESS IT IS UNCONSTITUTIONAL

17    IN ALL OF ITS APPLICATIONS, IF IT HAS A LEGITIMATE SWEEP, IT IS

18    CONSTITUTIONAL.  AND THAT'S NOT TO SAY THAT THE STATUTE CAN'T

19    PROVIDE FURTHER RELIEF.  THE STATE CAN'T DO MORE.  BUT I DON'T

20    BELIEVE THAT IT IS CONSTITUTIONALLY REQUIRED TO.  I THINK AS

21    LONG AS THE -- AS LONG AS YOU DON'T CREATE A STATUTE THAT SAYS

22    THAT THERE IS NO NOTICE AND THERE IS NO OPPORTUNITY TO BE

23    HEARD, WHICH IS WHAT EVERY ONE OF THOSE OTHER STATUTES DID THAT

24    ARE CITED BY THE PLAINTIFFS -- THE FLORIDA CASE IN PARTICULAR,

25    IN THAT CASE, THE DETZNER CASE, IN THAT CASE THE COURT LOOKED

1    TO THE SIGNATURE MISMATCH.  AND THE REASON THERE WAS A CLAIM,

2    A -- YOU KNOW, S CONSTITUTIONAL VIOLATION THERE WAS BECAUSE THE

3    STATE PROVIDED AN OPPORTUNITY TO CURE EVERY OTHER KIND OF

4    MISMATCH.

5            THE COURT:  BUT I UNDERSTAND THOSE CASES ARE

6    DIFFERENT, BUT I DO HAVE TO PARSE THIS ONE.  BUT Y'ALL'S TIME

7    IS MORE THAN UP, SO THANK YOU.

8            MS. CORREIA:  THANK YOU.

9            THE COURT:  I THINK THE PLAINTIFFS MAY HAVE TWO

10   MINUTES, NOT VERY MUCH.

11           MR. YOUNG:  NO PROBLEM.  I JUST WANT TO PLUG IN A FEW

12   HOLES.  FIRST, THE HEARING THAT WE'RE ASKING FOR IS INFORMAL.

13   AND YOUR HONOR HAD RAISED THE POINT ABOUT VOTERS WHO ARE

14   COMPLETELY OUT OF TOWN, LIKE, HOW WOULD THEY PARTICIPATE IN THE

15   HEARING.  LIKE YOU SAID, THEY COULD SEND AN ATTORNEY.  BUT JUST

16   REAL BRIEFLY, IN SAUCEDO THEY ACKNOWLEDGE THAT POSSIBILITY OF

17   PEOPLE BEING OUT OF TOWN, AND THEY SAID A HEARING DOESN'T EVEN

18   HAVE TO BE SUPER FORMAL.  IT CAN BE RESOLVED REMOTELY OR

19   THROUGH A QUICK PHONE CALL.  WE DON'T NEED TO MICROMANAGE

20   EXACTLY HOW THAT GOES, BUT A LOT OF THE DUE PROCESS CASES

21   SIMILARLY CONTEMPLATE A MORE INFORMAL PROCESS.

22     SECONDLY, THE DEFENDANTS TALK ABOUT CHANGE THE PROCESSES

23   AT THE LAST MINUTE OR WHATEVER.  THE -- SORRY.  THE -- YOUR

24   HONOR KIND OF HONED IN ON THE POINT THEY HAVEN'T ARTICULATED

25   EXACTLY WHY THAT IS SO DIFFICULT FOR THEM.  AND THEY ARE

1    HARD-WORKING ELECTIONS OFFICIALS.  I DON'T EVER WANT TO TAKE

2    AWAY FROM THAT, BUT THERE ARE PLENTY OF CASES.  WE CITE SIX OF

3    THEM IN FOOTNOTE THREE OF PAGE 11 OF OUR REPLY BRIEF WHERE

4    INJUNCTIONS WERE ENTERED NEAR THE ELECTION.  AND THE IMPORTANT

5    DISTINCTION IN THOSE CASES, THAT THEY ALL ENTERED BACK-END

6    RELIEF.  NONE OF THEM CHANGED THE SUBSTANTIVE FRONT-END RULES

7    FOR HOW TO CAST THE BALLOT.  IT ONLY COVERED THINGS ON THE BACK

8    END.  THAT'S WHAT WE'RE SEEKING TO DO HERE.

