**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **RHONDA J. MARTIN, DANA BOWERS, JASMINE CLARK, SMYTHE DUVAL, JEANNE DUFORT and THE GEORGIA COALITION FOR THE PEOPLE'S AGENDA, INC.,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**ROBYN A. CRITTENDEN, in her official capacity as Acting Secretary of State of Georgia, REBECCA N. SULLIVAN, RALPH F. "RUSTY" SIMPSON, DAVID J. WORLEY and SETH HARP; STEPHEN DAY, JOHN MANGANO, ALICE O'LENICK, BEN SATTERFIELD and BEAUTY BALDWIN,**<br><br>**Defendants.** | **Civil Action File No. 18-cv-04776 LMM** |

**PLAINTIFFS' MOTION FOR LEAVE TO FILE
SECOND AMENDED COMPLAINT**

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, Plaintiffs

respectfully move this Court for leave to file their Second Amended Complaint.  A

draft of the Second Amended Complaint is attached as Exhibit A.

**BACKGROUND**

Plaintiffs filed the original Complaint on October 15, 2015.  (Doc. 1).  On

October 22, 2018, Plaintiffs filed the First Amended Complaint as a matter of

1

right, adding as a party Plaintiff The Georgia Coalition for the People's Agenda, Inc.  (Doc. 10).

In the course of the November 6, 2018 general election, the original Plaintiffs became aware of citizens whose absentee ballots were rejected by the Defendant members of the Gwinnett County Board of Registration and Elections. deprived of their right to vote by Defendants.  Three of these citizens are Gwinnett County residents Dinesh Chandra, James Arthur Moore and Corliss Armstead, each of whom attempted to vote by mail absentee ballot in the November 6, 2018 general election, but whose ballots were rejected because of immaterial errors and omissions.

In addition to adding as plaintiffs Dinesh Chandra, James Arthur Moore and Corliss Armstead, the Second Amended Complaint adds a new count based on Defendants' violation of the Civil Rights Act, 52 U.S.C. § 10101(a)(2)(B).

## MEMORANDUM OF LAW

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a party may amend its pleadings with the Court's leave and that the "court should freely give leave when justice so requires."  As  the Eleventh Circuit held in *Shipner v. Eastern Air Lines, Inc.,* 868 F.2d 401, 406-407 (11th Cir. 1989),  "Rule 15(a)

severely restricts the district court's freedom, directing that leave to amend shall be freely given when justice so requires."

Justice requires the granting of this motion.  First, the Second Amended Complaint is filed before any defendant has answered and before the discovery has begun.  Second, the three plaintiffs that the Second Amended Complaint would join to this case have been identified only recently based on their experiences in attempting to vote absentee by mail in the November 6, 2018 general election. Third, the new claim added by the Second Amended Complaint under the Civil Rights Act, 52 U.S.C. § 10101, like the claims in the original complaint, concerns the Defendants' rejection of absentee ballots.  It is based on the same factual averments - -i.e., that Defendants are prohibited from rejecting ballots for non-material reasons — and has already been the subject of briefing before this Court.

The Second Amended Complaint is not interposed for any improper purpose, and its filing will not prejudice the defendants.  *See Foman v. Davis,* 371 U.S. 178, 192 (1962).

**WHEREFORE**, Plaintiff respectfully requests that this Court (1) grant this Motion and order the Clerk to docket the attached proposed Second Amended Complaint (2) order the Clerk to add Dinesh Chandra, James Arthur Moore and Corliss Armstead as Plaintiffs in this case.

3

A proposed order is filed herewith as Exhibit B.


Respectfully submitted this 12th day of November, 2018


/s/ Bruce P. Brown
Bruce P. Brown
Georgia Bar No. 064460
bbrown@brucepbrownlaw.com
Bruce P. Brown Law LLC
1123 Zonolite Rd. NE
Suite 6
Atlanta, Georgia 30306
(404) 881-0700

*Attorney for Plaintiffs*

/s/ John Powers
John Powers*
jpowers@lawyerscommittee.org
Lawyers' Committee for Civil Rights Under Law
1500 K Street NW, Suite 900
Washington, D.C. 20005
Telephone:  (202) 662-8600
Facsimile:   (202) 783-0857

*Counsel for Plaintiffs Dinesh Chandra, Corliss Armstead, James Arthur Moore, Dana Bowers, Jeanne Dufort, Rhonda J. Martin and The Georgia Coalition for the People's Agenda, Inc.*

**\*Admitted *pro hac vice***

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **RHONDA J. MARTIN, et al.,** | |
| **Plaintiffs,** | **Civil Action No.** |
| **v.** | **1:18-cv-04776-LMM** |
| **ROBYN A. CRITTENDEN, et al.,** | |
| **Defendants.** | |

**CERTIFICATE OF SERVICE AND
COMPLIANCE WITH LOCAL RULE 5.1(C)**

I hereby certify that on this 12th day of November, 2018, the foregoing

PLAINTIFFS' MOTION TO AMEND was filed electronically with the Clerk of

Court using the CM/Doc system, which will automatically send e-mail notification

of such filing to all attorneys of record.   I further certify that the foregoing has

been prepared in a Times New Roman 14 point font, which is one of the font and

point selections approved by the Court in Local Rule 5.1(C).

This 12th day of November, 2018.

