IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RHONDA J. MARTIN, DANA BOWERS, JASMINE CLARK, SMYTHE DUVAL, JEANNE DUFORT and THE GEORGIA COALITION FOR THE PEOPLE'S AGENDA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ROBYN A. CRITTENDEN, in her official capacity as Acting Secretary of State of Georgia, REBECCA N. SULLIVAN, RALPH F. "RUSTY" SIMPSON, DAVID J. WORLEY and SETH HARP;  STEPHEN DAY, JOHN MANGANO, ALICE O'LENICK, BEN SATTERFIELD and BEAUTY  BALDWIN, <br><br> Defendants. | Civil Action File No. 18-cv-04776 LMM |

**REPLY BRIEF IN SUPPORT OF PLAINTIFFS' EMERGENCY
MOTION FOR TEMPORARY RESTRAINING ORDER**

**INTRODUCTION**

Late this afternoon, the Secretary of State gave county electors the same direction that Plaintiffs are asking this Court to give, and that is to count absentee ballots even if they contain immaterial errors or omissions.  Plaintiffs have attached a news report of the Secretary's statements as Exhibit 1.  Should the Defendants commit to following the direction of Secretary Crittenden and count every absentee ballot as to which the eligibility and identity of the voter has been confirmed, then consideration of Plaintiffs' Emergency Motion at this time will be unnecessary.  If, on the other hand, Defendants refuse to so commit, and insist on continuing to deny eligible voters like Plaintiffs Chandra, Moore and Armstead the right to vote in violation of federal constitutional and statutory law, then the Motion should be granted for the reasons set forth in the initial papers and as further explained below.

Late this afternoon, Secretary Crittenden also issued an Official Election Bulletin, attached hereto as Exhibit 2,  confirming that election officials are *not* required to reject absentee ballots because of immaterial errors and omissions.  Secretary Crittenden cites the same case that Plaintiffs are relying upon, *Jones v. Jessup,* 279 Ga. 531 (2005), and reiterates that county election officials do *not* violate Georgia law when they accept an absentee ballot "'despite

the omission of a day and month of birth [or year of birth under current form] and/or an address, *if* the election official can verify the identity of the voter.'" (brackets and emphasis in Secretary Crittenden's Bulletin).   There is simply no reason for Gwinnett County to resist the relief that Plaintiffs are seeking in their Emergency Motion for Temporary Restraining Order.

Plaintiffs further note that, just prior to the filing of this Reply Brief, Defendant David J. Worley circulated a remarkable email that gives further strong support to Plaintiffs' Motion.  That email is attached as Exhibit 3.

## REPLY TO DEFENDANTS' RESPONSE

Plaintiffs file this Reply Brief in Support of their Emergency Motion for Temporary Restraining Order, to respond to a handful of discrete points raised in the Gwinnett County Board of Registrations and Elections Defendants' (Gwinnett Defendants) Responses in Opposition to Plaintiffs' Amended Motion for Temporary Restraining Order, Doc. 51.

## PLAINTIFFS EXERCISED REASONABLE DILIGENCE

Plaintiffs did not "fail[] to exercise reasonable diligence" in bringing these issues to the Court's attention.  The facts related to individual Plaintiffs Armstead, Chandra, and Moore came to light on November 8, when Chandra went to the Gwinnett County Board of Elections, Chandra Decl., Doc. 43 ¶¶ 22-27, and on

November 9 when Plaintiff Armstead learned that her absentee ballot did not count.  Armstead Decl., Doc.  43 ¶¶ 20-23.  Plaintiff Moore was first contacted on November 10, 2018, (not by the officials, but by volunteers).  Marks Decl., ¶ 16.  Similarly, facts related to the Gwinnett Defendants' ability to easily process rejected absentee ballots came to light on November 10, 2018.  Marks Decl., Doc. 43 ¶¶ 10-13.  Plaintiffs brought these issues to the Court's attention as soon as possible.[1]

