IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RHONDA J. MARTIN, *et al.*,

    Plaintiffs,

v.

ROBYN A. CRITTENDEN, *et al.*,     CIVIL ACTION NO.
                                                            1:18-CV-4776-LMM

    Defendants.

## **ORDER**

This case comes before the Court on Plaintiffs Rhonda J. Martin, Dana Bowers, Jasmine Clark, Smythe DuVal, Jeanne Dufort, and the Georgia Coalition for the People's Agenda, Inc.'s Motion and Amended Motion for Emergency Temporary Restraining Order [42, 44] and potential Intervenors Carolyn Bourdeaux for Congress and Fazal Khan's Motion to Intervene [45] and proposed Emergency Motion for Temporary Restraining Order [45-5].

Although these Motions come before the Court in the midst of many hotly contested and highly publicized elections issues across the State, the narrow relief granted by this Order addresses one precise question: Does Gwinnett County's process of rejecting absentee ballots solely on the basis of an omitted or incorrect

birth year violate the Civil Rights Act, 52 U.S.C. § 10101(a)(2)(B)?[1] The Court finds, on the arguments presented, that it does and that this narrow set of ballots should be counted.

This decision is not based on evaluating potential harm to any individual candidate. Instead, it is focused on the right of individuals to have their votes counted.

## I. BACKGROUND

### A. Brief Procedural Background

This matter arises from a challenge to Georgia's statutory procedures for rejecting absentee ballot applications and absentee ballots, O.C.G.A. §§ 21-2-381, -386. On October 15, 2018, Plaintiffs filed their Complaint with this Court, alleging that such procedures infringe upon the fundamental right to vote in violation of the Fourteenth Amendment's equal protection clause and guarantee of substantive due process. See Dkt. [1] ¶¶ 56, 65.[2] One day later, on October 16, 2018, the Georgia Muslim Voter Project ("GMVP") and Asian-Americans Advancing Justice-Atlanta ("Advancing Justice-Atlanta"), Civ. A. 1-18-cv-4789

---

[1] An article in the AJC suggests that new instructions from Secretary Crittenden may render the relief sought moot because a November 12, 2018, memorandum instructs election officials that they *can* count ballots despite birth date discrepancies. See Dkt. No. [54] at 11, 15-16. Because these instructions allow but do not require election officials to count these absentee ballots, the issues in this case remain. This Order requires that they do so. As explained in detail, rejecting absentee ballots on this basis violates the Civil Rights Act.

[2] Plaintiffs' Complaint was amended on October 22, 2018 only to add an inadvertently omitted paragraph relating to Plaintiff Jeanne Dufort. See Dkt. [10] at 1-2.

2

[hereinafter, "GMVP"], also filed a complaint with this Court, likewise alleging that the same statutes infringe upon the fundamental right to vote in violation of the equal protection clause of the Fourteenth Amendment. See GMVP Dkt. No. [1] ¶¶ 60-65. The GMVP plaintiffs also averred that the aforementioned Georgia statutes violate the procedural due process clause of the Fourteenth Amendment to the extent they deprive absentee ballot applicants and absentee voters of notice and an opportunity to be heard before their ballots or applications are rejected due to a signature mismatch. See id. ¶¶ 46-58.

The GMVP plaintiffs filed a motion for a temporary restraining order on October 17, 2018. See GMVP Dkt. No. [5]. Plaintiffs filed their motion for a preliminary injunction two days later, on October 19, 2018. Dkt. No. [4]. Because Plaintiffs amended their motion for a preliminary injunction on the morning of the joint hearing (October 23, 2018), the Court only addressed the signature mismatch argument from this case in its subsequent ruling and temporary restraining order. See Dkt. Nos. [23] at 3; [26].

On October 30, 2018, the Court denied the remaining relief requested here, finding that Plaintiffs' requested relief was simply too broad to be implemented that close to the November 6, 2018 election. The Court noted that unlike the relief requested with respect to the signature mismatch issue in GMVP, Plaintiffs asked this Court to establish an entirely new scheme, untethered to any current statutory practices, that did not address a variety of critical and practical questions as to how Plaintiffs' nonspecific relief would be carried out. Critically,

3

Plaintiffs did not seek specific injunctive relief as to individuals who were named in the motion that Plaintiffs contended did not receive statutory rejection notice. See Order, Dkt. No. [41].

On November 11, 2018, Plaintiffs filed a new Emergency Motion for Temporary Restraining Order [42].[3] In it, Plaintiffs seek much more limited relief than their previous request. Specifically, Plaintiffs ask this Court to enjoin the Gwinnett County BORE Defendants "from rejecting absentee ballots containing immaterial errors or omissions." Dkt. No. [44-1] at 2.

