## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

RHONDA J. MARTIN, DANA BOWERS, JASMINE CLARK, SMYTHE DUVAL, JEANNE DUFORT, and THE GEORGIA COALITION FOR THE PEOPLE'S AGENDA, INC.,

              Plaintiffs,

and

CAROLYN BOURDEAUX FOR CONGRESS and FAZAL KHAN,

              Plaintiff-Intervenors,

              v.

BRIAN KEMP, SECRETARY OF STATE OF GEORGIA; REBECCA N. SULLIVAN, RALPH F. "RUSTY" SIMPSON, DAVID J. WORLEY, and SETH HARP; STEPHEN DAY, JOHN MANGANO, ALICE O'LENICK, BEN SATTERFIELD, and BEAUTY BALDWIN,

              Defendants.

Civil Action File No.

1:18-cv-04776 LMM

## PLAINTIFF-INTERVENORS CAROLYN BOURDEAUX FOR CONGRESS AND FAZAL KHAN'S EMERGENCY COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Proposed Plaintiff-Intervenors CAROLYN BOURDEAUX FOR CONGRESS and FAZAL KHAN, by and through the undersigned attorneys, file this EMERGENCY COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF against Defendants, ROBYN CRITTENDEN, in her official capacity as Secretary Of State of Georgia; REBECCA N. SULLIVAN, RALPH F. "RUSTY" SIMPSON, DAVID J. WORLEY and SETH HARP, as Members of the Georgia State Election Board; STEPHEN DAY, JOHN MANGANO, ALICE O'LENICK, BEN SATTERFIELD and BEAUTY BALDWIN, as members of the Gwinnett County Board of Registration and Elections, and allege upon information and belief as follows:

1.      Georgia permits any eligible elector to vote by mail ("absentee mail voters" or "mail voters"). Nevertheless, in the November 6, 2018 General Election, hundreds of duly eligible voters in Gwinnett County have not been able to take advantage of this method of voting because the Gwinnett County Board of Registration and Elections ("the Gwinnett Board") has rejected their ballots for immaterial reasons, and even where it is clear that the voter is registered and eligible to vote. Indeed, the Gwinnett Board's interpretation of Georgia's Election Code creates an unusually high risk that voters who voted by mail ballot will have their votes rejected for even the smallest error or omission on their

absentee ballot resulting in disenfranchisement, with no meaningful opportunity to cure any perceived deficiency.

2.     In Gwinnett County, absentee mail ballots are frequently rejected because of unintentional voter errors like an inaccurate year of birth or address. The consequence of making such an understandable human error has been the rejection of the ballot even where the reviewing official has determined that the signature on the oath matches the signature on the voter's registration card, *and thus, there is absolutely no question as to the voter's qualifications*. Moreover, the voter's qualification to vote under state law is determined *before* the voter is sent an absentee ballot. Therefore, even where the voter neglects to sign the oath on the ballot, she should be given the opportunity to cure this technical error.

3.     Further, as this Court has noted, Gwinnett County has a history of rejecting an alarmingly high percentage of absentee ballots. *Martin v. Kemp*, No. 18-4776, Dkt. No. 23 at 7. In the 2016 general election, Gwinnett County rejected l,196 out of the 20,120 absentee ballots cast (6 percent). Through October 12, 2018, Gwinnett County had rejected 9.6% of the 4,063 absentee mail ballots received, nearly one-third for a missing or mistaken birth year. *Id.* And as of November 11, data from the Secretary of State showed that Gwinnett County had rejected 901 absentee mail ballots for missing information such as a

date of birth, address, or signature. *See* Exs. A, B. By contrast, in neighboring Forsyth County, election officials only rejected 23 absentee ballots, and according to information on the Secretary of State's website, none of these were rejected for omission of or errors in immaterial information such as date of birth or address. *See* Ex. C.

4.     The Gwinnett County oath also provides blank spaces for a voter's year of birth and address. *See* Ex. D. The envelope does not indicate that providing these details is mandatory. Because this information is provided on the outer envelope, it is visible when the envelope is returned by mail. By statute, an absentee ballot *may* be rejected "[i]f the elector has failed to sign the oath, or if the signature does not appear to be valid, of if the elector has failed to furnish required information or information so furnished does not conform with that on file in the registrar's or clerk's office, or if the elector is otherwise disqualified to vote." O.C.G.A. § 21-2-3986(a)(1)(C).