9        THE THIRD POINT, YOUR HONOR CORRECTLY FOCUSES ON PEOPLE

10   WHO CANNOT VOTE IN PERSON.  THEY ARE PERMANENTLY

11   DISENFRANCHISED.  I STILL JUST WANT TO ADD, EVEN FOR THE PEOPLE

12   WHO CAN, THE WINDOW'S RAPIDLY CLOSING IF THEY GET THEIR

13   REJECTION TOO LATE.  THEY ALSO WILL BE PERMANENTLY

14   DISENFRANCHISED.

15       THE LAST POINT, MY FRIEND ON THE OTHER SIDE CITED SECTION

16   21-2-384 TO TALK ABOUT PEOPLE WHO MIGHT BE ABLE TO -- WHO ARE

17   HOME-BOUND OR WHATNOT.  THAT'S NOT ACCURATE.  THE STATUTE SAYS

18   THAT SOMEONE WHO'S CONFINED IN A HOSPITAL -- AND IT ONLY SAYS

19   HOSPITAL -- CAN DELIVER AN ABSENTEE BALLOT TO A REGISTRAR WHO

20   PRESUMABLY COMES TO THE HOSPITAL.  THEY STILL HAVE TO VOTE BY

21   ABSENTEE BALLOT.  SO IF THEIR SIGNATURE DOESN'T MATCH, THEY'RE

22   STILL DISENFRANCHISED.  SO EVEN THAT IS A THIN READ TO REST.

23   AND UNLESS THIS COURT HAS ANY FURTHER QUESTIONS, THIS COURT

24   SHOULD GRANT PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING

25   ORDER.

```
1              THE COURT:  OKAY.  THANK YOU.

2              MR. BROWN:  YOUR HONOR, ONE MINUTE.

3              THE COURT:  OKAY.  ONE MINUTE.  THAT'S IT.

4              MR. BROWN:  FIRST, AS I'M SURE YOU'RE WELL AWARE OF,

5   THE DEFENDANTS HAVE TOTALLY MISSED THE BOAT ON LACHES.  LACHES

6   REQUIRES A LACK OF DILIGENCE AND PREJUDICE.  THEY HAVEN'T

7   ESTABLISHED ANY OF THOSE.  CASE AFTER CASE, THEY WOULD LOSE

8   THAT ARGUMENT ON THESE FACTS.  THE CURE THAT IT -- THE

9   DEFENDANTS SAY THEY ARE GIVING NOW IS NOT GOOD ENOUGH FOR A LOT

10  OF THE REASONS THAT YOU ANTICIPATED.  WE HAVE ASKED FOR ALL THE

11  CURE LETTERS FROM GWINNETT COUNTY, FOR EXAMPLE.  WE'VE GOTTEN

12  EIGHT.  WE'VE GOTTEN EIGHT.  THEY HAVE REJECTED 594 PEOPLE.

13  THEY HAVE DISENFRANCHISED 594 PEOPLE.  AND THEY'RE SAYING, WE

14  GIVE THEM ALL NOTICE, WE'VE GIVEN EIGHT.  SO THEY'RE EITHER

15  VIOLATING THE OPEN RECORDS ACT OR THEY'RE VIOLATING THE

16  STATUTE.  IN ANY EVENT, THAT IS NOT SUFFICIENT NOTICE.  THE

17  STATE STATUTE IS NOT SUFFICIENT NOTICE.  OUR CLAIM HAS NOTHING

18  TO DO WITH THE ARGUMENT OVER A FACIAL CHALLENGE BECAUSE WE'RE

19  MAKING -- WE'RE NOT MAKING A FACIAL CHALLENGE EXCEPT TO THE

20  YEAR OF BIRTH STATUTE.  AND THERE CAN BE NO LOGICAL EXPLANATION

21  FOR DISENFRANCHISING AT LEAST 200 PEOPLE.  NOW WE LEARNED THAT

22  GWINNETT -- THIS IS STUNNING IN THE DEFENDANTS' RESPONSE --

23  THAT GWINNETT MAY BE THE TIP OF THE ICEBERG IN THAT ALL THOSE

24  STATES THAT THE -- ALL THOSE COUNTIES THAT THE SECRETARY OF

25  STATE IS REPORTING ZERO, THAT THAT'S FALSE.  THAT'S FALSE
```