*/s/ Bruce P. Brown*
Bruce P. Brown

EXHIBIT

A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |
|---|---|
| **RHONDA J. MARTIN, DANA BOWERS, JASMINE CLARK, SMYTHE DUVAL, JEANNE DUFORT, THE GEORGIA COALITION FOR THE PEOPLE'S AGENDA, INC., DINESH CHANDRA, JAMES ARTHUR MOORE, AND CORLISS ARMSTEAD,**<br><br>    **Plaintiffs,**<br><br>**v.**<br><br>**ROBYN A. CRITTENDEN, ACTING SECRETARY OF STATE OF GEORGIA; REBECCA N. SULLIVAN, RALPH F. "RUSTY" SIMPSON, DAVID J. WORLEY and SETH HARP;  STEPHEN DAY, JOHN MANGANO, ALICE O'LENICK, BEN SATTERFIELD and BEAUTY  BALDWIN,**<br><br>    **Defendants.** | **Civil Action File No. 18-cv-04776 LMM** |

## SECOND AMENDED COMPLAINT

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, and with leave of Court, Plaintiffs file this Second Amended Complaint and add as a party plaintiffs Dinesh Chandra, James Arthur Moore, and Corliss Armstead.  In addition

to adding these new plaintiffs, Plaintiffs add a new Count III.  With the exception of these amendments, the Second Amended Complaint is identical to the First Amended Complaint.

## INTRODUCTION

1.

This is a civil rights action for prospective declaratory and injunctive relief brought against Georgia elections officials in their official capacities.

2.

"The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government."  *Reynolds v. Sims*, 377 U.S. 533, 555 (1964).  The right to vote is a "fundamental political right" that is "preservative of all rights." *Yick Wo v. Hopkins,* 118 U.S. 356, 370 (1886).  The right to vote includes "the right of qualified voters within a state to cast their ballots and *have them counted.*" *United States v. Classic,* 313 U.S. 299, 315 (1941) (emphasis added).

3.

The State of Georgia allows any eligible elector to vote by mail ("absentee mail voters" or "mail voters").  Given the highly-publicized dangers associated

with voting in person using Georgia's paperless Direct Recording Electronic

("DRE") voting system, applications for paper mail absentee ballots has surged in

advance of the 2018 general elections.  Democratic, Republican, and Libertarian

gubernatorial candidates are urging Georgia citizens to vote by mail, and the

Libertarian Secretary of State candidate is urging the same.

4.

However, the State of Georgia's Election Code creates unusual hardships

and risks for voters choosing to vote by mail ballot. The penalty for even the

smallest clerical error or a question about the voter's signature is

disenfranchisement, with no meaningful opportunity to cure any perceived

discrepancy.

5.

Mail ballots are frequently rejected because of a perceived signature

discrepancy — a determination that can be made by election staff without

signature analysis training on a subjective and arbitrary basis without oversight of

supervisors or of authorized pollwatchers appointed by political parties and

candidates.

6.

Another common discrepancy is the unintentional voter error of dating the
oath with the current date rather than the required date of birth.  The consequence
of making such an understandable human error is a presumption by the reviewing
official that the vote is fraudulent voter, with the result that the ballot is deemed
void.

7.

Further, the State of Georgia, and Gwinnett County in particular, have a
history of rejecting an alarmingly high percentage of mail ballots.  The MIT
Election Data and Science Lab's Election Performance Index ranked Georgia as
42nd (8th worst) in the nation for high numbers of rejections of mail ballots.[1]

8.

For example, in the 2016 general election, Gwinnett County rejected l,196 of
timely received mailed ballots out of the 20,120 timely mailed ballots cast, a 6%
rejection rate.  In the May 2018 primary, Gwinnett County rejected 8% of timely
received mailed ballots.  Through October 12, 2018, Gwinnett County has rejected

---

[1] https://elections.mit.edu/#state-GA

9.6% of the 4,063 mail ballots received.  Morgan County, by contrast, has rejected

only 3 mail ballots, or 2.7%, of the 111 mail ballots received.  The State's most

populous county, Fulton, had rejected no mail ballots as of October 12, 2018.

9.

Georgia law requires that election officials "promptly" notify a mail ballot

elector if his or her mail ballot application has been rejected, but does not require

such notification to be made within a specified time frame to assure that the voter

has a right to re-apply and vote.  Nor does Georgia law require that the election

official enclose with such notification a new mail ballot application with

instructions to resubmit.

10.

Georgia law likewise requires prompt notification to electors whose voted

mail ballots have been rejected, but specifies no time frame or provisions for

curing the discrepancies in time for the ballot to count. Any discrepant mail ballots

received on Election Day or the prior day would have almost no chance of cure

given that, unlike provisional ballots of polling place voters, there are no post-

Election Day cure processes that apply to mail ballots.  The mail ballot rejection

procedure is almost the antithesis of the provisional ballot process, which entails

immediate formal notification and permits cure for voters who cannot provide

immediate proper identification in the polling place.

11.

In addition, Georgia law does not allow mail ballot electors to personally

deliver mail ballots to their home precinct on Election Day, and instead requires

mail ballots, if personally delivered, to be delivered to the county's central election

office which may require time-consuming and expensive travel, further reducing

the opportunity to cure and cast an effective mail ballot.

12.

Further, Georgia law prohibits the voter from marking his or her mail ballot

on Election Day even if the ballot is to be hand delivered to the election office on

Election Day. The misguided statute infringes on the right for a voter to vote on

Election Day with the benefit of the latest news and information.

13.

These various arbitrary requirements, alone and in combination, burden the

right to vote, serve no legitimate governmental purpose that cannot be

accomplished by more tailored means, and threaten to disenfranchise thousands of

honest, eligible voters each year.

14.