## DEFENDANTS EXAGGERATE THE ADMINISTRATIVE BURDEN

Gwinnett Defendants' statement that counting any additional absentee ballots is a "huge burden," Doc. 51 at 7, and Gwinnett County Election Director Lynn Ledford's sworn testimony, Doc. 51-1, ¶¶ 5-7, conflicts with Marilyn Marks's testimony regarding the high level of organization of the Gwinnett BORE and Ms. Ledford's and Ms. Royston's ability to access "every document or batch of ballots or applications immediately" when asked to do so.  Marks Decl., ¶¶7-8.  Ledford also told Marks that she and her staff could quickly count the rejected ballots if ordered to do so.  Marks Supplemental Decl. ¶ 3, attached hereto as

---

[1] Defendants' suggestion that Plaintiffs' have not raised issues under the Civil Rights Act is incorrect.  Plaintiffs explicitly relied on the Civil Rights Act throughout their Brief, and have added a claim under the Civil Rights Act in their proposed Second Amended Complaint, Doc. 53.

Exhibit 4.  Absentee ballots could be counted in a few hours: ballots need only be

taken out of absentee ballot envelopes and put directly into the scanners.  To the

extent Ms. Ledford asserts that duplication is necessary, that is because of the

BORE improperly printed and scanned absentee ballots so as to make them

defective and unable to read by scanners.  [Marks Supplemental Decl. ¶¶ 5-8]

Plaintiffs' right to cast a ballot that will count should not be tossed aside due to

extra steps required by the BORE election officials' errors and mistakes.

## ABSENTEE BALLOTS CAST BY IDENTIFIABLE VOTERS WHO WERE IMPROPERLY DISENFRANCHISED, SUCH AS THOSE CAST BY THE INDIVIDUAL PLAINTIFFS, CAN AND MUST BE COUNTED

Gwinnett Defendants offer no reason why absentee ballots cast by individual

Plaintiffs Armstead, Chandra, and Moore, which Defendants admit were rejected,

should not be counted other than the fact that "Gwinnett has not been able to

further review these voters' claims."  Doc. 51 at 13.  These voters' sworn

testimony confirming their identity and the extreme burdens they experienced

attempting to vote in this election are plainly a sufficient basis for counting their

ballot.  *See*, *e.g.*, Chandra Decl. ¶ 18 (BORE employee telling voter there was

nothing more he needed to do for his vote to count).  Moreover, Plaintiffs are in

possession of affidavits from approximately 30 similarly situated rejected absentee

voters, with more arriving every hour from voters who want their votes counted.

The affidavits will be to delivered to the Gwinnett Board of Elections prior to certification[ Marks Supplemental Declaration ¶10]   Gwinnett Defendants' unnecessary rush to certify election results when numerous eligible absentee voters are at risk of being improperly disenfranchised defies logic and common sense, as well as the law.

The state level certification is not required for more than a week from now. The Gwinnett County certification should not be rushed to slam shut the ballot box when legally cast votes have not yet been counted.

## PLAINTIFFS ARE SEEKING RELIEF IN THE PROPER VENUE

Implausibly, Gwinnett Defendants suggest that the Plaintiffs should have brought an election contest in state court.  *See*, *e.g.*, Doc. 51 at 13, 15.  This makes no sense because (1) none of the Plaintiffs include a candidate seeking to overturn the results of any election and (2) this Court has already indicated that it could consider requests for relief from an individual plaintiff who is likely to be personally disenfranchised due to the Gwinnett Defendants' unconstitutional absentee ballot processing practices.  *See* Order, Doc. 41 at 10 n. 5 (regarding declarants who did not receive notice or insufficient notice).  Defendants do not explain why instituting a new action in a different venue promotes judicial economy.

For all of the foregoing reasons, Plaintiffs respectfully request that the Court enter an order granting their motion for a temporary restraining order and such further relief as it deems just and proper.