The same day, Carolyn Bourdeaux for Congress ("Bourdeaux Campaign") and Fazal Khan (collectively, "proposed Intervenors") filed a Motion to Intervene [45] in this matter, asserting that they should be allowed to file a complaint in intervention and their own motion for emergency temporary restraining order. In their Proposed Emergency Motion for Temporary Restraining Order, proposed Intervenors seek related but different relief. They request that this Court enjoin Defendants' certification of the U.S. House of Representatives Congressional District 7 results until: (1) all absentee ballots with immaterial defects are counted; and (2) Defendants provide all voters, whose absentee ballots have been rejected for failure to sign the oath, three days to cure that deficiency.

---

[3] Plaintiffs also filed an Amended Motion for Temporary Restraining Order the same day, which seeks specific relief as to Gwinnett County citizens Dinesh Chandra, James Arthur Moore, and Corliss Armstead. Plaintiff states these citizens wish to join this action as party plaintiffs and Plaintiffs will be filing a motion for leave to amend the complaint to add them shortly.

4

B. **Factual Background**

Georgia law authorizes any eligible voter to cast his or her absentee ballot by mail. The first step in the absentee-voting process is for a voter to submit an absentee ballot application via mail, fax, email, or in person. O.C.G.A. § 21-2-381(a)(1)(A). A voter may submit an absentee ballot application as early as 180 days prior to the date of the primary or election through and including the Friday before the primary or election. Id. Absentee ballots cannot be issued the day before a primary or election. O.C.G.A. § 21-2-384(a)(1)(2).

When an absentee ballot is received, the county registrar or absentee ballot clerk must determine if the applicant is eligible to vote in the relevant primary or election by comparing the applicant's identifying information to the applicant's information on file with the registrar's office. O.C.G.A. § 21-2-381(b)(1). If a voter's eligibility is confirmed, the registrar must mail an absentee ballot to the voter. O.C.G.A. § 21-2-381(b)(2)(A). When an absentee voter receives an official absentee ballot, they receive two envelopes. O.C.G.A. § 21-2-384(b). The voter must place the completed absentee ballot in the smaller of the two envelopes. Id. The smaller envelope must then be placed in the larger envelope, which contains the oath of the elector and a line for the elector's signature. O.C.G.A. § 21-2-384(b)-(c). All absentee ballots must be received by 7 p.m. on Election Day to be counted. O.C.G.A. § 21-2-386(a)(1)(F).

Pursuant to O.C.G.A. § 21-2-386(a)(1)(C), an absentee ballot may be rejected "[i]f the elector has failed to sign the oath, or if the signature does not

5

appear to be valid, or if the elector has failed to furnish required information or information so furnished does not conform with that on file in the registrar's or clerk's office, or if the elector is otherwise found disqualified to vote." If an elector's ballot is rejected, the clerk "shall write across the face of the envelope 'Rejected,' giving the reason therefore. . . . [and] shall promptly notify the elector of such rejection." Id.

Plaintiffs and the proposed Intervenors' current focus is on so-called "immaterial errors or omissions," such as the failure to provide the voter's year of birth, failure to sign the oath, or other clerical mistakes. As Plaintiffs and proposed Intervenors correctly note, the Georgia Supreme Court has held that while a failure to furnish required information is a "ground for rejection" under O.C.G.A. § 21-2-386(a)(1)(C), nothing in the statute mandates the "automatic rejection of any absentee ballot lacking the elector's place and/or date of birth." Jones v. Jessup, 279 Ga. 531, 533 n.5 (2005). Defendant Crittenden's predecessor has previously conceded that some counties require a voter's year of birth for identification purposes but "where the year of birth is not necessary to confirm the identify of a voter, it is not otherwise required by O.C.G.A. § 21-2-386(a)(1)(C)." See Dkt. No. [36] at 3-4.

**II. DISCUSSION**

The Court will first consider whether to allow the proposed Intervenors to intervene.

6

A. **Intervention as a Matter of Right**

Intervention of right is granted on timely motion to anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a).

> In order for a party to intervene as a matter of right under Rule 24(a), it must establish: (1) the application to intervene is timely; (2) the party has an interest relating to the property or transaction which is the subject of the action; (3) the party is situated so that disposition of the action, as a practical matter, may impede or impair its ability to protect that interest; and (4) the party's interest is represented inadequately by the existing parties to the suit.

Angel Flight of Ga., Inc. v. Angel Flight Am., Inc., 272 F. App'x 817, 819 (11th Cir. 2008); see also Georgia v. U.S. Army Corps of Eng'rs, 302 F.3d 1242, 1250 (11th Cir. 2002).