5.     Federal law, however, prohibits states from using requests for immaterial information—information that is not relevant to whether the voter is qualified under state law to vote—as a barrier to voting. Under the Civil Rights Act, 52 U.S.C. § 10101(a)(2)(B), a government official may not

> deny the right of any individual to vote in any election because of
> an error or omission on any record or paper relating to any

- 4 -

application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election.

6.     Understanding this, on the recommendation of the Attorney General, the State Election Board has cited the Civil Rights Act when declining to reprimand at least two counties for their practice of accepting absentee ballots for omitting immaterial information:

> Where the election official can verify the identity of the voter by comparing their signature on the absentee ballot envelope with the voter's signature on file, the omission of the additional information of residence address and/or day and month of birth would not be material to that voter's qualifications and the absentee ballot should be counted.

*In the Matter of: Burke Cty. Bd. of Election & Registration, Barbara N. Hammett, and Laverne Sello*, SEB Case No. 2011-000095 (Feb. 11, 2016) at 3, attached as Worley Decl. Ex. B (concluding accepting absentee ballots that were "missing a street address" did not violate Georgia law); *In the matter of: Eleanor Gale, Elections Supervisor, and McIntosh Cty. Bd. of Elections & Registration*, SEB Case No. 2012-131 (Feb 1, 2016) at 11, attached as Worley Decl. Ex. A (concluding accepting absentee ballots that were missing a date of birth, address, or listed a P.O. Box number as a residential address did not violate Georgia law).

7.     While a failure to furnish required information may support rejection of an absentee ballot under O.C.G.A. § 21-2-386(a)(1)(C), the Georgia

Supreme Court has held that nothing in the statute mandates the "automatic rejection of any absentee ballot lacking the elector's place and/or date of birth." *Jones v. Jessup*, 279 Ga. 531, 533 n.5 (2005). In *Jones*, the omitted information was the place, day, and month of birth. "However, nothing in O.C.G.A. § 21-2-386 makes an address more or less required than a day and month of birth, both are used to assist the local election official in confirming the identity of the voter where comparison of the voter's signature insufficient." Worley Decl. Ex. B; Worley Decl. Ex. A at 5; *see also In the Matter of Fred Haymans et al.*, SEB Case No. 2012-31 (May 22, 2018), attached as Worley Decl. Ex. C (dismissing charge for violating O.C.G.A. § 21-2-386(a)(1)(C) brought against election officials who accepted absentee ballots that without all of the requested information in the oath). In fact, the Defendant Secretary of State has already conceded that "where the year of birth is not necessary to confirm the identity of a voter, it is not otherwise required by O.C.G.A. § 21-2-386(a)(1)(C)." *Martin*, No. 18-4776 Dkt. No. 36 at 3–4.

8.     Gwinnett County's interpretation of O.C.G.A. § 21-2-3986(a)(1)(C) is unusually strict, is unlawful, and should be enjoined by this Court.

9.     Plaintiff-Intervenors bring this Emergency Complaint for Declaratory and Injunctive Relief, and their Emergency Motion for Preliminary Injunction and

Show of Good Cause filed herewith, to require Gwinnett County Defendants to count the votes that were improperly rejected in the November 6, 2018 General Election in violation of the Civil Rights Act and the First and Fourteenth Amendments, pursuant to 42 U.S.C. §§ 1983 and 1988, and to prevent Defendants from certifying the 2018 General Election results, currently required by 5 p.m. on Tuesday, November 13, 2018, until all votes have been counted.

10.    Plaintiff-Intervenors ask the Court to issue an Order requiring Defendants to consider valid and count each of the 901 absentee ballots that Gwinnett County election officials have rejected due to missing immaterial information.

11.    Absent emergency relief, these 901 Georgia voters, whose ballots were improperly rejected, will be disenfranchised, not on the basis of his or her eligibility to vote, but rather, on the basis of Defendants' unlawful interpretation of O.C.G.A. § 21-2-386(a)(1)(C), in clear violation of the Civil Rights Act and the First and Fourteenth Amendments.