 1   INFORMATION AT THE SECRETARY OF STATE.  AND THAT HIS PROBLEM

 2   AND THE SECRETARY OF STATE'S PROBLEM MAY BE MUCH WORSE THAN IT

 3   APPEARS.  I THINK, AT A BEAR MINIMUM, THE STATE DEFENDANTS

 4   OUGHT TO GIVE US THE REAL INFORMATION ABOUT WHAT THE COUNTIES

 5   ARE DOING.  BECAUSE IF THEY'RE WORSE THAN GWINNETT OR THEY'RE

 6   ALL AS BAD AS GWINNETT, THEN WE HAVE AN ENTIRELY DIFFERENT

 7   PROBLEM.  IN ANY EVENT, OUR CASE, THOUGH, I WOULD ENCOURAGE

 8   YOUR HONOR TO LOOK AT OUR -- OUR PROPOSED ORDER GRANTING THE

 9   AMENDED MOTION, WE HAVE A VERY EASY CURE FOR ALL OF THESE

10   PROBLEMS.  ALL YOU NEED IS A STAMP.  YOU NEED A COMPUTER

11   PROGRAM THAT YOU CAN SEND OUT TO ALL THE PEOPLE WHO HAVE BEEN

12   REJECTED AND SAYS, HERE'S HOW YOU CAN CURE.  THEY CAN DO THAT.

13   A LOT OF VERY ELOQUENT LANGUAGE ON THE OTHER SIDE ABOUT HOW --

14   HOW BURDENSOME THIS IS AND HOW IT'S SO -- YOU HEARD NO

15   SPECIFICS, YOU DIDN'T GET A DOLLAR, YOU DIDN'T GET A -- YOU

16   DIDN'T GET A -- HOW MANY MAN HOURS THIS IS GOING TO BE --

17              THE COURT:  MR. BROWN, I CUT THEM OFF, SO I'M GOING

18   TO BE FAIR TO BOTH SIDES.

19              MR. BROWN:  THANK YOU, YOUR HONOR.

20              THE COURT:  THANK YOU.

21        AS I MENTIONED, I'M NOT GOING TO RULE FROM THE BENCH RIGHT

22   NOW.  I'VE LISTENED TO THE ARGUMENTS.  I WANT TO GO BACK AND

23   LOOK AT THE LAW AND YOUR BRIEFS AND THE STUFF THAT'S BEEN FILED

24   WITH THE BENEFIT OF YOUR ANSWERS.  AND A LOT OF STUFF WE DIDN'T

25   TALK ABOUT TODAY IT'S IN THE WRITTEN DOCUMENTS AND IT'S THERE

1    AND IT'S NOT THAT BECAUSE WE DIDN'T TALK ABOUT IT IT'S NOT

2    IMPORTANT.  IT'S PART OF EVERYTHING THAT I'M GOING TO CONSIDER.

3    SO THAT'S CERTAINLY A BIG PART OF WHAT I'M GOING TO TALK ABOUT.

4    THE HEARING IS TO ADD -- ANSWER QUESTIONS FOR ADDITIONAL

5    INFORMATION, BUT I DON'T IGNORE WHAT IT IS THAT YOU'VE FILED.

6    THAT'S PART OF WHAT I DO HERE.  AND WHATEVER HAPPENS WITH THE

7    INJUNCTION, I AM GOING TO TRY TO GET IT OUT IN THE NEXT COUPLE

8    OF DAYS.  I'M GOING TO DO MY BEST TO DO THAT.  THE LAWYERS KNOW

9    THIS, BUT I WANT TO MAKE SURE THAT EVERYONE ELSE DOES, IS THAT

10   THIS IS A LEGAL CASE WITH LOTS OF CLAIMS AND PARTIES -- WELL,

11   ACTUALLY TWO CASES, AND THE INJUNCTION IS JUST ONE PART AND

12   IT'S AN EMERGENCY VERY BEGINNING PART.  SO NO MATTER WHAT

13   HAPPENS WITH THE INJUNCTION, UNLESS THE PARTIES WANT OTHERWISE,

14   THE CASE DOES MOVE ON.  AND THERE'S RELIEF THAT CAN HAPPEN FOR

15   THIS ELECTION, BUT THERE'S ALSO KIND OF, OKAY, THESE ISSUES MAY

16   BE HEARD FOR THE NEXT ELECTION, AND THE CASE KEEPS GOING

17   FORWARD.  AND AT THE SAME TIME, AS I THINK COUNSEL FOR THE

18   STATE SAID, IS THAT THE COURT'S JOB IS NOT TO GO THROUGH AND

19   MAKE THIS THE BEST ABSENTEE STATUTE THAT WE CAN AND MAKE IT THE

20   CLEAREST AND WHAT WE ALL WANT IT TO BE.  MY JOB IS TO GO