This action is for limited and reasonable injunctive relief that, *inter alia,*

requires Defendants to give Georgians meaningful notice of the rejection of an

absentee mail ballot application or the rejection of a mailed ballot within three days

of receipt of the application or ballot, respectively, places reasonable limitations on

ability to reject applications or mail ballots, and provides eligible voters with a

reasonable process and time to cure discrepancies.

## JURISDICTION AND VENUE

15.

This Court has subject-matter jurisdiction over each of the claims raised in

this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), § 1343

(jurisdiction over civil rights actions), § 1367 (supplemental jurisdiction), § 2201

(jurisdiction to grant declaratory relief), and § 2202 (jurisdiction to grant relief

ancillary to declaratory judgment).

16.

Venue lies in the Northern District of Georgia pursuant to

28 U.S.C. § 1391(b) because some of the defendants reside in this judicial district

and all defendants are residents of Georgia and a substantial part of the events or

omissions giving rise to the Plaintiffs' claims occurred and will occur in this judicial district.

## PLAINTIFFS

### 17.

Plaintiff Rhonda J. Martin ("Martin") is a registered elector of the State of Georgia and a resident of Fulton County.  Martin intends to vote in each of the upcoming elections for which she is eligible, and has applied for a mail ballot for the November 6, 2018 election.

### 18.

Plaintiff Dana Bowers ("Bowers") is a registered elector of the State of Georgia and a resident of Gwinnett County.  Bowers is eligible to vote and intends to vote in all future elections in Gwinnett County for which she is eligible. Bowers has applied for a mail ballot and intends to vote by absentee mail-in ballot in the November 6, 2018 election.

### 19.

Plaintiff Jasmine Clark ("Clark") is a registered elector of the State of Georgia and a resident of Gwinnett County.  Clark is eligible to vote and intends to vote in all future elections in Gwinnett County for which she is eligible.  Clark also

is the nominee of the Democratic Party of Georgia for the Georgia State House of Representatives for House District 108 in the upcoming 2018 elections.  Clark wishes to vote an auditable paper ballot and not vote on an electronic machine, but fears that her mail ballot will be rejected given Gwinnett County's history of disenfranchisement. She currently plans to vote on an electronic machine and accept the attendant risk, rather than the risk of rejection of her mail ballot.  As a candidate, Clark has a legally cognizable interest in ensuring that the rights of her supporters to cast their votes are honored.

20.

Plaintiff Jeanne Dufort ("Dufort") is a registered elector of the State of Georgia and a resident of Morgan County. Dufort is eligible to vote and intends to vote in all future elections in Morgan County for which she is eligible. Dufort has received a mail ballot and intends to vote by absentee mail-in ballot in the November 6, 2018 election.

21.

Plaintiff Smythe DuVal ("Duval") is a registered elector of the State of Georgia and a resident of Cobb County.  Duval is eligible to vote and intends to vote in all upcoming elections in Cobb County for which he is eligible.  Duval

intends to vote by absentee mail-in ballot in the upcoming November election.

DuVal also is the nominee of the Libertarian Party of Georgia for the statewide

contest to be Secretary of State in the upcoming 2018 elections. Duval has urged,

and expended campaign resources to encourage, his supporters to vote by absentee

mail-in ballot in the upcoming elections.  As a candidate, DuVal has a legally

cognizable interest in ensuring that the rights of his supporters to cast their votes

are honored.

22.

Plaintiff THE GEORGIA COALITION FOR THE PEOPLE'S AGENDA,

INC. ("GCPA") is a Georgia nonprofit corporation with its principal place of

business in Atlanta, Georgia.  The GCPA is a coalition of more than 30

organizations, which collectively have more than 5,000 individual members.  The

organization encourages voter registration and participation, particularly among

Black and other underrepresented communities.  The GCPA's support of voting

rights is central to its mission.  The organization has committed, and continues to

commit, time and resources to conducting voter registration drives, voter

education, voter ID assistance, Souls to the Polls, Pews to the Polls, and other get

out the vote efforts in Georgia that seek to encourage voter participation.  Voters

who submit absentee ballot applications and absentee ballots through the "Pews to the Polls" program organized by the GCPA in conjunction with churches in the Atlanta metro area are likely to have had their absentee ballots rejected by the Gwinnett County Board of Registrations and Elections and other county boards of elections in past elections on the basis of purported mismatched or missing birth year, signature, or other  "insufficient oath information" in past elections, which is likely to recur in the November 2018 election.

23.

The arbitrary and improper rejection of absentee ballots in Gwinnett County and elsewhere in Georgia is causing and will continue to cause harm to the GCPA's mission of encouraging minority voter registration and participation.  The arbitrary and improper rejection of absentee ballots will cause GCPA to divert a portion of its financial and other organizational resources to educating absentee voters about potential pitfalls in the process and assisting voters whose ballots were rejected who seek to cast a second absentee ballot or vote in person.  As a result, the GCPA has, and will continue to have, fewer resources to dedicate to its other organizational activities, including voter education, registration, and get out

the vote efforts, unless the arbitrary and improper absentee ballot rejection policies in Gwinnett County and Georgia are enjoined.

24.

Dinesh Chandra ("Chandra") is a registered elector of the State of Georgia and a resident of Gwinnett County.  Chandra is eligible to vote and attempted to vote absentee by mail in the November 6, 2018 election.   Chandra's absentee by mail ballot, however, was rejected by the Gwinnett County Board of Registration and Elections ("the Gwinnett Board") for reasons that were not material in determining whether he was qualified under Georgia law to vote in the election.

25.