Respectfully submitted this 12th day of November, 2018

/s/ Bruce P. Brown
Bruce P. Brown
Georgia Bar No. 064460
bbrown@brucepbrownlaw.com
Bruce P. Brown Law LLC
1123 Zonolite Rd. NE
Suite 6
Atlanta, Georgia 30306
(404) 881-0700

Attorney for Plaintiffs

/s/ John Powers
John Powers*
jpowers@lawyerscommittee.org
Lawyers' Committee for Civil Rights Under Law
1500 K Street NW, Suite 900
Washington, D.C. 20005
Telephone:   (202) 662-8600
Facsimile:    (202) 783-0857

Counsel for Plaintiffs Dinesh Chandra, Corliss Armstead, Dana Bowers, Jeanne Dufort, Rhonda J. Martin and The Georgia Coalition for the People's Agenda, Inc.

* Admitted pro hac vice

7

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RHONDA J. MARTIN, et al.,

        Plaintiffs,

v.

RHONDA A. CRITTENDEN, et al.,

        Defendants.

Civil Action No.

1:18-cv-04776-LMM

**CERTIFICATE OF SERVICE AND
<u>COMPLIANCE WITH LOCAL RULE 5.1(C)</u>**

I hereby certify that on this 12th day of November, 2018, the foregoing

**REPLY BRIEF IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION**

**FOR TEMPORARY RESTRAINING ORDER** was filed electronically with the

Clerk of Court using the CM/Doc system, which will automatically send e-mail

notification of such filing to all attorneys of record.   I further certify that the

foregoing has been prepared in a Times New Roman 14 point font, which is one of

the font and point selections approved by the Court in Local Rule 5.1(C).

This 12th day of November, 2018.

> /s/ Bruce P. Brown
> Bruce P. Brown
> Georgia Bar No. 064460
> bbrown@brucepbrownlaw.com
> Bruce P. Brown Law LLC
> 1123 Zonolite Rd. NE
> Suite 6
> Atlanta, Georgia 30306
> (404) 881-0700

EXHIBIT

1



LOG IN

BREAKING
NEWS

Georgia secretary of state tells election officials to count more absentee
ballots

# Georgia secretary of state tells election officials to count absentee ballots

By Mark Niesse and Tyler Estep



JOHN SPINK / AJC/JOHN SPINK / AJC

November 6, 2018 Atlanta : Voters waited over an hour to vote at Henry W. Grady High School at 29 Charles Allen Dr NE, in Atlanta on Tuesday Nov. 6, 2018. Metro Atlanta polling places reported steady lines as voters went to the polls Tuesday. Georgia voters were asked Nov. 6 whether the state constitution should be amended to give a 10-year, $200 million boost to land conservation, solidify the states commitment to crime victims and cut timberland taxes. Five proposed amendments appeared on the ballot, which most notably settles the long and hard-fought races for governor and other key offices. JOHN SPINK/JSPINK@AJC.COM

Updated: 5:39 p.m. Monday, November 12, 2018 | Posted: 5:25 p.m. Monday, November 12, 2018

Georgia Secretary of State Robyn Crittenden told county election officials Monday to count absentee ballots even if they lack a voter's date of birth, as long as the voter's identity can be verified.

Crittenden issued the instructions for county election officials as they face a Tuesday deadline to certify the results of the Nov. 6 election.

Republican Brian Kemp holds the lead over Democrat Stacey Abrams in the race to become Georgia's governor. Abrams would need to gain more than 20,000 votes to force the race into a runoff.

Crittenden's instructions could affect vote counting in Gwinnett County, where election officials rejected 1,587 mailed absentee ballots. Gwinnett has the largest number of potential uncounted absentee ballots for Abrams in the state.

Many of Gwinnett's rejections were because absentee ballots contained incorrect birthdate information or insufficient information on the return envelope.

Crittenden sent the letter after the State Election Board voted unanimously Sunday night to issue guidance for how local election officials should proceed with their counts.

Her letter is meant to reinforce state laws and provide clarification to county election officials, according to the Secretary of State's office. Rules about vote counting haven't changed.