As an initial matter, Defendants do not directly oppose intervention. See generally BORE Resp. in Opp., Dkt. No. [51]; Sec. of State Resp. in Opp., Dkt. No. [52]. Defendants do not cite the intervention standard, and they merely refer to the intervenors as the "proposed Plaintiff-Intervenors" or "Plaintiff-Intervenor" without any discussion of whether this Court should allow them to intervene. However, Defendants do argue that the proposed Intervenors were not "reasonably diligent" in pursuing the relief sought (in the context of an injunction factor), which is essentially a timeliness argument. Thus, the Court will address that intervention factor out of an abundance of caution.

7

The Court finds the proposed Intervenors acted in a timely fashion. When assessing timeliness, a district court must consider four factors:

> (1) the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the extent of prejudice to the existing parties as a result of the would-be intervenor's failure to apply as soon as he knew or reasonably should have known of his interest; (3) the extent of prejudice to the would-be intervenor if his petition is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely.

Angel Flight, 272 F. App'x at 819 (citing United States v. Jefferson Cty., 720 F.2d 1511, 1516 (11th Cir. 1983)).

The Court finds that the length of time the proposed Intervenors have known about their interest in this case does not prevent intervention. Proposed Intervenor Khan could not have reasonably expected to know of his interest in this case until his ballot was rejected, and proposed Intervenor Bourdeaux Campaign has sued after Gwinnett County confirmed it would not exercise its discretion to consider cast absentee ballots with technical failures.

Defendants will not be prejudiced by a potential intervention as the motion was made in a timely fashion, pre-answer and prior to the election's certification. In contrast, potential Intervenors will be prejudiced greatly if they are not allowed to intervene. Intervenor Khan will be potentially disenfranchised, and Intervenor Bourdeaux Campaign may not have potentially favorable ballots counted. Thus, the Court finds the application timely and **GRANTS** the Motion to Intervene [45] as a matter of right.

## B. Permissive Intervention

But even if intervention as a matter of right is inappropriate, it is plain that permissive intervention would be. Rule 24(b)(1) provides in relevant part that, "[o]n timely motion, the court may permit anyone to intervene who: . . . (B) has a claim or defense that shares with the main action a common question of law or fact." First, as stated above, the Court finds the motion timely. Second, the Intervenors share a common question of law or fact in that both the Intervenors and Plaintiffs seek Gwinnett County to count the same ballots, which were rejected for technical failures such as birthdates, for many of the same reasons. Thus, permissive intervention is likewise appropriate.

## C. Temporary Restraining Order

The standard for obtaining a temporary restraining order ("TRO") is identical to that of obtaining a preliminary injunction. Windsor v. United States, 379 F. App'x 912, 916-17 (11th Cir. 2010). To obtain a preliminary injunction, the moving party must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury to the movant outweighs the damage to the opposing party; and (4) granting the injunction would not be adverse to the public interest. Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A., 320 F.3d 1205, 1210 (11th Cir. 2003). "The preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant 'clearly carries the burden of persuasion' as to the four prerequisites." United States v. Jefferson

Cty., 720 F.2d 1511, 1519 (11th Cir. 1983) (quoting Canal Auth. v. Callaway, 489 F.2d 567, 573 (5th Cir. 1974)).

1. *Likelihood of Success on the Merits*

Plaintiffs and Intervenors (hereinafter "Plaintiffs") have met their burden in showing a substantial likelihood of success on the merits with respect to their claim that Gwinnett County's practice of rejecting absentee ballots based solely on an omitted or erroneous birth year violates the Civil Rights Act, 52 U.S.C. § 10101(a)(2)(B). Plaintiffs have not, however, shown a substantial likelihood of success on the merits regarding their broader requests for relief; accordingly, the Court will only address the narrow issue of absentee ballots rejected on the basis of a birth year error or omission.[4]

Section 10101(a)(2)(B) of the Civil Rights Act forbids the practice of disqualifying voters "because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election." 52 U.S.C. § 10101(a)(2)(B). This particular addition to federal law was "intended to address the practice of requiring unnecessary information for voter registration with the intent that such

---

[4] Unlike Plaintiffs' arguments with respect to missing or incorrect birth years, Plaintiffs offer only conclusory statements and no supporting authority for their claim that a missing signature, incorrect address, or other clerical errors are immaterial pursuant to the Civil Rights Act. Thus, Plaintiffs have not met their high burden on this point and the requested broader injunction is not granted.