## JURISDICTION AND VENUE

12.    Plaintiff-Intervenors bring this action under 42 U.S.C. §§ 1983 and 1988 to redress the deprivation under color of state law of rights secured by the United States Constitution.

13.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States.

14.     This Court has personal jurisdiction over Defendants, who are sued in their official capacity only.

15.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events that gave rise to Plaintiff-Intervenors' claims occurred in this judicial district.

16.     This Court has the authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

## PARTIES

17.     Plaintiff-Intervenor CAROLYN BOURDEAUX FOR CONGRESS (the "Campaign") is the principal campaign committee for Carolyn Bourdeaux's election to represent Georgia's Seventh Congressional District in the United States House of Representatives. The Campaign's mission is for Bourdeaux to be elected to the House, and its mission will be undermined and harmed if valid absentee ballots cast by voters who support Bourdeaux's candidacy are unlawfully rejected based on Defendants' illegal conduct. Moreover, the Campaign's supporters and constituents

are among the 901 voters impacted by the improper rejection of their absentee ballots by Defendants. As of the time of this filing, in unofficial returns, Bourdeaux trails Rob Woodall by 901 votes (139,837 to 138,936), or 0.32% of the 278,773 votes counted.

18.     Plaintiff FAZAL KHAN is a registered elector of the State of Georgia and a resident of Gwinnett County. Khan is a Democrat. Khan is eligible to vote and he cast an absentee ballot by mail in the November 6, 2018 election. His absentee ballot was rejected solely because the year of birth information listed on his absentee ballot envelope allegedly did not match the year of birth listed in his voter registration record. This error is immaterial as to election officials' ability to verify Khan's identity and eligibility to vote. Khan seeks to have his absentee ballot counted in the November 2018 election.

19.     Defendant ROBYN CRITTENDEN is sued for prospective declaratory and injunctive relief in her official capacity as the Secretary of State of Georgia. Brian Kemp recently resigned as Secretary of State on November 8, 2018. Robyn Crittenden was appointed on the same date and was automatically substituted for him as a Defendant in this case by operation of Fed. R. Civ. P. 25(d). Defendant CRITTENDEN is hereinafter referred to, together with her predecessors, as

"Crittenden" or the "Secretary."[1]

20.    The Secretary of State is a state official subject to suit in her official capacity because her office "imbues [her] with the responsibility to enforce the law or laws at issue in the suit," *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011), specifically the election laws in the State of Georgia. Secretary serves as the Chair of the State Election Board.

21.    Defendants REBECCA N. SULLIVAN, RALPH F. "RUSTY" SIMPSON, DAVID J. WORLEY and SETH HARP are members of the State Election Board in Georgia, responsible for obtaining uniformity in election practices by promulgating rules and regulations to ensure the legality and purity of all elections, investigating frauds and irregularities in elections, and reporting election law violations to the Attorney General or appropriate district attorney. The State Board Members are authorized to take such other actions consistent with law to provide for the conduct of fair, legal, and orderly elections. Together with any successors in office automatically substituted for any of them as Defendants by operation of Fed. R. Civ. P. 25(d), these Defendants are hereinafter collectively referred to as the "State Election Board" or "State Election Board Members." The

---

[1] Brian Kemp is listed in the case caption of Plaintiff-Intervenors' Complaint and accompanying papers because it appears that the case caption has not yet been officially updated by the Court.

State Board Members are sued for declaratory and injunctive relief in their official capacities.

22.    The Secretary of State and the State Election Board have the authority to direct officials in each county responsible for elections (that is, the county elections board or the superintendent of elections) (collectively "the County Election Officials").

23.    Defendants STEPHEN DAY, JOHN MANGANO, ALICE O'LENICK, BEN SATTERFIELD and BEAUTY BALDWIN are sued for declaratory and injunctive relief in their official capacities as members of the Gwinnett Board. Together with any successors in office automatically substituted for any of them as Defendants by operation of Fed. R. Civ. P. 25(d), these Defendants are hereinafter collectively referred to as the "Gwinnett Board Members" or "Gwinnett Board."