21   THROUGH IT AND FIND OUT IF IT VIOLATES THE CONSTITUTION, AND

22   THAT'S A VERY DIFFERENT EXERCISE THAN WHAT PEOPLE MIGHT WANT

23   THE COURT TO DO.  I HAVE A VERY LIMITED REACH ON MY ROLE AND

24   WHAT IT IS THAT I DO.  AND I TAKE THAT VERY SERIOUSLY.  SO I'M

25   NOT GOING TO GO THROUGH AND REWRITE THIS STATUTE TO MAKE IT SAY

1   WHAT I WOULD LIKE IT TO SAY AND MAKE IT CLEAR TO EVERYONE.  I'M

2   GOING TO ONLY NARROWLY LOOK AT THIS BASED UPON THE CONSTITUTION

3   AND MY ROLE IN THE SYSTEM OF GOVERNMENT THAT WE HAVE.

4        SO FIRST STEP IS TO MAKE A RULING ON THE INJUNCTION.  IF I

5   NEED ADDITIONAL BRIEFING AND PUT A TIMETABLE ON THAT ON THE

6   PRELIMINARY INJUNCTION ISSUES, THOSE DON'T GO AWAY.  THAT IS

7   STILL HERE AND IT'S STILL IMPORTANT.  BUT WITH A COURT CASE OF

8   THIS MAGNITUDE WE DEAL WITH IT IN PIECES AND WHAT'S IN FRONT OF

9   THE COURT AND WHAT'S RIPE AND WHAT'S READY TO DEAL WITH, AND

10  THAT'S HOW THIS WILL PROCEED.  SO IF IN THE PROCESS OF DRAFTING

11  THE ORDER I DO HAVE ADDITIONAL QUESTIONS, I WILL E-MAIL ALL THE

12  PARTIES SO THEY KNOW WHAT THEY ARE, BUT I DO FEEL LIKE WITH THE

13  EXTENSIVE BRIEFING, THE DECLARATIONS AND THE QUESTIONS I'VE

14  ASKED TODAY, THAT I DO HAVE A GOOD RECORD AT LEAST TO GET US

15  THROUGH KIND OF THE NEXT STEP.  AND I WILL DO MY BEST TO WRITE

16  THE BEST ORDER I CAN IN THE FASTEST TIME THAT I CAN POSSIBLE.

17  SO I DO APPRECIATE THE PREPARATION OF ALL THE PARTIES AND THE

18  FACT THAT YOU WERE VERY WILLING TO ANSWER THE QUESTIONS THAT I

19  HAVE.  SO THAT'S ALL I HAVE.

20       YES.

21            MR. TYSON:  YOUR HONOR, COULD I JUST GIVE YOU ONE

22  OTHER CITATION AS YOU'RE WORKING ON THE ORDER --

23            THE COURT:  SURE.

24            MR. TYSON:  -- 22-419, WHICH IS THE PROVISIONAL

25  BALLOTING PROCESS.  IT DOESN'T REQUIRE A HEARING.  IT'S ANOTHER

1   WAY THAT COULD -- A REMEDY COULD BE CRAFTED AS YOU'RE LOOKING

2   AT THAT.

3            THE COURT:  OKAY.  THANK YOU.  I APPRECIATE THAT.

4       OKAY.  AND THANK YOU ALL FOR BEING IN THIS LENGTHY

5   HEARING.  AND, WITH THAT, WE ARE ADJOURNED.  THANK YOU.

6                (PROCEEDINGS ADJOURNED.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT OFFICIAL CERTIFIED TRANSCRIPT

C E R T I F I C A T E


UNITED STATES OF AMERICA

NORTHERN DISTRICT OF GEORGIA

 I, MONTRELL VANN,RPR,RMR,RDR,CRR, OFFICIAL COURT REPORTER

FOR THE UNITED STATES DISTRICT COURT, FOR THE NORTHERN DISTRICT

OF GEORGIA, DO HEREBY CERTIFY THAT THE FOREGOING 92 PAGES

CONSTITUTE A TRUE TRANSCRIPT OF PROCEEDINGS HAD BEFORE THE SAID

COURT, HELD IN THE CITY OF ATLANTA, GEORGIA, IN THE MATTER

THEREIN STATED.

 IN TESTIMONY WHEREOF, I HEREUNTO SET MY HAND ON THIS, THE

25TH DAY OF OCTOBER 2018.


      /S/ MONTRELL VANN_____
      MONTRELL VANN,RPR,RMR,RDR,CRR
      OFFICIAL COURT REPORTER
      UNITED STATES DISTRICT COURT


UNITED STATES DISTRICT COURT OFFICIAL CERTIFIED TRANSCRIPT