James Arthur Moore ("Moore") is a registered elector of the State of Georgia and a resident of Gwinnett County.  Moore is eligible to vote and attempted to vote absentee by mail in the November 6, 2018 election.   Moore's absentee by mail ballot, however, was rejected by the Gwinnett Board for reasons that were not material in determining whether he was qualified under Georgia law to vote in the election.

26.

Corliss Armstead is a registered elector of the State of Georgia and a
resident of Gwinnett County.  Armstead is eligible to vote and attempted to vote
absentee by mail in the November 6, 2018 election.   Armstead's absentee by mail
ballot, however, was rejected by the Gwinnett Board for reasons that were not
material in determining whether she was qualified under Georgia law to vote in the
election.

**DEFENDANTS**

27.

Defendant BRIAN KEMP is sued for prospective declaratory and injunctive
relief in his official capacity as the Secretary of State of Georgia.   Together with
any successors in office automatically substituted for him as a Defendant by
operation of Fed. R. Civ. P. 25(d), Defendant KEMP is hereinafter referred to as
"Kemp" or the "Secretary."

28.

Secretary Kemp is a state official subject to suit in his official capacity
because his office "imbues him with the responsibility to enforce the law or laws at
issue in the suit," *Grizzle v. Kemp,* 634 F.3d 1314, 1319 (11th Cir. 2011),

specifically the election laws in the State of Georgia.  Secretary Kemp serves as the

Chairman of the State Election Board.

29.

Defendants REBECCA N. SULLIVAN, RALPH F. "RUSTY" SIMPSON,

DAVID J. WORLEY and SETH HARP are members of the State Election Board

in Georgia. As members, they are responsible for (1) obtaining uniformity in

election practices by promulgating rules and regulations to ensure the legality and

purity of all elections, (2) investigating frauds and irregularities in elections, and

(3) reporting election law violations to the Attorney General or appropriate district

attorney.  The State Board Members are authorized to take such other actions

consistent with law to provide for the conduct of fair, legal, and orderly elections.

Together with any successors in office automatically substituted for any of them as

Defendants by operation of Fed. R. Civ. P. 25(d), these Defendants are hereinafter

collectively referred to as the "State Election Board" or "State Election Board

Members."  The State Board Members are sued for prospective declaratory and

injunctive relief in their official capacities.

30.

Defendants STEPHEN DAY, JOHN MANGANO, ALICE O'LENICK,
BEN SATTERFIELD and BEAUTY BALDWIN are sued for prospective
declaratory and injunctive relief in their official capacities as members of the
Gwinnett Board.  Together with any successors in office automatically substituted
for any of them as Defendants by operation of Fed. R. Civ. P. 25(d), these
Defendants are hereinafter collectively referred to as the "Gwinnett Board
Members."

31.

The Gwinnett Board, acting through the Gwinnett Board Members, has the
authority to exercise the powers and duties of a county election superintendent
with respect to conducting elections in Gwinnett County, *see* O.C.G.A. § 21–2–70
to –77. Duties of a county election superintendent include, among others, the
following:  (i) "To select and equip polling places for use in primaries and
elections in accordance with [the Georgia Election Code]," O.C.G.A. § 21–2–
70(4); (ii) "To make and issue such rules, regulations, and instructions, consistent
with law, including the rules and regulations promulgated by the State Election
Board, as he or she may deem necessary for the guidance of poll officers,

custodians, and electors in primaries and elections," O.C.G.A. § 21–2–70(7); and (iii) "To conduct all elections in such manner as to guarantee the secrecy of the ballot and to perform such other duties as may be prescribed by law," O.C.G.A. § 21–2–70(13).

32.

Secretary Kemp and the State Election Board have the authority to direct officials in each county responsible for elections (that is, the county elections board or the superintendent of elections) (collectively "the County Election Officials").

**Georgia Procedures for Voting by Mail**

33.

Georgia law requires that voters apply for mail ballots using an application form that is available on line or in county election offices.

34.

O.C.G.A. § 21-2-381(a)(1)(C) provides: "The application shall be in writing and shall contain sufficient information for proper identification of the elector; the permanent or temporary address of the elector to which the absentee ballot shall be mailed; the identity of the primary, election, or runoff in which the elector wishes

to vote; and the name and relationship of the person requesting the ballot if other than the elector."

35.

For the election official to issue an absentee ballot, under the provisions of O.C.G.A. § 21-2-381(b)(1), the official must confirm eligibility: "In order to be found eligible to vote an absentee ballot by mail, the registrar or absentee ballot clerk shall compare the identifying information on the application with the information on file in the registrar's office and, if the application is signed by the elector, compare the signature or mark of the elector on the application with the signature or mark of the elector on the elector's voter registration card."

36.

Under the provisions of O.C.G.A. § 21-2-381(b)(3), electors are to be notified if their application for mail ballots are rejected: "If found ineligible, the clerk or the board of registrars shall deny the application by writing the reason for rejection in the proper space on the application and shall promptly notify the applicant in writing of the ground of ineligibility, a copy of which notification should be retained on file in the office of the board of registrars or absentee ballot

clerk for at least one year." This provision will be referred to as the "Application Rejection Notification."

37.

Georgia law does not specify a time within which such Application Rejection Notification must be given, other than stating that it must be done "promptly." This admonition provides no assurance that applicants will have enough time to resolve discrepancies.

38.