"What is required is the signature of the voter and any additional information needed for the county election official to verify the identity of the voter," Crittenden wrote. "Therefore, an election official does not violate [state law] when they accept an absentee ballot despite the omission of a day and month of birth … if the election official can verify the identity of the voter."

Gwinnett County accounted for 31 percent of all Georgia's rejected absentee ballots, often because of discrepancies with birth dates, addresses, signatures and insufficient information.

Gwinnett Commission Chairwoman Charlotte Nash said she wasn't surprised at the scrutiny Gwinnett has received because of "the role that both parties saw it playing in their success." She defended the way the elections office has conducted its business.

"They always focus a lot on figuring out how to deal with the issues that arise," Nash said last week, "and I have every expectation that they will do that this time around too."

Gwinnett Elections Board Chairman Stephen Day, a Democrat, has also defended county staff.

"There are definitely different political points of view [on the elections board], but we do agree that our staff has acted in the way that the law stated they should act," Day said following Friday's closed-door elections board meeting. "We do understand that there are different interpretations of that."

Please return to AJC.com and PoliticallyGeorgia.com for updates.

## Follow This: Georgia Legislature

Get Georgia Legislature alerts delivered to your inbox.

ENTER YOUR EMAIL ADDRESS    SIGN UP

By providing my email address, I agree to receive messages related to this story and agree to the Privacy Policy

## About the Author

 **MARK NIESSE**  Mark Niesse covers elections, the Georgia General Assembly and state government.

 

Reader Comments

## Next Up in Homepage

## Popular in News

1   Georgia Election 2018: Outstanding ballots sought before deadline

2   Georgia Election 2018: Election officials told to count more ballots

3   Opinion: Trump attempts vote fraud

SIGN UP

SUBSCRIBE

OUR PRODUCTS

ABOUT US

CONTACT US

SEND US A TIP

© 2018 Cox Media Group. By using this website, you accept the terms of
our Visitor Agreement and Privacy Policy, and understand your options
regarding Ad Choices . Learn about careers at Cox Media Group.

EXHIBIT

2



# OFFICIAL ELECTION BULLETIN
November 12, 2018

_____

**TO:**        **County Election Officials and County Registrars**

**FROM:**   **Robyn Crittenden, Secretary of State**

**RE:**        **Post-Election Instructions Re: Absentee and Provisional Ballots**

_____

Secretary of State Robyn Crittenden issues the following information to all county election officials regarding state law governing absentee ballot verification and the provisional ballot determination period.

1. **Absentee Ballot Verification**.  Absentee ballot verification in Georgia is governed by O.C.G.A. § 21-2-386(a)(1)(C), as interpreted by *Jones v. Jesup*, 279 Ga. 531 (2005).   The statute states:

> If the elector has failed to sign the oath, or if the signature does not appear to be valid, or if the elector has failed to furnish required information or information so furnished does not conform with that on file in the registrar's or clerk's office, or if the elector is otherwise found disqualified to vote, the registrar or clerk shall write across the face of the envelope "Rejected," giving the reason therefor. The board of registrars or absentee ballot clerk shall promptly notify the elector of such rejection, a copy of which notification shall be retained in the files of the board of registrars or absentee ballot clerk for at least two years.

O.C.G.A. § 21-2-386(a)(1)(C). The Georgia Supreme Court found in *Jones v. Jesup*, 279 Ga. 531 (2005), that O.C.G.A. § 21-2-386 does not mandate the automatic rejection of any absentee ballot lacking the elector's place and/or date of birth." *Jones*, 279 Ga. at 533, n5. *See also* 1974 Op. Atty. Gen. 54, 110, 112(3). In that case, the Court found that when two voters "incorrectly wrote down the month and date they voted the absentee ballot rather than their month and date of birth," the registrar did not have to reject the ballots "because the ballots cast by these witnesses substantially complied with all of the essential requirements of the form." *Id.*  The Attorney General's office has provided advice to the Secretary of State and the State Election Board that, in conjunction with state and federal law, what is required is the signature of the voter and any additional information needed for the county election official to verify the identity of the voter.  "Therefore, an election official *does not* violate O.C.G.A. § 21-2-386(a)(1)(C) when they accept an absentee ballot despite the omission of a day and month of birth [or year of birth under current form] and/or an address, *if* the election official can verify the identity of the voter with the voter's signature and whatever other required information is provided that is sufficient to

the registrar to confirm the identity of the voter." Advice from Attorney General to State Election Board in Telfair County Case # 2012-31.