10

requirements would increase the number of errors or omissions on the application forms, thus providing an excuse to disqualify potential voters." Schwier v. Cox, 340 F.3d 1284, 1294 (11th Cir. 2003); see also Fla. State Conf. of NAACP v. Browning, 522 F.3d 1153, 1173 (11th Cir. 2008). In interpreting 52 U.S.C. § 10101(a)(2)(B), the Eleventh Circuit has explained that this provision asks "whether, accepting the error as true and correct, the information contained in the error is material to determining the eligibility of the applicant." Browning, 522 F.3d at 1175.

Here, Plaintiffs have demonstrated that an elector's year of birth is not material to determining the eligibility of an absentee voter. To begin, "the only *qualifications* for voting in Georgia are U.S. Citizenship, Georgia residency, being at least eighteen years of age, not having been adjudged incompetent, and not having been convicted of a felony." Schwier, 340 F.3d at 1297 (citing O.C.G.A. § 21-2-216 (1998)) (emphasis in original). Accordingly, a voter's ability to correctly recite his or her year of birth on the absentee ballot envelope is not material to determining said voter's qualifications under Georgia law. Indeed, Defendants acknowledged in a prior briefing that Georgia law only requires that a "county election official can confirm the identity of the voter with the information that *is* provided." Dkt. No. [36] at 3 (emphasis in original). And, with respect to the absentee ballots rejected solely on a year of birth error or omission in Gwinnett County, the qualifications of the absentee voters are not at issue because Gwinnett County elections officials have already confirmed such voters' eligibility

11

through the absentee ballot application process. See Dkt No. [42-1] at 4; see also O.C.G.A. § 21-2-381(b)(1)("Upon receipt of a timely application for an absentee ballot . . . . The registrar or absentee ballot clerk shall determine, in accordance with the provisions of this chapter, *if the applicant is eligible to vote* in the primary or election involved.") (emphasis added).

This Court's conclusion that year of birth information on the absentee ballot envelope is immaterial is only strengthened by the Georgia Supreme Court's explicit recognition that Georgia law "does not mandate the automatic rejection of any absentee ballot lacking the elector's place and/or date of birth." Jones, 279 Ga. At 533 n.5. Moreover, Gwinnett County's procedure for rejecting absentee ballots entirely on the basis of a missing or incorrect birth year is particularly problematic in light of the fact that other Georgia counties do not require absentee voters to furnish such information *at all*. See Dkt. No. [42-1] at 9 n.4 (noting that Carroll, Camden, and Richmond Counties do not request an absentee voter's year of birth). While Defendant Gwinnett County argues that it uses "all the information on the ballot envelope" to verify a voter's identity, this Court does not find that a year of birth is material to determining a voter's eligibility when such information is not uniformly required across the State. See Dkt. No. [51] at 6 n.4. In light of the foregoing, the Court finds that Plaintiffs have established a substantial likelihood of success on the merits on their claim that

Gwinnett County violated the Civil Rights Act in rejecting absentee ballots solely on the basis of a missing or incorrect year of birth.[5]

### 2. Remaining Injunction Factors

The Court also finds that the remaining injunction factors weigh in Plaintiffs' favor. First, as this Court has previously recognized, "a violation of the right to vote cannot be undone through monetary relief and, once the election results are tallied, the rejected electors will have been disenfranchised without a future opportunity to cast their votes." Dkt. No. [23] at 26-27 (quoting Odebrecht Const., Inc. v. Sec'y, Fla. Dep't of Transp., 715 F.3d 1268, 1289 (11th Cir. 2013) ("In the context of preliminary injunctions, numerous courts have held that the inability to recover monetary damages because of sovereign immunity renders the harm suffered irreparable.")(collecting cases)); see also League of Women Voters of N. Carolina v. North Carolina, 769 F.3d 224, 247 (4th Cir. 2014) ("Courts routinely deem restrictions on fundamental voting rights irreparable injury."); Obama for Am. v. Husted, 697 F.3d 423, 436 (6th Cir. 2012) ("A restriction on the fundamental right to vote therefore constitutes irreparable injury."); Cunningham v. Adams, 808 F.2d 815, 821 (11th Cir. 1987) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies.")).

---

[5] Because the Court finds that an injunction is warranted on the birth year issue pursuant to the Civil Rights Act, the Court declines to also decide whether an injunction would be warranted on this same issue as a substantive due process or equal protection violation.