24.    The Gwinnett Board has the authority to exercise the powers and duties of a county election superintendent with respect to conducting elections in Gwinnett County, *see* O.C.G.A. § 21-2-70 to -77. The Gwinnett board is required "[t]o make and issue such rules, regulations, and instructions, consistent with law, including the rules and regulations promulgated by the State Election Board, as he or she may deem necessary for the guidance of poll officers, custodians, and electors in

primaries and elections," O.C.G.A. § 21-2-70(7), and "[t]o conduct all elections . . . and to perform such other duties as may be prescribed by law," *id.* at § 21-2-70(13).

## FACTS

25.     Georgia law sets forth the process for determining eligibility for, distributing, collecting, processing, and counting absentee ballots.

26.     Georgia law authorizes any eligible voter to cast his or her absentee ballot by mail. When an absentee voter receives an official absentee ballot, they receive two envelopes. O.C.G.A. § 21-2-384(b).

27.     The voter must place the completed absentee ballot in the smaller of the two envelopes. *Id.*

28.     The smaller envelope must then be placed in the larger envelope, which contains the oath of the elector and a line for the elector's signature. O.C.G.A. § 21-2-384(b)-(c).

29.     The form of the oath is specified by O.C.G.A. § 21-2-384(c)(1): The oaths referred to in subsection (b) of this Code section shall be in substantially the following form:

> I, the undersigned, do swear (or affirm) that I am a citizen of the United States and of the State of Georgia; that my residence address, for voting purposes, is _____County, Georgia; that I possess the qualifications of an elector required by the laws of the State of Georgia; that I am entitled to vote in the precinct containing my residence in the primary or election in which this ballot is to be cast; that I am eligible to vote by

absentee ballot; that I have not marked or mailed any other absentee ballot, nor will I mark or mail another absentee ballot for voting in such primary or election; nor shall I vote therein in person; and that I have read and understand the instructions accompanying this ballot; and that I have carefully complied with such instructions in completing this ballot. I understand that the offer or acceptance of money or any other object of value to vote for any particular candidate, list of candidates, issue, or list of issues included in this election constitutes an act of voter fraud and is a felony under Georgia law.

_____
Elector's Residence Address

_____
Year of Elector's Birth

_____
Signature or Mark of Elector

In Gwinnett County, the oath appears on the outside of the absentee ballot envelope printed in small type in English and Spanish as shown in Exhibit D.

30.     All absentee ballots must be received by 7 p.m. on Election Day to be counted. O.C.G.A. § 21-2-386(a)(1)(F).

31.     Pursuant to O.C.G.A. § 21-2-386(a)(1)(C), an absentee ballot *may* be rejected "[i]f the elector has failed to sign the oath, or if the signature does not appear to be valid, or if the elector has failed to furnish required information or information so furnished does not conform with that on file in the registrar's or clerk's office, or if the elector is otherwise found disqualified to vote."

32.     If an elector's ballot is rejected, the clerk "shall write across the face of the envelope 'Rejected,' giving the reason therefor. . . . [and] shall promptly notify

the elector of such rejection." *Id.*

33.     As the Court stated in its October 24, 2018 Order, county election officials reported an increase in the volume of absentee by-mail voting and absentee in-person (early) voting for the November 6, 2018 general election. *Martin*, No. 18-4776, Dkt. No. 23.

34.     Specifically, Gwinnett County reported that it has received "significantly" more absentee ballot applications for the November 6, 2018 election than in previous years. *Id.*

35.     Gwinnett County also has a significantly higher rate of rejecting absentee voters than any other county in the state. *Id.*

36.     The Court noted that as of October 18, 2018, Gwinnett County had rejected 524 absentee ballots for signature mismatch, unsigned oaths, and other missing information in the 2018 General Election. *Id.*

37.     On October 24, 2018, the Court issued a preliminary injunction prohibiting all county election officials from rejecting any absentee ballot due to an alleged signature mismatch and requiring that the ballots be marked as provisional rather than rejected, allowing the voter to cure the discrepancy. *Id.*

38.     For absentee ballots that had been rejected for reasons unrelated to signature mismatches, Plaintiffs sought an order prohibiting Defendants from

rejecting an absentee ballot solely based on a discrepancy or omission relating to year of birth and requested that the Court to permit an absentee voter whose ballot is rejected to provide elections officials with a cure affidavit up until the close of business on the Friday after election day. *See Martin*, Dkt. No. 39 at 3–4.