In the event that mail ballot voters obtain timely notice of the discrepancy, the time for cure of application discrepancy and issuance and casting of a mail ballot can be unfairly short, as Georgia law prohibits the issuance of mail ballots on the day prior to Election Day. O.C.G.A. § 21-2-384(a)(2) states: "[n]o absentee ballot shall be mailed by the registrars or absentee ballot clerk on the day prior to a primary or election and provided, further, that no absentee ballot shall be issued on the day prior to a primary or election." In addition, a mail ballot voter is required to mark the mail ballot with his or her choices *before* Election Day, even if the voter hand delivers the ballot to the election office on Election Day. O.C.G.A. § 21-2-385(a) provides: "At any time after receiving an official absentee ballot, but *before*

*the day of the primary or election*, except electors who are confined to a hospital on the day of the primary or election, the elector shall vote his or her absentee ballot, then fold the ballot and enclose and securely seal the same in the envelope on which is printed 'Official Absentee Ballot.'"

39.

Georgia law requires that a mail ballot must be received by 7 p.m. on Election Day to be counted.  O.C.G.A. § 21-2-386(a)(1)(F) states: "All absentee ballots returned to the board or absentee ballot clerk after the closing of the polls on the day of the primary or election shall be safely kept unopened by the board or absentee ballot clerk and then transferred to the appropriate clerk for storage for the period of time required for the preservation of ballots used at the primary or election and shall then, without being opened, be destroyed in like manner as the used ballots of the primary or election.  The board of registrars or absentee ballot clerk shall promptly notify the elector by first-class mail that the elector's ballot was returned too late to be counted and that the elector will not receive credit for voting in the primary or election."

40.

The mail ballot voter must complete a signed oath that includes certain

eligibility verification information. The form of the oath is specified by O.C.G.A. §

21-2-384(c)(1):

> The oaths referred to in subsection (b) of this Code
> section shall be in substantially the following form:
>
> I, the undersigned, do swear (or affirm) that I am a
> citizen of the United States and of the State of Georgia;
> that my residence address, for voting purposes,
> is _____ County, Georgia; that I possess the
> qualifications of an elector required by the laws of the
> State of Georgia; that I am entitled to vote in the precinct
> containing my residence in the primary or election in
> which this ballot is to be cast; that I am eligible to vote
> by absentee ballot; that I have not marked or mailed any
> other absentee ballot, nor will I mark or mail another
> absentee ballot for voting in such primary or election; nor
> shall I vote therein in person; and that I have read and
> understand the instructions accompanying this ballot; and
> that I have carefully complied with such instructions in
> completing this ballot. I understand that the offer or
> acceptance of money or any other object of value to vote
> for any particular candidate, list of candidates, issue, or
> list of issues included in this election constitutes an act of
> voter fraud and is a felony under Georgia law.
>
> _____
> Elector's Residence Address
>
> _____
> Year of Elector's Birth
>
> _____
> Signature or Mark of Elector

41.

Under Georgia law a mail ballot must include a signed oath of the voter
containing certain identifying information and the voter's signature in order to be
counted. O.C.G.A. § 21-2-386(a)(1)(C) states: "If the elector has failed to sign the
oath, or if the signature does not appear to be valid, or if the elector has failed to
furnish required information or information so furnished does not conform with
that on file in the registrar's or clerk's office, or if the elector is otherwise found
disqualified to vote, the registrar or clerk shall write across the face of the envelope
'Rejected,' giving the reason therefor. The board of registrars or absentee ballot
clerk shall promptly notify the elector of such rejection, a copy of which
notification shall be retained in the files of the board of registrars or absentee ballot
clerk for at least two years."

42.

Although the elector is to be promptly notified of the rejection, the statute
does not specify what timely notice is nor does it provide a process to provide for a
cure of the discrepant or missing information.  Therefore mail ballot envelopes
containing alleged discrepancies received on Election Day or the few days prior

have little chance of being cured and counted by 7 p.m. on Election Day, making the votes cast by these voters less likely to be effective than votes cast by other voters.

## **Polling Place In-Person Voting**

### 43.

By contrast, in-person Election Day voters apply to cast a ballot in the polling place by completing a Voter's Certificate with the same information required by the absentee ballot oath.

### 44.

O.C.G.A. § 21-2-402(a) states:

> At each primary and election, the Secretary of State shall prepare and furnish to each superintendent a suitable number of voter's certificates which shall be in substantially the following form:
>
> VOTER'S CERTIFICATE
>
> I hereby certify that I am qualified to vote at the (primary or election) held on ____, that I have not and will not vote elsewhere in this (primary or election) in my own name or in any other name, and that I am a citizen of the United States and am not currently serving a sentence for a felony conviction. I understand that making a false statement on this certificate is a felony under Code Section 21-2-562.

Signature_____

Current residence address of elector:
_____
 Elector's date of birth:_____
 Name or initials of poll officer receiving voter's
certificate:_____ "

45.

Voters are given the opportunity at the polling place to immediately correct

any error on their voter certificate so that the official may issue the ballot.

46.

Early voters ("advance", or "absentee in-person" voters) also may complete

an application for voting at the polling place.  Election Rule 183-1-14-.02(10)

states: "Voters who vote absentee ballots in person on the DRE units shall first

complete an absentee ballot application and sign an oath document. After the

registrars determine that the voter is eligible to vote by absentee ballot, the

registrars shall note the voter's registration number and ballot style on the absentee

ballot application. The voter shall then be issued a voter access card."

47.

Similarly, any discrepancies or errors on the application submitted by an

advance or absentee in-person voter can be immediately corrected by the voter in

the polling place.

48.