2. **Provisional Ballot Determination Period**. The provisional ballot determination period in Georgia is governed by O.C.G.A. § 21-2-419(c), which states:

> (1) If the registrars determine after the polls close, but not later than three days following the primary or election, that the person casting the provisional ballot timely registered to vote and was eligible and entitled to vote in such primary or election, the registrars shall notify the election superintendent and the provisional ballot shall be counted and included in the county's or municipality's certified election results.

> (2) If the registrars determine after the polls close, but not later than three days following the primary or election, that the person voting the provisional ballot timely registered and was eligible and entitled to vote in the primary or election but voted in the wrong precinct, then the board of registrars shall notify the election superintendent. The superintendent shall count such person's votes which were cast for candidates in those races for which the person was entitled to vote but shall not count the votes cast for candidates in those races in which such person was not entitled to vote. The superintendent shall order the proper election official at the tabulating center or precinct to prepare an accurate duplicate ballot containing only those votes cast by such person in those races in which such person was entitled to vote for processing at the tabulating center or precinct, which shall be verified in the presence of a witness. Such duplicate ballot shall be clearly labeled with the word "Duplicate," shall bear the designation of the polling place, and shall be given the same serial number as the original ballot. The original ballot shall be retained.

> (3) If the registrars determine that the person casting the provisional ballot did not timely register to vote or was not eligible or entitled to vote in such primary or election or shall be unable to determine within three days following such primary or election whether such person timely registered to vote and was eligible and entitled to vote in such primary or election, the registrars shall so notify the election superintendent and such ballot shall not be counted. The election superintendent shall mark or otherwise document that such ballot was not counted and shall deliver and store such ballots with all other ballots and election materials as provided in Code Section 21-2-500.

O.C.G.A. § 21-2-419. For the November 6, 2018 general election, the determination period ended on Friday, November 9, 2018.[1]

If you have any additional questions, you can contact our office or your local county attorney.

---

[1] The only exception is provisional absentee ballots rejected due to a non-matched signature, which can be verified until county certification pursuant to a court order from District Judge Leigh Martin May.

Page **2** of **2**

EXHIBIT

3

**From:** David Worley
**Sent:** Monday, November 12, 2018 7:18 PM
**To:** 'Head, Jansen' <jhead@sos.ga.gov>; Crittenden, Robyn <rcrittenden@sos.ga.gov>; Rebecca Sullivan <Rebecca.Sullivan@doas.ga.gov>; sethharp@aol.com; Simpson, Rusty <rfs@simpsonmediation.com>
**Cc:** Germany, Ryan <rgermany@sos.ga.gov>; Harvey, Chris <wharvey@sos.ga.gov>; Rayburn, Kevin <krayburn@sos.ga.gov>; Cris Correia <ccorreia@law.ga.gov>; Russ Willard <rwillard@law.ga.gov>; Broce, Candice <CBroce@sos.ga.gov>; Simmons, Jessica <jsimmons@sos.ga.gov>; Smith, Lorri <lorrismith@sos.ga.gov>; 'Niesse, Mark (CMG-Atlanta)' <Mark.Niesse@ajc.com>; 'Johnny Kauffman' <jkauffman@wabe.org>
**Subject:** RE: SOS Official Election Bulletin

Dear Secretary Crittenden and Board Members,

I just reviewed the Election Bulletin (attached) issued this afternoon by Secretary Crittenden which in part deals with the issue of the proper counting of absentee ballots.