13

Next, the Court finds that the balance of equities and the public interest support an injunction. With respect to hardship, Defendants essentially argue that it would be unduly burdensome to have to count a new group of ballots at this point in the election process because counting such ballots will necessarily delay certification of the election in Gwinnett County. See Dkt. No. [51] at 8. According to Gwinnett BORE Defendants, delaying certification in Gwinnett County will in turn delay certification statewide, thereby disrupting preparations for the December 4, 2018 runoff elections. See id. Those Defendants further argue that an injunction is unwarranted because Plaintiffs have a state law remedy available to them in the form of Georgia's election contest procedures, and that this Court can always review Plaintiffs' constitutional claims after the election is certified. See id. at 9-10. Finally, the State Defendants contend that Plaintiffs have failed to allege any harm because they have not shown that counting absentee ballots rejected on the basis of a missing or incorrect birth year would change the outcome of election. See Dkt. No. [52] at 13.

But none of the harm that Defendants will allegedly suffer from an injunction rises to the same level as the harm that disenfranchised Plaintiffs (and, undoubtedly, other absentee voters) will suffer without an order from this Court. First, as discussed above, it is axiomatic that there is no post hoc remedy for a violation of the right to vote. See e.g. Fla. Democratic Pty. v. Detzner, ("'This isn't golf: there are no mulligans.' . . . Once the canvassing starts and the election comes and goes, 'there can be no do-over and no redress.'") (quoting Fla.

14

Democratic Pty. v. Scott, No. 4:16-cv-626-MW/CAS (N.D. Fla. Oct. 10, 2016) and League of Women Voters, 769 F.3d at 247). Defendants' arguments as to Plaintiffs' alternative avenues for relief are accordingly misplaced.

Moreover, the State Defendant's argument entirely misconstrues the nature of the harm—the harm alleged is disenfranchisement, regardless of the outcome of the election. It is of no consequence to this Court who wins this election; what matters is who is entitled to exercise their constitutional right to vote and have that vote counted.

Importantly, the relief requested applies to only a small portion of the outstanding absentee ballots. Plaintiffs argue that Gwinnett County has rejected at least 265 absentee ballots solely because voters omitted their year of birth and at least 58 absentee ballots because voters erroneously wrote that they were born in 2018. See Dkt. No. [45-6]. While this Court does not discount the tireless efforts of Gwinnett County elections officials to ensure a fair and accurate election, the Court is not convinced that requiring Gwinnett County to count a discrete number of ballots that it *already has in its possession* will cause chaos and uncertainty across the State. Unlike Plaintiffs' previously rejected request for relief, this injunction does not require the Court to "in essence, rewrite the entirety of the absentee ballot statutes" to provide relief for every eligible absentee mail ballot voter statewide. See Dkt. No. [41] at 7, 8. Indeed, this Court is not granting the entirety of the relief requested by Plaintiffs—rather, the Court simply agrees with Plaintiffs that the burden of counting a set number of legally

15

cast ballots is clearly outweighed by the harm eligible voters will suffer if their votes are not counted based on an incorrect or missing birth year.

And finally, as this Court has already explained, "the public interest is best served by allowing qualified absentee voters to vote and have their votes counted." Dkt. No. [38] at 11. This injunction grants narrow relief to a small subset of absentee voters that is simply not so burdensome as to outweigh Georgians' right to vote. See Wesberry v. Sanders, 376 U.S. 1, 17 (1964) ("No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined."). Plaintiffs have therefore established all four prerequisites to warrant injunctive relief.

### III. CONCLUSION

Intervenors Carolyn Bourdeaux for Congress and Fazal Khan's Motion to Intervene [45] is **GRANTED.** Intervenors' Emergency Motion for Temporary Restraining Order [45-5] is **GRANTED** as to the birth year issues and **DENIED** as to the remaining requests for relief. The Clerk is **DIRECTED** to docket the Complaint in Intervention [45-2].

Plaintiffs Rhonda J. Martin, Dana Bowers, Jasmine Clark, Smythe Duval, Jeanne Dufort, and the Georgia Coalition for the People's Agenda, Inc.'s Motion and Amended Motion for Emergency Temporary Restraining Order [42, 44] is **GRANTED** as to the birth year issue and **DENIED** as to the remaining requests

for relief. Defendants Stephen Day, John Mangano, Alice O'Lenick, Ben Satterfield and Beauty Baldwin (the Gwinnett County BORE Members) are hereby **ENJOINED** from rejecting absentee ballots containing an error or omission relating to the absentee voter's year of birth and are **ORDERED** to count such ballots in the November 6, 2018 election. Defendants are **ORDERED** to delay certification until such ballots have been counted.

Nothing in this Order affects or otherwise extinguishes this Court's prior injunction related to signature matching.

**IT IS SO ORDERED** this 13th day of November, 2018.

*/s/ Leigh Martin May*
**Leigh Martin May**
**United States District Judge**