39.     On November 2, 2018, the Court denied Plaintiffs' request, noting that "Plaintiffs propose[d] no specific instructions for county elections officials to issue, nor do Plaintiffs suggest a procedure for receiving and processing such affidavits across the entire state. . . . Accordingly, if the Court were to grant Plaintiffs' injunction, the Court would leave county elections officials without any guidance as to what to do if various parts of the oath are left blank, unsigned, if the address matches publicly available information but not other information in the voter's file, or how to otherwise verify a voter's identification." *Id.* Dkt. No. 41 at 8.

40.     The Court also noted that at the time of its Order, with "the November 6, 2018 election is rapidly approaching," implementing Plaintiffs' proposed cure process would "both burden elections officials and increase the risk of voter confusion." *Id.* at 10.

41.     On Election Day and thereafter, Gwinnett County rejected at least 901 absentee mail ballots for reasons other than signature mismatch, such as omitted or erroneous addresses, or omitted or erroneous years of birth, or missing signatures,

or some combination thereof.

42.     Georgia law makes clear that this information is not necessary to establish the eligibility of the voter and cannot be used to automatically deny a voter's fundamental rights. *Jones*, 279 Ga. at 533 n.5. Under Georgia law, voters prove their qualifications to vote when they register to vote and those qualifications are verified *before* they are issued an absentee ballot, O.C.G.A. § 21-2-381(b) (registrar sends absentee ballot once voter's eligibility is confirmed), not when they return their absentee ballot, therefore, any information on the absentee ballot envelope is immaterial to determining whether the voter is qualified. Moreover, for the absentee ballots on which the voter has signed the oath, there is absolutely no dispute concerning the voter's identity or qualifications. Per this Court's October 24 Order, any signatures that election officials have deemed to be not matching would have already been segregated with the provisional ballots, so the signatures on the remaining signed absentee ballots have by definition been determined to match the signatures on the voters' registration cards.

43.     The Civil Rights Act, 52 U.S.C. § 10101(a)(2)(B), prohibits government officials from rejecting ballots that includes errors or omissions of information immaterial to determining whether the individual is eligible to vote.

44.     This materiality provision "was intended to address the practice of

requiring unnecessary information for voter registration with the intent that such requirements would increase the number of errors or omissions on the application forms, thus providing an excuse to disqualify potential voters." *Schwier v. Cox*, 340 F.3d 1284, 1294 (11th Cir. 2003).

45.     Thus, the county election officials may not reject ballots because of such errors or omissions.

46.     Permitting Defendants to reject and discard over nine hundred absentee ballots for missing immaterial information, thereby disenfranchising what is almost certain to be a majority of eligible voters whose ballots should have been counted, would violate the eligible voters' rights under the Civil Rights Act and First and Fourteenth Amendments.

47.     The Gwinnett County Elections Office should not certify the election results until all absentee ballots that had been previously rejected due to immaterial errors and omissions are counted, and, if the voter's signature is held to be material, voters who omitted a signature should receive notice and a reasonable opportunity to cure the defect before their otherwise eligible vote is rejected.

## COUNT I
### Section 1971 of the Civil Rights Act of 1964
### 52 U.S.C. § 10101(a)(2)(B)

48.     Plaintiff-Intervenors reallege and incorporate by reference the

allegations of Paragraphs 1 through 47 above as though fully set forth herein.

49.    Section 1971 of the Civil Rights Act of 1964, 52 U.S.C.

§ 10101(a)(2)(B), provides that:

> No person acting under color of law shall ... deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election.

50.    The Eleventh Circuit has expressly held "that the provisions of section 1971 of the Voting Rights Act may be enforced by a private right of action under § 1983." *Schwier*, 340 F.3d at 1297.

51.    As a result of the additional and superfluous requirements for casting effective absentee ballots contained in O.C.G.A. § 21-2-386(a)(1)(C), which permits elections officials to reject absentee ballots for nominal technical deficiencies in filling out the information on the back of the envelope, the right to vote of hundreds of Georgia voters in Gwinnett County have been and will continue to be denied as a result of immaterial errors on their absentee ballot identification envelopes, even where election officials can determine that the voter is eligible and registered to vote, unless these provisions are enjoined.