Voters in the polling place who did not bring the proper identification to the polling place may vote by provisional ballot, are given a "Provisional Voter Notice" and are permitted 3 days after the election to provide required identification to the officials so that his/her ballot may be counted. O.C.G.A. § 21-2-419(c) provides: "(2)  If the registrars determine after the polls close, but not later than three days following the primary or election, that the person voting the provisional ballot timely registered and was eligible and entitled to vote in the primary or election but voted in the wrong precinct, then the board of registrars shall notify the election superintendent."

49.

Mail ballot voters are not granted specific opportunity under the Election Code to cure missing or discrepant information on their determination of eligibility—the oath on the ballot envelope. As a result, disparate practices and results are prevalent in Georgia counties as between similarly situated voters using different lawsuit voting methods.

## County Absentee Ballot Rejection Rates

50.

The percentage of mail ballots rejected varies county by county.  For example, as stated above, Gwinnett County through October 12, 2018, had rejected 391 of 4,063 mail ballots, or 9.6%.  DeKalb County, by contrast, had rejected 87 of 4,633 mail ballots, or 1.9%.  Fulton County had rejected no mail ballots as of October 12.  Statewide, November 2018 mail ballot voters in Gwinnett County are significantly more likely than Georgia mail ballot voters outside of Gwinnett County to have their absentee ballots rejected.

51.

The percentage of ballots rejected by Gwinnett County varies by race or ethnic group.  For example, although the number of Black and White mail ballot voters through October 12, 2018 is roughly the same, 171 Black voters' ballots were rejected, while 66 White voters' ballots were rejected.  Similarly, while Asian and Pacific Islander voters make up approximately 15% of the mail ballot voters through October 12, they make up 25% of the mail ballot rejections.

52.

Gwinnett County frequently rejects mail ballots for mistakes relating to the date of the application and the date of the voters' birth.  If the voter is registered, and his or her eligibility can be confirmed through his or her signature, the year of the voter's birth is completely irrelevant; indeed, before the passage of HB 268 in 2017, the elector's oath did not include the year of birth.[2]  Many other counties still use older envelopes that do not include a place for a voter to provide the year of the voter's birth.  Gwinnett County, however, through October 12, 2018, has rejected at least 128  ballots because the year of birth is missing or is mistakenly filled in as the current year.

53.

Of the 128 ballots rejected by Gwinnett County because of mistakes relating to dates, at least 30 were mail ballots from elderly or disabled voters. Indeed, elderly and disabled voters require mail ballots at a higher rate than other

---

[2] The constitutionality of HB 268, facially and as applied, is being challenged in *Georgia Coalition for the People's Agenda, et al. v. Kemp,* No. 2018-CV-4727 (N.D. Ga., filed October 11, 2018).

voters, but because of Defendants' policies, elderly and disabled voters are being improperly disenfranchised.

54.

Cherokee County is also rejecting submitted mail ballots at an alarming rate of 3% in the November 6, 2018 election: 40 ballots have been rejected out of the 1,327 ballots received as of October 13, 2018.  In the presidential election of November 2016, Cherokee rejected 1.3% of ballots timely received.

55.

Cherokee County recently rejected the ballot of a disabled voter for signing his name on the wrong line. The penalty for such innocent errors should never be voter disenfranchisement. This Court must intervene to protect the voting rights of these individuals.

**Agency**

56.

At all times material to this Complaint, the various election workers and staff of Gwinnett County having day-to-day responsibility for conducting the upcoming elections are and will be agents of the Gwinnett Board Members, acting within the scope of their actual and apparent agency by exercising the powers and

duties of the Gwinnett Board Members to conduct elections in Gwinnett County, subject to oversight and enforcement powers of the Secretary and the State Board Members.

## COUNT I: FUNDAMENTAL RIGHT TO VOTE
## 42 U.S.C. § 1983

**Threatened Infringement of the Fundamental Right to Vote in Violation of the Fourteenth Amendment's Guarantee of (Substantive) Due Process (Against All Defendants)**

57.

Plaintiffs incorporate and reallege each of the foregoing paragraphs.

58.

The right of all eligible citizens to vote in public elections is a fundamental right of individuals that is protected by the United States Constitution and incorporated against the States by the Due Process Clause of the Fourteenth Amendment.

59.

Inherent in individuals' fundamental right to vote is the right to have one's vote counted and reported correctly and to be as effective as the votes cast by other voters in the same election.

Page 28

60.

By not giving electors who vote by mail a reasonable opportunity to cure rejected applications for mail ballots, among other things, the Defendants will knowingly and severely burden and infringe upon the fundamental right to vote of the Plaintiffs and other, similarly-situated voters.

61.

These imminently threatened severe burdens and infringements on the fundamental right to vote that will be caused by Defendants' conduct are not outweighed or justified by, and are not necessary to promote, any substantial or compelling state interest that cannot be accomplished by other, less restrictive means.

62.

The foregoing imminently threatened injuries, burdens, and infringements that will be caused by Defendants' conduct will violate the fundamental right to vote of the Plaintiffs.

63.

Requiring Plaintiffs and other, similarly-situated voters to suffer severe burdens and infringements upon their constitutional right to vote as a condition of

being able to enjoy the benefits and conveniences of being permitted to cast their

ballots by mail violates the unconstitutional-conditions doctrine.

64.

The foregoing violations will occur as a consequence of Defendants acting

under color of state law. Accordingly, Plaintiffs are entitled to prospective

declaratory and injunctive relief against Defendants pursuant to 42 U.S.C. § 1983.

65.