Last night the SEB voted to ask the Secretary to submit such guidance to Georgia counties.

I am deeply and profoundly disturbed that the guidance, which cites advice from the Attorney General, completely omits the Attorney General's own reference to the Voting Rights Act provisions which he has relied on in the past to support his position, and which we of course discussed as the basis for our decision last night. While the guidance cites lengthy passages of the Attorney General opinion given in the Telfair case, it completely omits the following passage from the Telfair case:

**"This interpretation of OCGA  21-2-386(a)(1)(C) is also consistent with federal law which *prohibits*  'the denial of the right to vote because of an error or omission on any record or paper . . . if such error or omission is not *material* in determining if such individual is not qualified under State law to vote in such election.' 52 U.S.C. §10101 (emphasis added). Where the election official can verify the identity of the voter by comparing their signature on the absentee ballot envelope with the voter's signature on file, the omission of the additional information on residence address and/or day and month of birth would not be material to that voter's qualifications and the absent ballot should be counted.'"**

The effect omitting this reference to the Voting Rights Act is to create the impression that state law can permit the counties to reject ballots which only omit information unnecessary to identify a voter, **when in fact federal law, as cited by the Attorney General, prohibits rejection of a ballot when the omitted information is immaterial.**

I pointed this out to SOS General Counsel Ryan Germany in a call this evening, and his only response was silence.

I understand from Ryan Germany that Secretary Crittenden and Attorney General Carr themselves participated in the negotiations over this language, with his assistance. It is clear that the omission of the language on the requirements of the Voting Rights Act is nothing but a deliberate, cheap, underhanded trick to signal to some counties that they may still ignore the Attorney General and State Election Board and reject ballots that federal law clearly requires to be counted.

This was not the intent of the State Election Board last night, and I am disappointed that Secretary Crittenden and Attorney General Carr have allowed themselves to be used by Kemp administration holdovers in this manner.

I believe it is absolutely necessary to correct this guidance and reissue it, with the Telfair case reference to the passage from the Voting Rights Act, to the counties before certification continues tomorrow. It is especially important that this omission be corrected prior to the balloting in the December runoff. Anything less is a disservice to the voters and a disservice to the counties, who deserve a full explanation of their responsibilities in counting the votes of Georgia citizens. To do otherwise only opens the counties to further litigation.

Very truly,

David Worley


David J. Worley
Evangelista Worley LLC
8100 A Roswell Road
Suite 100
Atlanta, GA 30350
(404)205-8400 office
(404)403-2990 cell
(404)205-8395 fax
david@ewlawllc.com

This electronic mail transmission may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.




-----Original Message-----
From: Head, Jansen <jhead@sos.ga.gov>
Sent: Monday, November 12, 2018 5:21 PM
To: Crittenden, Robyn <rcrittenden@sos.ga.gov>; Rebecca Sullivan <Rebecca.Sullivan@doas.ga.gov>; David Worley <David@ewlawllc.com>;sethharp@aol.com; Simpson, Rusty <rfs@simpsonmediation.com>
Cc: Germany, Ryan <rgermany@sos.ga.gov>; Harvey, Chris <wharvey@sos.ga.gov>; Rayburn, Kevin <krayburn@sos.ga.gov>; Cris Correia <ccorreia@law.ga.gov>; Russ Willard <rwillard@law.ga.gov>; Broce, Candice <CBroce@sos.ga.gov>; Simmons, Jessica <jsimmons@sos.ga.gov>; Smith, Lorri <lorrismith@sos.ga.gov>
Subject: SOS Official Election Bulletin

Dear Board Members,

Attached is the Official Election Bulletin that Chris Harvey distributed to the county election officials today regarding the post-election processing of absentee ballots and provisional ballots. The same has also been posted to Firefly and on the Secretary of State website as a press release.