52.    Based on the foregoing, Defendants, acting under color of state law, have deprived and will continue to deprive Plaintiff-Intervenors and other Georgia

citizens of rights secured to them by Section 1971 of the Civil Rights Act of 1964,

52 U.S.C. § 10101(a)(2)(B).

## COUNT II
### First Amendment, Equal Protection, and 42 U.S.C. § 1983
### (*Anderson-Burdick*)
### U.S. Const. amends. I, XIV
### *Threatened Infringement of the Fourteenth Amendment's*
### *Guarantee of Equal Protection*

53.     Plaintiff-Intervenors incorporate by reference and reallege paragraphs

1 to 53 of this Complaint as if set forth fully herein.

54.     Under the First Amendment and the Equal Protection Clause of the

Fourteenth Amendment, a court considering a challenge to a state election law must

carefully balance the character and magnitude of the injury to First and Fourteenth

Amendment rights that the plaintiff seeks to vindicate against the justifications put

forward by the State for the burdens imposed by the rule. *See Burdick v. Takushi*,

504 U.S. 428, 434 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983).

"However slight th[e] burden may appear, . . . it must be justified by relevant and

legitimate state interests sufficiently weighty to justify the limitation." *Crawford v.*

*Marion Cty. Election Bd.*, 553 U.S. 181, 191 (2008) (Stevens, J., controlling opinion)

(internal quotation marks omitted). Further, all laws that distinguish between groups

must at least be rationally related to a legitimate state interest in order to survive

scrutiny under the Equal Protection Clause. *Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992).

55.    Nearly a thousand Gwinnett County voters have had, and will have, without action from this Court, their right to vote wholly denied in the 2018 General Election due to the Gwinnett Board's highly restrictive practice of rejecting absentee ballots of duly qualified voters for the omission of immaterial information that Georgia law does not even require for their vote to be counted, and its failure to allow them to cure a missing signature.

56.    The Gwinnett Board's practice of rejecting absentee ballots for the reasons discussed herein are not supported by any material or important government interest (indeed, even Georgia law does not require rejection). Moreover, any benefits are plainly outweighed by the severe burden on voters—complete disenfranchisement.

57.    Based on the foregoing, Defendants acting under color of law have deprived and will continue to deprive Gwinnett County voters, including many voters who voted for and supported Plaintiff-Intervenors, the rights secured to them by the First and Fourteenth Amendments to the U.S. Constitution and protected by 42 U.S.C. § 1983.

**COUNT III**
**Equal Protection (*Bush v. Gore*) and 42 U.S.C. § 1983**

**U.S. Const. amend. XIV**
***Threatened Infringement of the Fourteenth Amendment's***
***Guarantee of Equal Protection***

58.     Plaintiff-Intervenors incorporate by reference and reallege paragraphs l to 58 of this Complaint as if set forth fully herein.

59.     The First and Fourteenth Amendments do not permit the state to arbitrarily value the votes of one group of individuals over another. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits states from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. This constitutional provision requires "that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburn Living Ctr.*, 473 U.S. 432, 439 (1985); *see also Bush v. Gore*, 531 U.S. 98, 104-05 (2000) (holding Equal Protection Clause applies to "the manner of [the] exercise [of voting]" and "once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another").

60.     The fact that the interpretation of O.C.G.A. § 21-2-386(a)(1)(C) varies from county to county, Gwinnett County's interpretation and implementation of O.C.G.A. § 21-2-386(a)(1)(C) plainly violates the Equal Protection Clause. "Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Id.*

61.     Defendants knowingly treat or permit the treatment of electors who vote by mail in Gwinnett County differently from other, similarly situated electors voting in the same election in other counties in the State.

62.     As shown by the substantial difference in rejection rates between Gwinnett County and Forsyth County, electors who vote by mail in Gwinnett County are far more likely to be disenfranchised than electors who vote by mail in other counties. Further, Defendant Secretary and the Defendant State Board Members have failed to ensure that Georgia absentee voters are treated equally regardless of the county they reside.

63.     Due to this disparate treatment, absentee voters in Gwinnett County who cast ballots in the November 6, 2018 General Election have suffered burdens on and infringements to their fundamental right to vote that other, similarly situated voters in other counties have not.

64.     Defendants' unequal treatment of these voters is not justified by, and is not necessary to promote, any substantial or compelling state interest that cannot be accomplished by other, less restrictive means.

65.     Scores of eligible, registered Gwinnett County absentee voters will suffer direct and irreparable injury if Defendants are not enjoined from rejecting otherwise valid absentee ballots on the basis of the most insignificant of technical

violations described herein, where these minor technical violations could not reasonably be interpreted to mean that the voter is ineligible to cast the ballot or that the ballot is otherwise invalid.

66.    Based on the foregoing, Defendants, acting under color of state law, have deprived and will continue to deprive Plaintiff-Intervenors and other Georgia voters of equal protection under the law secured to them by the Fourteenth Amendment to the United States Constitution and protected by 42 U.S.C. § 1983.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff-Intervenors respectfully request that this Court enter judgment:

a)    declaring that for Defendants to reject absentee ballots for omitting or making mistakes in immaterial information on a voter's absentee ballot envelope, such as in the date of birth or address fields, would violate the First and Fourteenth Amendments to the United States Constitution;

b)    preliminarily and permanently enjoining Defendants from rejecting any absentee ballot on the basis that a voter omitted or allegedly made a mistake when filling in immaterial information on his or her absentee ballot envelope;

c)    requiring Defendants to count all absentee ballots that were previously rejected solely on the basis that a voter omitted or allegedly made a mistake when filling in immaterial information on his or her absentee ballot envelope;

d)    requiring Defendants to permit voters whose absentee ballots were previously rejected for missing signatures to cure within three days of the issuance of the order in accordance with the provisional ballot cure process included in this Court's Order of October 24, 2018. *Martin*, Dkt. No. 23.

e)    temporarily enjoining Defendants from certifying the election results on November 13, 2018 until each and every absentee ballot that was improperly rejected has been counted;

f)    awarding Plaintiff-Intervenors their costs, disbursements, and reasonable attorneys' fees incurred in bringing this action pursuant to 42 U.S.C. § 1988 and other applicable laws; and

g)    granting such other and further relief as the Court deems just and proper.

Dated: November 11, 2018                 Respectfully submitted,


/s/ Veronica Higgs Cope
GA Bar No.: 352145
The Cope Law Firm, P.C.
2330 Scenic Highway
Snellville, GA 30078
Telephone: (404) 917-1077
Facsimile: (866) 614-8295
vcope@copelawfirm.com

Marc E. Elias*
Bruce V. Spiva*
Brian Marshall*
Aria C. Branch*
K'Shaani Smith*
**PERKINS COIE LLP**
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-6211
MElias@perkinscoie.com
BSpiva@perkinscoie.com
BMarshall@perkinscoie.com
ABranch@perkinscoie.com
KShaaniSmith@perkinscoie.com

*Counsel for Plaintiff-Intervenors*

*\*Pro Hac Vice* Applications Forthcoming

## VERIFICATION

I, Carolyn Bourdeaux, on behalf of Carolyn Bourdeaux for Congress, hereby certify that I am fully familiar with the facts and circumstances alleged in the foregoing Verified Emergency Complaint for Injunctive and Declaratory Relief. I have read the Verified Emergency Complaint for Injunctive and Declaratory Relief and affirm that, to the best of my personal knowledge, and based on my personal knowledge and the documents attached to the certification filed with this Verified Emergency Complaint for Injunctive and Declaratory Relief, the facts stated therein are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: November 11, 2018            CAROLYN BOURDEAUX
                                    FOR CONGRESS

                                    By:
                                        Carolyn Bourdeaux

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing [Proposed] Plaintiff-Intervenors Carolyn Bourdeaux for Congress and Fazal Khan's Emergency Complaint for Injunctive and Declaratory Relief has been prepared in accordance with the font type and margin requirements of L.R. 5.1, using font type of Times New Roman and a point size of 14.

Dated: November 11, 2018                    /s/ Veronica Higgs Cope
                                            *Counsel for Plaintiff-Intervenors*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 11th day of November 2018, I electronically filed

the foregoing with the Clerk of the Court using the CM/ECF system which will

automatically send email notification of such filing to parties in this action.

Dated: November 11, 2018                    <u>/s/ Veronica Higgs Cope</u>
                                            *Counsel for Plaintiff-Intervenors*