Unless Defendants are enjoined by this Court, the Plaintiffs will have no

adequate legal, administrative, or other remedy by which to prevent or minimize

the irreparable, imminent injury that is threatened by Defendants' intended

conduct.  Accordingly, injunctive relief against these Defendants is warranted.

### COUNT II:  EQUAL PROTECTION
### 42 U.S.C. § 1983

### Threatened Infringement of the Fourteenth Amendment's
### Guarantee of Equal Protection
### (Against All Defendants)

66.

Plaintiffs incorporate and reallege each of the foregoing Paragraphs.

67.

Defendants knowingly treat electors who vote by mail, including Plaintiffs, differently than other, similarly situated electors voting in the same election and jurisdiction who vote in person.

68.

In addition, as shown by the substantial difference in rejection rates between the counties, electors who vote by mail in some counties are far more likely to be disenfranchised than electors who vote by mail in other counties.  Further, Defendant Kemp and the Defendant State Board Members have done nothing to ensure that uniform rules are provided to assure that Georgia mail voters are treated equally regardless of the county in which they reside.

69.

Because of this differential treatment, Plaintiffs who attempt to vote by mail will suffer greater and more severe burdens and infringements on their underlying substantive rights—namely, the fundamental right to vote—than will other, similarly situated voters in the same jurisdiction in the same elections.

70.

Defendants' unequal treatment of voters, including Plaintiffs, is not justified by, and is not necessary to promote, any substantial or compelling state interest that cannot be accomplished by other, less restrictive means.

71.

The foregoing imminently threatened injuries, burdens, and infringements that will be caused by Defendants' conduct will violate the Equal Protection Clause of the Fourteenth Amendment.

72.

Requiring Plaintiffs and other, similarly-situated voters to be deprived of their constitutional right to equal protection of the laws as a condition of being able to enjoy the benefits and conveniences of voting by mail ballot violates the unconstitutional-conditions doctrine.

73.

The foregoing violations will occur as a consequence of Defendants acting under color of state law. Accordingly, Plaintiffs are entitled to prospective declaratory and injunctive relief against Defendants pursuant to 42 U.S.C. § 1983.

74.

Unless Defendants are enjoined by this Court, the Plaintiffs will have no adequate legal, administrative, or other remedy by which to prevent or minimize the irreparable, imminent injury that is threatened by Defendants' intended conduct.  Accordingly, injunctive relief against these Defendants is warranted.

## COUNT III:  VIOLATION OF CIVIL RIGHTS ACT
## 52 U.S.C. § 10101

75.

Plaintiffs incorporate and reallege each of the foregoing Paragraphs.

76.

The Gwinnett Board denied Plaintiffs Chandra, Moore and Armstead the right to vote because of alleged errors or omissions that were not material in determining whether they were qualified to vote in the November 6, 2018 general election.

77.

The Gwinnett Board has the practice of denying hundreds of Gwinnett County residents the right to vote because of alleged errors or omissions that are not material in determining whether they were qualified to vote in the November 6, 2018 general election.

78.

The Gwinnett Board has violated and is continuing to violate the Civil

Rights Act, 52 U.S.C. § 10101.

79.

As a result of the Gwinnett Board's past and continuing violation of the

Civil Rights Act, Plaintiffs are entitled to appropriate declaratory and injunctive

relief, and attorney's fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request the following relief:

## A.   INJUNCTIVE RELIEF

Plaintiffs pray that the Court enter a preliminary and permanent injunction

ordering Secretary Kemp and the State Election Board Members to direct all

County Election Superintendents:

1.  To make a determination of eligibility for each mail ballot application

within three business days of receipt of the electors' application.  If the County

Election Officials find an application defective, the County Election Officials shall,

within one business day of making such determination, (a) send the applicant by

first class mail a new application and notification informing the applicant in writing of the grounds of rejection and instructions for the cure of defects; and (b) if the applicant has provided a telephone number, call the applicant, *and* if the applicant has provided an email address, email the applicant,  and inform the applicant of the grounds of ineligibility and instruction for the cure of such ineligibility. The notification shall include instructions for tracking the status and progress of the application and ballot issuance on the Secretary of State's website;

2.  To make a determination of eligibility for each mail ballot received within three business days of receipt of the electors' ballot.  If the County Election Officials reject a mail ballot, the County Election Officials shall within one business day of rejecting said mail ballot (a) send the elector by first class mail a notification informing the elector in writing of the grounds of such rejection, instructions for the cure of such rejection, and notification that the elector may cure such rejection at any point up to the close of business on the Friday after Election Day; and (b) if the elector has provided a telephone number, call the elector, *and* if the elector has provided an email address, email the elector, and inform the elector of the grounds of rejection and instruction for the cure of such rejection, and notification that the elector may cure such rejection up to the close of business on

the Friday after Election Day.  The notification shall include instructions for tracking the status and progress of the ballot acceptance on the Secretary of State's website;

3. To not reject a ballot for the reason of a signature discrepancy unless and until it has been reviewed by the Signature Review Committee (as described below) and the Signature Review Committee has determined that the signature does not appear to be valid.  The Signature Review Committee shall be appointed by the bi-partisan county election board, or other superintendent when there is no county election board, and composed of an equal number of members from the two parties represented on the county election board, with an adequate number of members to serve alternately throughout the mail ballot receipt period.   Two members of the Signature Review Committee, one from each party appointing members, shall promptly review all oath signatures that are set aside by election officials as discrepant signatures. No ballot shall be rejected without the agreement of both members of the Signature Review Committee.  Signatures determined to be discrepant by only a single party's appointed member shall be approved and the ballot accepted for counting;

4. To allow an elector receiving an official absentee ballot to vote his or her absentee ballot until 7 p.m. on the day of the primary or the election by personally delivering same to the board of registrars or to the absentee ballot clerk or, if the delivery is made on Election Day, to the elector's voting precinct, and shall allow delivery by a physically disabled elector to be made within said deadlines provided such delivery is otherwise made in accordance with O.C.G.A. § 21-2-385(a);

5. To not reject any mail ballot solely because of an incorrect or missing year of birth and to accept any mail ballot that was previously rejected for the sole reason of an incorrect or missing year of birth;

6.  To review all mail ballot applications and mail ballots rejected to date for the November 6, 2018 election and immediately apply the relief requested in Paragraph 1 through 5, above, for each rejection; and

7. To ensure that pollwatchers who are authorized to observe elections also have the opportunity to observe the process of absentee application and absentee ballot processing, signature, scanning of voted ballots and chain of custody controls.

## B.    ADDITIONAL RELIEF

Plaintiffs further pray:

1. That the Court retain jurisdiction to ensure all Defendants' ongoing compliance with the Orders entered by the Court in this case;

2. That the Court grant Plaintiffs an award of their reasonable attorney's fees, costs, and expenses incurred in this action pursuant to 42 U.S.C. § 1988; and

3. That the Court grant Plaintiffs such other relief as the Court deems just and proper.

Respectfully submitted this 12nd day of November, 2018.

> /s/ Bruce P. Brown
> Bruce P. Brown
> Georgia Bar No. 064460
> bbrown@brucepbrownlaw.com
> Bruce P. Brown Law LLC
> 1123 Zonolite Rd. NE
> Suite 6
> Atlanta, Georgia 30306
> (404) 881-0700
> *Attorney for Plaintiffs*
>
> John Powers*
> jpowers@lawyerscommittee.org
> Lawyers' Committee for Civil Rights Under Law
> 1500 K Street NW, Suite 900
> Washington, D.C. 20005
> Telephone:   (202) 662-8600
> Facsimile:   (202) 783-0857
> *Attorney for Plaintiffs Dana Bowers, Jeanne*
> *Dufort, Rhonda J. Martin, Dinesh Chandra, James*

*Arthur Moore, Corliss Armstead, and The Georgia Coalition for the People's Agenda, Inc.*

*Admitted Pro Hac vice

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Second Amended Complaint has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

*/s/ Bruce P. Brown*
Bruce P. Brown
Georgia Bar No. 064460
BRUCE P. BROWN LAW LLC
Attorney for Plaintiffs
1123 Zonolite Rd. NE
Suite 6
Atlanta, Georgia 30306
(404) 881-0700

## CERTIFICATE OF SERVICE

This is to certify that I have this day caused the foregoing Second Amended Complaint to be served upon all other parties in this action by via electronic delivery using the PACER-ECF system.

This 12nd  day of November, 2018.

> /s/ Bruce P. Brown
> Bruce P. Brown
> Georgia Bar No. 064460
> Bruce P. Brown Law LLC
> Attorney for Plaintiffs
> 1123 Zonolite Rd. NE
> Suite 6
> Atlanta, Georgia 30306
> (404) 881-0700

EXHIBIT

B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| RHONDA J. MARTIN, DANA BOWERS, JASMINE CLARK, SMYTHE DUVAL, JEANNE DUFORT and THE GEORGIA COALITION FOR THE PEOPLE'S AGENDA, INC.,<br><br>                  **Plaintiffs,**<br><br>v.<br><br>ROBYN A. CRITTENDEN, in her official capacity as Acting Secretary of State of Georgia, REBECCA N. SULLIVAN, RALPH F. "RUSTY" SIMPSON, DAVID J. WORLEY and SETH HARP; STEPHEN DAY, JOHN MANGANO, ALICE O'LENICK, BEN SATTERFIELD and BEAUTY BALDWIN,<br><br>                  **Defendants.** | Civil Action File No. 18-cv-04776 LMM |

**PROPOSED ORDER GRANTING PLAINTIFFS'**
**MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

On November 12, 2018, Plaintiffs filed their Plaintiffs' Motion For Leave

To File Second Amended Complaint (the "Motion").

Having considered the Motion and finding justice so requires, the Motion is

**GRANTED**.  The Court **DIRECTS** the Clerk of the Court to docket the Second

Amended Complaint which is attached to the Motion.

1

The Court further **DIRECTS** the Clerk to add Dinesh Chandra, James

Arthur Moore and Corliss Armstead as a Plaintiffs in this case.

**IT IS SO ORDERED** this _____day of _____, 2018.


_____
U.S. District Court Judge Leigh Martin May

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **RHONDA J. MARTIN, et al.,** | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No.** |
| | **1:18-cv-04776-LMM** |
| **ROBYN A. CRITTENDEN, et al.,** | |
| **Defendants.** | |

**CERTIFICATE OF SERVICE AND
COMPLIANCE WITH LOCAL RULE 5.1(C)**

I hereby certify that on this 12th day of November, 2018, the foregoing

PROPOSED ORDER GRANTING PLAINTIFFS' MOTION TO AMEND

COMPLAINT was filed electronically with the Clerk of Court using the CM/Doc

system, which will automatically send e-mail notification of such filing to all

attorneys of record.   I further certify that the foregoing has been prepared in a

Times New Roman 14 point font, which is one of the font and point selections

approved by the Court in Local Rule 5.1(C).

This 12th day of November, 2018.

*/s/ Bruce P. Brown*
Bruce P. Brown