EXHIBIT

4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**RHONDA J. MARTIN, et al.,**

      **Plaintiffs,**

**v.**

**BRIAN KEMP, et al.,**

      **Defendant.**

**Civil Action No.
1:18-cv-04776-LMM**

## SUPPLEMENTAL DECLARATION OF MARILYN MARKS

Pursuant to 28 U.S.C.§ 1746, I, Marilyn Marks, declare as follows:

1. This declaration supplements my declaration of November 11, 2018.

2. I have personal knowledge of the matters stated below.

3. Director Lynn Ledford told me on multiple occasions since November 6, 2018 that the rejected mail ballots were well organized and could be counted promptly and easily if she were instructed to do so.

4. Based on my personal observations and years of mail ballot pollwatcher observation experience and recent discussions with Ms. Ledford and her staff, I believe that Ledford and her staff could easily, efficiently and promptly count the rejected mail ballots that are determined to be legally cast.

5. Gwinnett mail ballots have a serious defect of type that election officials routinely work to avoid. That defect is having a ballot layout where paper fold creases cause the optical scanners to read "false positives" and create over-votes which the scanners reject. The election officials then are required to manually duplicate vote-by-vote the folded mail ballots with the crease/shadow problem onto flat paper ballots---a tedious and error-prone process.

6. Ms. Ledford and I discussed this tedious process and how difficult it is for staff to accurately duplicate ballots. This is why this long-known defect is carefully avoided by most election officials in issuing mail ballots. Gwinnett simply failed to catch this obvious and well-known defect prior to issuing mail ballots and did not start the manual duplication process until Election Day.

7. The Gwinnett officials' error in laying out the ballot and folding it in an improper way is being used as a reason to reject legally cast ballots.

8. I have seen this error occur repeatedly in Colorado's all mail ballot elections when officials erroneously fold ballots manually and carelessly fold the ballot with the crease on the target areas, creating a shadow, ultimately causing a false positive vote. I have never seen an official use the excuse that the manual duplication would be too tedious to undertake as a reason to avoid

counting the ballot needing duplication. Nor have I seen an election official blame this ballot layout problem on the voter, calling it a "voter error."

9. My most recent visit to the Gwinnett Elections Office was on Saturday November 10, 2018 from approximately 2:00 P.M to 6 P.M. when I talked with Ledford and Day several times. At that time Ms. Ledford confirmed that no staff would be present on November 11 and November 12.

10. Various volunteer organizations are encouraging rejected mail ballot voters to reaffirm their identification to the Gwinnett Board of Elections prior to the certification scheduled for Tuesday, November 13, 2018.  An example of one such voter, Che Uk Uk Kang is shown at Exhibit A.

11. As of 5 pm on November 12, I am in possession of approximately 30 such voter affidavits from rejected mail ballot voters. I am aware of more that are being delivered to me before noon Tuesday, November 13.

12. The purpose of the re-affirmation of the voter's identification is to reassure the Gwinnett officials that identity has been fully verified and there should be no reason to reject the ballot.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 12th day of November 2018, in Atlanta, Georgia.

Marilyn Marks

EXHIBIT

A

Dear Director Ledford and Members of the Gwinnett Board of Elections;

I voted by absentee mail ballot in the November 6, 2018 election and my ballot has been reported as rejected. I am an eligible elector in Gwinnett County. I signed my return ballot envelope under penalties of law, swearing that I was legally eligible to vote the ballot that was issued to me.

I hereby reaffirm and swear that I am an eligible elector in Gwinnett County, and that the identificatio document I am providing herewith is my own.

**I am attaching a copy of additional proof of my identification.**

I am registered to vote at my following residential address:

3889 Pleasant Oaks Dr (Street Address)

Lawrenceville GA, 3004 (City, State, zip code)

KANG, CHEUK (Printed Name)

Cheu C (Signature) 11/11/18 (Date)

Please contact me at 6283 1.5(4 (phone number) and _____ (email) if furth information is required.

## ATTACH COPY OF IDENTIFICATION

Additional statement concerning the effort to vote the ballot, failure of notifications, or problem trying to get the ballot to count, including health or physical limitations: